1   Alisa A. Martin, State Bar No. 224037
    **AMARTIN LAW, PC**
2   600 West Broadway, Suite 700
    San Diego, CA 92101
3   Telephone:  (619) 308-6880
    Facsimile:  (619) 308-6881
4   alisa@amartinlaw.com
5
    Lindsay C. David, State Bar No. 283267
6   **BRENNAN & DAVID LAW GROUP**
    2888 Loker Avenue E., Ste 302
7   Carlsbad, CA 92010
    Telephone: (760) 730-9408
8   Facsimile: (760)888-3575
    lcdavid@brennandavid.com
9
10  *Attorneys for Plaintiffs and the Class*
11
12              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
13

| 14 | BRIAN WILSON, CARRIE HUGHES, AND KATIA SEGAL, on behalf of themselves and all others similarly situated, | Case No. 3:17-CV-03763-JSC |
|---|---|---|
| 15 | | |
| 16 | | **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 17 | Plaintiff, | |
| 18 | vs. | |
| 19 | TESLA, INC., a corporation dba TESLA MOTORS, INC., and TESLA MOTORS, INC., a corporation, | |
| 20 | | |
| 21 | | |
| 22 | Defendants. | Date:  June 21, 2018 |
| 23 | | Time: 9:00 AM Courtroom: Courtroom F - 15th Floor Hon. Jacqueline Scott Corley |

24
    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
25
          PLEASE TAKE NOTICE that on June 21, 2018, at 9:00 a.m., at the United States
26
    District Court for the Northern District Of California, located in Courtroom F on the 15th Floor
27
    at the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102.
28
    Plaintiff will and hereby does move before the Honorable Jacqueline Scott Corley, for an order:

(a) preliminarily approving the proposed settlement; (b) provisionally certifying the classes and appointing class representatives and class counsel; (c) approving the proposed notice and authorizing its dissemination; and (d) setting dates and procedures for the fairness hearing, including deadlines for class members to object to or request exclusion from the settlement.

This unopposed motion is based on this notice and motion, the supporting memorandum of points and authorities, the declaration of Alisa A. Martin, all filed concurrently herewith, as well as the pleadings on file in this action, and upon such other matters, evidence, and arguments as may be presented to the Court before or at the hearing on this motion.

Dated:  May 17, 2018                              AMARTIN LAW, PC

                                        By: /s/ *Alisa A. Martin*
                                             Alisa A. Martin

                                        Attorneys for Plaintiff and the Class

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

I.     INTRODUCTION _____ 1

II.    BACKGROUND _____ 2
   A.  Procedural History _____ 2
   B.  Tesla's Alleged Wrongdoings _____ 2
       1.  Misclassification Under the Commission Salesperson Exception _____ 3
       2.  Unpaid Overtime_____ 4
       3.  Missed Meal Breaks _____ 4
       4.  Missed Rest Breaks_____ 5
   C.  Discovery _____ 6
   D.  Mediation and Settlement Negotiations _____ 6

III.   SETTLEMENT TERMS _____ 6
   A.  Settlement Amount_____ 6
   B.  Class Representative Incentive Payment _____ 7
   C.  Attorney's Fees and Costs _____ 7
   D.  LWDA Distribution _____ 7
   E.  Administration Costs_____ 8
   F.  Individual Class Members' Settlement Shares _____ 8
   G.  Unclaimed Funds _____ 9
   H.  Dissemination of Class Notice _____ 10
   I.  Procedures for Resolving Disputes _____ 10
   J.  No Claim Form Requirement _____ 11
   K.  Opt-Out/Request for Exclusion Procedures_____ 11
   L.  Objection Procedures _____ 11

IV.    THE SETTLEMENT PROVIDES ADEQUATE COMPENSATION _____ 12
   A.  Valuations of The Primary Claims for Mediation _____ 12
   B.  Valuation for The Primary Claims Based on Proposed Settlement_____ 16
   C.  Analysis of Class Members' Average Settlement Shares_____ 16

V.     PRELIMINARY APPROVAL IS WARRANTED _____ 17
   A.  The Law Favors Settlement _____ 17
   B.  The Preliminary Approval Process _____ 18
   C.  The Settlement Is in the Range of Possible Approval _____ 18
       1.  The Settlement Was Achieved at Arm's Length _____ 19
       2.  Counsel Engaged in Extensive Discovery _____ 19
       3.  The Settlement Suffers from No Obvious Deficiencies_____ 19
       4.  The Requested Incentive Payment Is Reasonable _____ 20
       5.  The Requested Attorneys' Fees and Costs Are Reasonable _____ 20
       6.  Counsel Are Experienced in Similar Litigation_____ 22

VI.    CONDITIONAL CERTIFICATION IS WARRANTED _____ 22
   A.  The Numerosity Requirement is Satisfied _____ 23
   B.  The Commonality Requirement is Satisfied _____ 23
   C.  The Typicality Requirement is Satisfied _____ 24
   D.  The Adequacy Requirement is Satisfied _____ 24

VII.   THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS _____ 24

VIII.  CONCLUSION _____ 25

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                3:17-CV-03763-JSC

1

2

# TABLE OF AUTHORITIES

3

**CASES**

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) ............................................... 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................. 10

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir.1982) ....................................................... 11

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980) ..................................... 15

*In Re HP Laser Printer Litig.,* 2011 WL 3861703 (C.D. Cal. Aug 31, 2011) ............... 11

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) .................................... 14

*In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *2-3 (N.D. Cal. Jun. 30, 2007) .. 15

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008). ............................................ 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) .... 13

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Pracs. Litig.,* 2011 WL 1877630
   (N.D. Cal. May 17, 2011) ............................................................................................ 13

*Jaffe v. Morgan Stanley & Co., Inc.,* 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ............ 15

*Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018 (9th Cir. 2003) .................... 16

*Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) ......................................... 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004) ......... 10

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco,* 688 F.2d 615
   (9th Cir. 1982) .............................................................................................................. 9

*Officers for Justice,* 688 F.3d at 625 .............................................................................. 10

*Parks v. Blue Buffalo Company, LTD, Great Plains Leasing, LLC,* Case No. 3:12-cv-01274 (S.D.
   Cal. 2013) ................................................................................................................... 14

*Rannis v. Recchia,* 380 Fed. Appx. 646 (9th Cir. 2010) ................................................. 15

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................... 12

*Singer v. Becton Dickinson and Co.,* 08-cv-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June
   1, 2010) ...................................................................................................................... 13

*Williams v. MGM-Pathe Comm'n Co.*, 129 F.3d 1026 (9th Cir. 1997) ......................... 14

*Young v. Polo Retail, LLC,* 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ..................... 11

**STATUTES**

Fed. R. Civ. P. 23. ......................................................................................................... 15

Fed. R. Civ. P. 23(a)(1) ................................................................................................. 15

Fed. R. Civ. P. 23(b)(3). ............................................................................................... 15

Fed. R. Civ. P. 23(c)(2)(B). ........................................................................................... 17

25

26

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                    3:17-CV-03763-JSC

I.     INTRODUCTION

Plaintiffs Brian Wilson, Carrie Hughes, and Katia Segal seek preliminary approval of a $1,000,000, non-reversionary, non-claims-made settlement, covering a class period dating back to June 29, 2013, for a 253 member class, defined as: *All current and former employees of Tesla who worked in California during the class period as an owner advisor, sales advisor, or another similar exempt sales position.  The Class Period is from June 29, 2013 through the date of Preliminary Approval of the Settlement by the Court.*  Plaintiffs sued their former employer, Tesla, Inc. ("Tesla"), for violating various California labor laws, focusing on its failure to pay overtime to owner and sales advisors ("OAs") who worked over eight hours per day and/or forty hours per week, failure to provide meal breaks, and failure to provide rest breaks. Tesla denies any wrongdoing, but nonetheless wants to resolve all claims on a class-wide basis.  Tesla further contends that the class is bound by an arbitration agreement that includes a class waiver.  The arbitration agreement and class waiver was a primary driving force in reaching the settlement. Currently, the validity of class action waivers is on appeal before the United States Supreme Court in *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017).  Should the United State Supreme Court uphold class action waivers contained in arbitration agreements, each individual Tesla class member would have to initiate his or her own arbitration to seek recovery for the claims brought in this complaint.  The uncertainty of the outcome of the case was a prominent factor in reaching a settlement.

The proposed Joint Stipulation of Settlement ("Joint Stipulation") is fair, adequate, and reasonable, and in the class' best interest because, among other things, the non-opt out class members will receive monetary compensation for their unpaid wages without having to do anything. Moreover, the parties reached the settlement and Proposed Counsel moved for preliminary certification less than a year after filing the complaint, which is a phenomenal benefit to the class.  The parties thus seek a court order: (a) preliminarily approving the proposed settlement; (b) provisionally certifying the class and appointing class representatives and class

PLAINTIFFS'  UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                    3:17-CV-03763-JSC

counsel; (c) approving the proposed class notice packet and authorizing its dissemination; and (d) setting the final approval hearing.[1]

## II.   BACKGROUND

### A.   Procedural History

On June 29, 2017, Plaintiff Wilson filed a class action complaint against Tesla in the District Court for the Northern District of California, alleging causes of action for (1) failure to pay overtime wages under FLSA; (2) failure to pay minimum wage under the Cal. Lab. Code; (3) failure to provide overtime compensation under Cal. Lab. Code; (4) failure to provide meal breaks; (5) failure to provide rest breaks, (6) failure to provide proper wage statements, and (7) unfair business practices.  On August 11, 2017, Plaintiff Wilson amended the complaint to add Plaintiff Hughes and assert a cause of action for failure to pay final wages.  On May 17, 2018, Plaintiffs Wilson and Hughes filed a second amended complaint to add Plaintiff Segal, assert a cause of action under California's Private Attorneys General Act ("PAGA") Labor Code 2699 *et seq.*, and remove the cause of action under FLSA. Based on the alleged violations, Plaintiffs seek to recover compensatory damages, pre-judgment interest, waiting time penalties, statutory penalties, civil penalties, restitution, attorney fees and costs, and injunctive relief.[2]

### B.   Tesla's Alleged Wrongdoings

Tesla is an automaker and a technology and design company that focuses on energy innovation. Tesla does not sell its automobiles via dealerships, but instead uses a factory-direct sales system with non-negotiable pricing.  Tesla has showrooms across the nation in which a few cars are available for test drives and purchase.[3] Tesla employed Plaintiffs and others as OAs. OAs worked in Tesla's showrooms and sold cars to Tesla's customers. Tesla classified its OAs as exempt under the commissioned salesperson exemption and compensated its OAs by paying them a salary, as well as bonuses and commissions.[4]

---

[1] Declaration of Alisa A. Martin (Martin Decl.) ¶ 2, Ex. 1, Joint Stipulation of Settlement.
[2] Martin Decl., ¶ 3.
[3] Martin Decl., ¶ 4.
[4] Martin Decl., ¶ 5.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                          3:17-CV-03763-JSC

1    Plaintiffs allege that Tesla primarily violated California law by misclassifying them and

2    other OAs as exempt from overtime and breaks, resulting in the nonpayment of overtime pay and

3    failure provide legally compliant meal and rest breaks as laid out more fully below.[5] Tesla not

4    only denies these allegations, but also contends that each employee was subject to both an

5    arbitration agreement and class waiver, which – depending on the United States Supreme Court's

6    anticipated decision – would mean that each OA would have to initiate his/ her own individual

7    arbitration to receive any compensation. Placing that burden on each OA would result in many

8    OAs never pursuing their claims due to the time and resources involved arbitration.  That result

9    is particularly true for OAs that worked at Tesla for only a brief period of time or worked a

10   minimal amount of overtime.[6]

11          **1.     Misclassification Under the Commission Salesperson Exception**

12          Under California law, employees may be classified as "exempt" from overtime under the

13   "commission salesperson exception," if they (1) make at least 1.5 times the minimum wage and

14   (2) over half of their compensation comes from commissions.  IWC Wage Order 4-2001 § 3(D).

15   California law requires the commissioned sales exception to be evaluated on a workweek basis.

16   *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 670 (2014).  Plaintiffs allege that Tesla

17   treated OAs as exempt under the commission salesperson exception without ever evaluating

18   whether the exception's requirements had been met. Plaintiff further allege that OAs were

19   misclassified because – as shown by their wage statements – for the vast majority of time, OAs'

20   commissions failed to make up over half of their income.[7]

21          In response, Tesla contends that OAs were rarely misclassified because, among other

22   things, OAs also earned bonuses and that these bonuses should be treated as another form of

23   commissions  when  evaluating  whether  over  half  of  their  compensation  comes  from

24   commissions.  Tesla further contends that Plaintiffs will not be able to certify this issue because,

25

26

27   [5] Martin Decl., ¶ 6.

28   [6] Martin Decl., ¶ 7.
     [7] Martin Decl., ¶ 8.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                      3:17-CV-03763-JSC

among other reasons, to establish misclassification, every OAs' wage statements have to be reviewed, thereby involving individualized inquiries and issues.[8]

### 2. Unpaid Overtime

Plaintiffs allege that OAs were only exempt from overtime during workweeks wherein OAs' commissions equated to over half of their compensation; otherwise, OAs were entitled to overtime as follows:

- one and one-half times the employee's regular pay rate for all hours worked in excess of eight hours up to and including 12 hours in any workday, and for the first eight hours worked on the seventh consecutive workday in a workweek if the employee's commissions do not equate to more than half of his or her income; and

- double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and in excess of eight hours on the seventh consecutive workday in a workweek if the employee's commissions do not equate to more than half of his or her income.[9]

Plaintiffs allege that Tesla regularly required OAs to work over eight hours per day or forty hours per week.  Because Tesla always treated OAs as exempt, Tesla never paid them overtime.  Tesla, however, denies Plaintiffs allegations, arguing, among other things, that OA generally were not scheduled or expected to work over eight hours per day or forty hours per week and that to the extent some OAs did work those hours, those hours were not recorded anywhere, thereby making damages difficult to prove, particularly on a class-wide basis.[10]

### 3. Missed Meal Breaks

California law requires employers to provide non-exempt employees with duty-free, uninterrupted 30-minute meal breaks within the first five hours of work. IWC Order 7-2001 § 11. Employers cannot formulate policies that result in employees not receiving statutory breaks, which are mandatory. *Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 960, 962 (2005).

[8] Martin Decl., ¶ 8.
[9] Martin Decl., ¶ 9.
[10] Martin Decl., ¶ 9.

Employers also cannot require employees to work through their meal breaks. Labor Code § 226.7(a). Employers who fail to provide employees with the opportunity to take meal breaks, must pay one additional hour of pay at employees' regular pay rate for each workday meal breaks were not provided.  Moreover, employers are required to keep accurate records of all meal breaks taken. IWC Order 7-2001 §§ 7(A)(3) and 11; Labor Code § 226.7(b).

Generally exempt employees are not subject to meal and rest break requirements; however, that general rule does not apply to employees that fall under the commissioned salesperson exemption.  Employees that fall under that exemption are only exempt from overtime pay, not the meal and rest break requirement. IWC Wage Order 7-2001 § 3(D); *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 670 (2014).  So regardless of whether the OAs were or were not properly classified as exempt from the overtime requirement under the commissioned sales exemption, OAs were entitled to receive off-duty breaks.

Plaintiffs allege that Tesla did not provide OAs with lawful meal breaks and that this was confirmed by Tesla's written meal break policy that expressly did not apply to OAs. Tesla denies this allegation, arguing that breaks were built into OAs' work schedule and that OAs were free to take breaks whenever necessary.  Moreover, Tesla argues that each store was operated by a different store manager who controlled the day to day functions including employee management and breaks, thereby precluding certification.[11]

### 4.     Missed Rest Breaks

Under California law, employers must permit employees to take statutory rest breaks during which they are relieved of all duties. Rest breaks must - insofar as practicable - be taken in the middle of each work period and be at the minimum rate of 10 minutes for every 4 hours worked, or a major fraction thereof. IWC Order 7-2001 § 12. Employees are entitled to an additional hour of pay for any shift during which they did not receive a lawful rest break. *Id.*; Labor Code § 226.7.  Like meal breaks, the commissioned sales exception does not apply to the rest break requirement. IWC Wage Order 7-2001 § 3(D).

---

[11] Martin Decl., ¶ 10

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                          3:17-CV-03763-JSC

Plaintiffs contend Tesla's written rest break policy only applied to non-exempt employees and Tesla did not provide OAs with rest breaks in accordance with California law.[12] Tesla denies this allegation, arguing, among other things, that OAs were free to take breaks whenever necessary and that that each store was run differently making this claim difficult to certify. Tesla further argues that rest break claims are notoriously difficult to prove and that the claim is implausible given the OAs worked in malls.[13]

### C. Discovery

Proposed Counsel conducted discovery and research before and after filing the complaint. Tesla also produced key information and data, including the number of class members, policies and procedures, timekeeping data, and payroll data so that Plaintiffs could evaluate their claims and prepare for mediation. Proposed Counsel also obtained information from witnesses; reviewed and analyzed the produced documents, information, and data; researched the applicable laws and potential defenses; and prepared a damages model.[14]

### D. Mediation and Settlement Negotiations

In light of the uncertainty regarding the validity and enforcement of class action waivers raised by *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017), the Parties decided on early mediation. Accordingly, on November 10, 2017, the Parties mediated their dispute with Michael Dickstein. With the assistance of Michael Dickstein, the Parties reached an agreement as to key terms of the settlement. Thereafter, the Parties continued negotiating with Dickstein's assistance and eventually executed the Joint Stipulation in May 2018.[15]

## III. SETTLEMENT TERMS

### A. Settlement Amount

As a result of arms-length negotiations, the Parties agreed to a settlement amount of $1,000,000 ("Gross Fund Value"). This amount is based on a class size of 253 class members who collectively worked 13,691 weeks. If the work weeks exceed 13,691 by more than 10%

---

[12] Martin Decl., ¶ 11.
[13] Martin Decl., ¶ 11.
[14] Martin Decl., ¶ 12.
[15] Martin Decl., ¶ 13.

before the date of Preliminary Approval, the Gross Fund Value will be proportionally increased.[16]   The Gross Fund Value is non-reversionary and includes all court-awarded attorney's fees and costs, administrative costs, incentive awards, employer's share of the payroll taxes, and the LWDA payment. The Gross Fund Amount is to be paid into an escrow account administered by a court-appointed administrator in one payment.  Tesla must make this payment within 7 calendar days from the entry of the Final Approval Order and Judgment.[17]

Subject to court approval, the court-appointed administrator will pay from the Gross Fund Value all fees, costs, and awards, including any court-awarded incentive payment, attorney's fees and costs, administration costs, and PAGA penalties. The remaining amount, referred to in the Settlement as the Net Common Fund, will be paid to non-opt out class members, as explained below.[18]

**B.    Class Representative Incentive Payment**

Plaintiffs Wilson, Hughes, and Segal worked diligently to represent the class' best interests. Subject to Court approval, the settlement provides for an incentive award of $10,000 to each class representative for prosecuting this case, taking the risks of serving as the class representative, providing factual information and documentation necessary to prosecute the action, providing a general release of all claims, and maintaining contact with counsel.[19]

**C.    Attorney's Fees and Costs**

The settlement provides that Proposed Counsel may request 33.3% of the Gross Settlement Amount, totaling $333,333.33, plus costs up to $20,000.[20]

**D.    LWDA Distribution**

For purposes of Section 2699(j) of the California Labor Code, $50,000 of the Settlement Fund will be treated as PAGA penalties, of which $37,500 will be paid to the California Labor and Workforce Development Agency ("LWDA").[21]

---

[16] Martin Decl., Ex. 1, ¶¶ 23, 53, 55
[17] Martin Decl., Ex. 1, ¶ 54.
[18] Martin Decl., Ex. 1, ¶ 55.
[19] Martin Decl., Ex. 1, ¶¶ 27-31.
[20] Martin Decl., Ex. 1, ¶ 28.
[21] Martin Decl., Ex. 1, ¶ 30.

1

### E.    Administration Costs

2

Subject to court approval, the parties agreed to the appointment of ILYM Group, Inc. as

3

the third party administrator to manage all settlement funds, prepare and mail the class notice

4

packets, locate class members, and issue settlement payments, including payments to the class,

5

the class representative, class counsel, tax authorities, and the LWDA.[22] ILYM Group's quote to

6

perform all administrative tasks provided in the Settlement is capped at $15,000.[23]

7

### F.    Individual Class Members' Settlement Shares

8

The settlement does not require class members to submit a claim to receive

9

compensation. Approximately $550,000 will be distributed over one payment to non-opt out

10

class members as individual settlement shares. The settlement shares are calculated as follows:

11

1.  Certain expenses, costs, payments, and taxes will be subtracted from the Settlement

12

Fund:

| Gross Fund Value ($1,000,000) | - | Incentive Awards ($30,000) | = | Net Common Fund (approx. $550,000) |
|---|---|---|---|---|
| | | Class Counsel Fees ($333,333.33) | | |
| | | Class Counsel Costs ($20,000) | | |
| | | Administrative Costs ($15,000) | | |
| | | PAGA Payment ($37,500) | | |
| | | Employer Taxes ($14,000) | | |

13

14

15

16

17

18

19

20

21

22

2.  The remaining Net Common Fund will be distributed to non-opt out class members

23

based on the number weeks each individual member worked during the class period:

24

| Indiv.'s Workweeks | ÷ | Total # of Class' Workweeks | = | Indiv.'s Proportional Share |
|---|---|---|---|---|
| Net Settlement Fund | x | Class Member's Proportional Share | = | Indiv.'s Settlement Share |

25

26

27

28

[22] Martin Decl., Ex. 1, ¶ 34.
[23] Martin Decl., ¶ 13.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                          3:17-CV-03763-JSC

Assuming every class member participates in the settlement, the average settlement share for 253 members is approximately $2,173.91 which is equivalent to, on average, 72.5 hours of work at an hourly rate of $30. The potential recovery is significant given (1) the speed in which class members will receive their settlement payments, (2) the nonenforcement of potentially valid arbitration agreements and/or class action waivers that were purportedly entered into by class members and (3) Tesla's defenses as outlined in Section IV herein. [24]

Thus, the settlement is fair, reasonable, and in the class' best interest, particularly after balancing the proposed settlement terms, the speed in which class members will receive his and her settlement, and obtaining classwide relief against the risk that the Supreme Court in *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017) will enforce class action waivers, thereby precluding the Plaintiffs from pursue class-wide relief, the probable outcome of liability, the untested issues, the range of recovery at trial, and the likelihood of collection of any recovery at trial, along with considering: whether the case could continue as a class action; the prospect of an adverse ruling on class certification; the difficulties of complex litigation; the lengthy process of establishing specific damages; individual issues; and possible delays and appeals. Proposed Counsel also considered Tesla's opposing arguments, supporting evidence, and case law.[25]

One-third of the settlement share will represent wages that are subject to tax withholdings and reported on an IRS Form W-2, and the other two-thirds will equally represent interest and penalties that will be reported on a Form 1099. [26]

### G.    Unclaimed Funds

Participating class members will have 180 calendar days to cash their settlement checks. Any residue from the uncashed checks shall be paid by the Settlement Administrator to the California Department of Industrial Relations Unclaimed Wages Fund, with the identity of the Participating Class Member to whom the funds belong.[27]

---

[24] Martin Decl., Ex. 1, ¶ 55; Martin Decl. ¶14.
[25] Martin Decl., ¶ 14.
[26] Martin Decl., Ex. 1, ¶ 55.
[27] Martin Decl., Ex. 1, ¶ 55.

**H.     Dissemination of Class Notice**

Class notice will be distributed by direct mail.  The Notice will be in English and substantially similar to the form attached to the Settlement as Exhibit 1. The Notice sets forth a brief description of the case, provides the class definition, informs the class about the nature and scope of the settlement, sets forth the requested attorney's fees and costs and incentive payment, informs the class about their opportunity to be heard at the Final Settlement Approval Hearing, informs class about their right to either object to or opt-out of the settlement, and provides the procedures for doing so.  The Notice also explains the res judicata effects of not opting out and provide Proposed Counsel's and the Settlement Administrator's contact information. The Notice further provides class members with their estimated settlement amount and explains how this amount was calculated.  A reminder postcard will be mailed and e-mailed out 30 days after the Class Notice is sent to Settlement Class Members.[28]

Before notices are mailed, the Settlement Administrator will conduct a search for a more current address through the National Change of Address Database maintained by the United States Postal Service.  If any notices are returned as undeliverable, the Settlement Administrator will conduct one search for a more current address through other means, which may include an internet search and will re-mail the packets.[29]

**I.     Procedures for Resolving Disputes**

The Class Notice discloses each class member's estimated settlement amount and the number of workweeks used to calculate that amount.  If class members dispute the number of workweeks used to determine their settlement amount, they can contact the Settlement Administrator.[30]

The Joint Stipulation has procedures in place for resolving disputes. The Settlement Administrator will first try to resolve any dispute.  In the absence of fraud or gross negligence, Tesla's records will be presumed accurate. If the Settlement Administrator cannot resolve the dispute, the Parties' counsel shall confer in good faith and make use of the services of mediator

---

[28] Martin Decl., Ex. 1, Ex. 1; Martin Decl., Ex. 1, ¶ 53.
[29] Martin Decl., Ex. 1, ¶ 53.
[30] Martin Decl., Ex. 1, Ex. 2.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                      3:17-CV-03763-JSC

Michael Dickstein. If counsel cannot stipulate to a compromise, the parties shall seek resolution by the Court.[31]

### J.   No Claim Form Requirement

Class members do not have to do anything to receive money from the settlement.  There is no claim form requirement.

### K.   Opt-Out/Request for Exclusion Procedures

To be excluded from the settlement, class members must submit a request for exclusion to the Settlement Administrator by the Response deadline.[32] As directed in the proposed class notice, the request for exclusion must (1) contain the name and last 4 digits of the Social Security number of the person requesting exclusion; (2) be signed by the Class Member; and (3) be mailed to the administrator, postmarked no later than 60 days after the class notice packet is initially mailed. Anyone who opts-out of the settlement will not receive money from the settlement, will not be bound by the settlement, and will not have the right to object, appeal or comment on the settlement.[33]

### L.   Objection Procedures

Any class member who does not submit a valid and timely opt-out request to the Settlement Administrator may object to the settlement by submitting to the Settlement Administrator Notice of Objection by the response deadline.  The Notice of Objection must (1) state the full name of the Class Member; (2) be signed by the Class Member; (3) state the grounds for the objection; and (4) must be postmarked by the response deadline and returned to the Settlement Administrator at the specified address.  Class members who opt-out of the settlement cannot object to it.[34]

---

[31] Martin Decl.  Ex. 1, ¶ 53
[32] Martin Decl., Ex. 1, Ex. C.
[33] Martin Decl., Ex. 1, ¶ 53.
[34] Martin Decl., Ex. 1, ¶ 39.

## IV.  THE SETTLEMENT PROVIDES ADEQUATE COMPENSATION

### A.  Valuations of The Primary Claims for Mediation

#### 1.  Unpaid Overtime

Plaintiffs alleged that Tesla treated its OAs as exempt under the commission salesperson exception without evaluating whether over half of their compensation came from commissions. Although Plaintiffs are confident that this issue is certifiable, Plaintiffs considered Tesla's arguments when evaluating this claim. Because the issue of whether each OA was misclassified is arguably determined on a case by case basis and the amount of overtime each OA worked may not have occurred regularly and/or resulted from a uniform, state-wide policy, the likelihood of getting this claim certified is not certain because the claim involves individualized issues that may predominate and there is no easy way of identifying those who worked overtime. Moreover, Tesla argued that it was Tesla's policies and practices to not schedule its OAs for overtime.  Finally, Tesla argued that the OAs were properly classified as exempt because their bonuses were simply another form of commissions and that when their bonuses were added to their commissions, together both forms of compensation exceeded their salary.  While Proposed Counsel disagrees with this assessment, Proposed Counsel concedes there is no black and white law regarding classification of the bonus and whether they can be considered in conjunction with the commissions when classifying a commissioned salesperson as exempt and/or non-exempt.

Plaintiff's Counsel valued this claim at approximately $1.2 mil (using an estimated 2 hours of overtime per week at an overtime rate of $45 per hour for each the 13,691 workweeks). However, factoring in Tesla's arguments and certification issues, Proposed Counsel reduced their valuation to $500,000.[35]

#### 2.  Missed Meal Breaks

Although Tesla classified its OAs as exempt from overtime, this exemption only applied to overtime and not meal and rest breaks.  As such, Tesla was required to provide meal and rest breaks to each of its OAs.

---

[35] Martin Decl., ¶ 16.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

Plaintiffs allege that Tesla's written meal and rest break policies were limited to non-exempt employees, and OAs were not provided legally compliant meal breaks; however, Tesla contends that its work schedules factor in sufficient time for OAs to take breaks and that there is no uniform, statewide policy that specifically denied OAs their ability to take legally compliant meal breaks, thereby making the claim difficult to get certified due to individualized issues.

Plaintiffs estimated the liability exposure possible for this claim could exceed $1 million over a four-year period if legally compliant meal breaks were not provided half of the time. This estimate assumed that half of the shifts (34,227 shifts[36]) during the liability period involved missed meal breaks and used an hourly rate of $30.   But for mediation negotiation purposes, Plaintiffs reduced the estimated damages to $500,000, which accounted for Tesla's arguments, and  the uncertainties and vagaries of certification and trial.[37]

### 3.    Missed Rest Breaks

Like meal breaks, Tesla was required to provide OAs, regardless of whether they were improperly classified as exempt, with legally compliant rest breaks.  Plaintiffs allege that Tesla's rest break policies were limited to non-exempt employees, and that based on Plaintiffs' and witnesses' accounts, OAs were not provided legally compliant rest breaks. Tesla denies that OAs were not afforded rest breaks or had a company-wide policy that precluded OAs from taking breaks.  Tesla further contends that each Tesla store had its own store manager and instructions, thereby undermining the appropriateness of class certification.[38]

Proposed Counsel used a similar calculation here to determine damages from failure to pay rest break premium wages. Although Proposed Counsel initially valued the claim at approximately $1 mil, Proposed Counsel reduced the calculation to $350k to account for Tesla's defenses, the potential difficulty in establishing this claim, and the potential difficulty in getting this claim certified.

---

[36] Calculated using 5 Shifts for Each of the 13,691 workweeks (13,691 Workweeks x 5 = 68,455 Shifts)
[37] Martin Decl., ¶ 17.
[38] Martin Decl., ¶ 17.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

1

### 4.    Waiting Time Penalties

2         The meal and rest break claims asserted herein do not conclusively generate a wage to

3   which a § 203 claim could be tethered.  The California Court of Appeal stated, arguably in dicta,

4   that a meal break violation claim under Labor Code § 226.7 cannot support a waiting time

5   penalty under Labor Code § 203.  *Ling v. P.F. Chang's China Bistro, Inc.,* 245 Cal. App. 4th

6   1242, 1261 (2016); *Serrano v. Bay Bread LLC,* 2016 Cal. Super. LEXIS 8043, *22 (June 29,

7   2016)(stating that no published California case holds contrary to *Ling*); *but see In re Autozone,*

8   *Inc. Wage and Hour Litig.*, Case No. 3:10-md-021590CRB, 2016 WL 4208200 at **6-7 (N.D.

9   Cal. Aug. 10, 2016) (holding that meal period payments constitute "wages" and can therefore

10  form the basis of Labor Code §§ 201-203 claim for waiting time penalties).

11        Thus, the teeth of this claim hinges on the unpaid overtime.  The actual unpaid overtime

12  claim in this case is based on Tesla's misclassification of its OAs and resulting failure to pay

13  overtime compensation.  Although Proposed Counsel initially valued this claim between $1 mil

14  and $1.5 mil, Proposed Counsel reduced this claim to $500,000 because of the uncertainties

15  outlined above.[39]

16

### 5.    Wage Statement Violations

17        Some federal court decisions hold that meal and rest break premiums under Labor Code §

18  226.7 can support a wage statement penalty under Labor Code § 226(e).  *See Finder v. Leprino*

19  *Foods Co.,* No. 1:13-CV-2059 AWI-BAM, 2015 U.S. Dist. LEXIS 30652, at *1 (E.D. Cal.

20  March 12, 2015). Tesla, however argued that plaintiffs cannot establish "injury" that resulted

21  from Tesla's "knowing and intentional failure" to furnish wage statements that included

22  premium pay for missed breaks.  *See* Cal. Lab. Code § 226(e)(1).

23        Plaintiffs valued this claim between $250,000 and $500,000.  However, taking Tesla's

24  arguments into account, Plaintiffs applied a significant discount on Tesla's realistic liability

25  exposure and valued this claim at $50,000.[40]

26

27

---

28  [39] Martin Decl., ¶ 18.
    [40] Martin Decl., ¶ 19.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

### 6. PAGA Penalties

PAGA claims are difficult to evaluate because there are many obstacles to the actual award of the civil penalty. First, defendants routinely argue that penalties cannot accrue until a court has actually found a violation to exist. Here, there has yet been no finding. Additionally, § 2699(e)(1) and (2) give trial courts discretion to access or lower civil penalties. Second, defendants routinely argue that when statutory penalties are imposed, the imposition of additional civil penalties under PAGA is unjust, *etc*. Several courts have addressed this issue and have exercised broad discretion to dramatically limit such awards.[41]

Thus, Plaintiffs valued the PAGA penalties for unpaid wages and missed breaks at around $417,000; however, the likelihood of that sum being awarded where, as here, the underlying "premium pay" sums are properly sought, is unlikely.[42] Courts have discretion to deny or significantly reduce PAGA penalties,[43] particularly when the prescribed award would be "unjust, arbitrary and oppressive, or confiscatory."[44] Based on the various risks, Plaintiffs discounted their valuation to $200,000 and settled the claim for $50,000.

### 7. Summary

In sum, Plaintiffs valued the claims at mediation as follows:

| MEDIATION NEGOTIATION CLAIM VALUATIONS | | | | | | |
|---|---|---|---|---|---|---|
| Unpaid Overtime | Missed Meal Breaks | Missed Rest Breaks | Wage Statement Penalty | Waiting Time Penalty | PAGA Penalties | TOTAL |
| ~$500k | ~$500k | ~$ 350k | ~$ 50k | ~$500k | ~$200k | ~$2.1 mil |

---

[41] *See e.g. Fleming v. Covidien Inc.*, 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) (invoking § 2699(e)(2) and reducing PAGA penalty award from $2.8 million to $500,000); *Makabi v. Gedalia*, No. BC468146, (L.A. Super. Ct. May 8, 2013)(trial court invoked § 2699(e)(2) and declined to apply any PAGA penalties, despite finding that defendants violated PAGA); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1203, 1214, 78 Cal. Rptr. 3d 572 (2008) (approving reduction of penalty amount to one-third of the damages award even though there was "no evidence that Cintas [did] not entertain a good faith belief that the LWO did not apply to workers in Plaintiffs' position"); *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36, 138 Cal. Rptr. 3d 130 (2012)(reducing penalty amount by 30% where "defendants took their obligations under Wage Order No. 9 seriously and attempted to comply with the law).

[42] Martin Decl., ¶ 20.

[43] *See* Cal. Labor Code § 2699(e)(2).

[44] *Id.*

---

-15-

**B.     Valuation for The Primary Claims Based on Proposed Settlement**

Plaintiffs valued all claims at mediation at approximately $2.1 million and ultimately settled this case at $1 million.  So, the case settled at approximately 47% of the valuation amount.  The settlement amount distributed among the primarily is approximately as follows:

| SETTLEMENT CLAIM VALUATIONS BEFORE SUBTRACTING FEES, COSTS, AWARDS, EMPLOYER TAXES AND LWDA PAYMENTS | | | | | | |
|---|---|---|---|---|---|---|
| Unpaid Overtime | Missed Meal Breaks | Missed Rest Breaks | Wage Statement Penalty | Waiting Time Penalty | PAGA Penalties | TOTAL |
| ~$250K | ~$250K | ~$200K | ~$25K | ~$175K | $50 k | $1 mil |

After subtracting from the gross settlement amount approximately $353,333.33 for attorneys' fees and costs, $30,000 for incentive payments, $37,250 for the LWDA payment, $15,000 for administration fees, and approximately $14,500 for employer taxes, the remaining $550,000 is approximately apportioned as follows:

| SETTLEMENT CLAIM VALUATIONS AFTER SUBTRACTING FEES, COSTS, AWARDS, EMPLOYER TAXES AND LWDA PAYMENT | | | | | | |
|---|---|---|---|---|---|---|
| Unpaid Overtime | Missed Meal Breaks | Missed Rest Breaks | Wage Statement Penalty | Waiting Time Penalty | PAGA Penalties (25%) | TOTAL |
| ~$138k | ~$138k | ~$112k | ~$13.5k | ~$138k | $12.5k | $550,000 |

**C.     Analysis of Class Members' Average Settlement Shares**

Assuming every class member participates in the settlement and worked the same number of workweeks, the average settlement share for 253 members[45] is approximately $2,173.91 after subtracting from the gross settlement amount approximately $353,333.33 for attorneys' fees and costs, $30,000 for incentive payments, $37,500 for the LWDA payment, $15,000 for administration fees, and approximately $14,000 for employer taxes. Because class members

---

[45] Martin Decl., ¶ 14.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                    3:17-CV-03763-JSC

during the class period received an average hourly range between $30,[46] the average settlement share compensates approximately 72.5 work hours on average.

If this case settled for the total valuation amount of $2.1 million, each class member would receive on average $5,462.45 after subtracting an estimated amount of $820k for attorneys' fees and costs, $30,000 for incentive payments, $120,000 LWDA payment, $15,000 administration fees, and approximately $33,000 for employer taxes. Of course, it's extremely rare for there to be 100% recovery under a settlement, particularly since plaintiffs can only get 100% recovery if they win on every claim at trial and the Court does not exercise discretion to reduce or eliminate any of the penalties.  Under the proposed settlement, the class recovers on average approximately 47% of the total valuation of the primary claims.

## V.     PRELIMINARY APPROVAL IS WARRANTED

### A.     The Law Favors Settlement

It is well established that settlements are the preferred means of dispute resolution, particularly in class actions where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation.  *See Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."). Indeed, the preference for settlement is evident in the Federal Rules of Civil Procedure themselves. *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008).

The policies favoring settlement apply with particular force in this case, where approximately 253 current and former California employees allege that they were not provided meal and rest breaks or provided premium wages in lieu thereof and were misclassified as exempt and not paid for overtime hours worked.  Given the very high costs of litigating a wage-and-hour case against a well-funded company, class members would have difficulty pursuing their claims individually.  Moreover, class members entered into arbitration agreements which would require class members to either initiate the case in an arbitration setting or litigate the

---

[46] Martin Decl., ¶ 14.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                3:17-CV-03763-JSC

validity of the arbitration agreement.  Plus, individual lawsuits and/or arbitrations would clog the courts and take years to resolve. The proposed settlement is the best and only means to ensure that all class members receive prompt and efficient relief.

### B.    The Preliminary Approval Process

Court approval of class action settlements is a two-step process: preliminary approval and final approval. Manual for Complex Litigation, (Fourth) ("MCL 4th") § 21.632 (2004). At the preliminary approval stage, the court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id*.  The court must also make a preliminary determination whether the class may be certified for settlement purposes under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997).  After preliminary approval, notice of the proposed settlement is given to the class, and the court conducts a final approval hearing, also known as a fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004).   At the fairness hearing, the court will consider arguments for and in opposition to approval of the settlement, including comments submitted by class members in response to the class notice. The fairness hearing, however, is not "a trial or rehearsal for trial on the merits." *Officers for Justice,* 688 F.3d at 625. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*.

While the parties certainly believe that this settlement meets all the criteria for final approval, at this juncture, they ask only that the Court take the first step in the process and grant preliminary approval of the settlement.

### C.    The Settlement Is in the Range of Possible Approval

At this preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.1982)). "If the

proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . ." *Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (citing Manual for Complex Litigation, § 30.44 (2nd ed. 1985).

In determining whether a settlement falls within the range of possible approval, courts consider whether the negotiations occurred at arm's length, whether sufficient discovery or investigation took place, and whether the proponents of the settlement are experienced in similar litigation. *See* Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions, § 11.41(4th ed. 2002). Considering the discovery and settlement efforts, these criteria are satisfied.

### 1.    The Settlement Was Achieved at Arm's Length

The settlement is presumptively fair because there is nothing to suggest collusion between the parties. To the contrary, all material settlement terms were reached via mediation with Michael Dickstein.  The fact that Michael Dickstein oversaw negotiations evidences that the negotiations were non-collusive. *See, e.g., In Re HP Laser Printer Litig.,* No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D. Cal. Aug 31, 2011) (finding the fact that the parties appeared before a neutral third party mediator evidence supporting a finding that there was no collusion between the parties in reaching settlement).

### 2.    Counsel Engaged in Extensive Discovery

Proposed Counsel engaged in focused and thorough discovery.  Proposed Counsel's investigation includes: propounding extensive informal discovery; locating and interviewing witnesses; extensive online research; preparing a damages model based upon the information gathered; and reviewing and analyzing documents produced by Tesla and nonparties.[47]

### 3.    The Settlement Suffers from No Obvious Deficiencies

The settlement has no "obvious deficiencies" and confers substantial benefits to class members. In sum, approximately 253 members will be given the opportunity to receive monetary

---

[47] Martin Decl., ¶ 12.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                3:17-CV-03763-JSC

1  compensation for allegedly unpaid overtime and missed breaks without having to submit a claim.

2  Given the relief and uncertainties of protracted litigation, the settlement is unquestionably well

3  within the range of possible approval.

4  **4.      The Requested Incentive Payment Is Reasonable**

5      The proposed Class Representative incentive award is fair and reasonable. As the Ninth

6  Circuit observed:

7
> Incentive awards are fairly typical in class action cases. Such
8  > awards are discretionary, and are intended to compensate class
> representatives for work done on behalf of the class, to make up for
9  > financial or reputational risk undertaken in bringing the action, and,
> sometimes, to recognize their willingness to act as a private attorney
10  > general. Awards are generally sought after a settlement or verdict
> has been achieved. *Rodriguez v. West Publishing Corp.*, 563 F.3d
11  > 948, 958-59 (9th Cir. 2009) (emphasis and citations omitted).

12  The parties agreed that Plaintiffs may seek an incentive payment of $10,000 each because,

13  among other things, they took the initiative to be named in this lawsuit, assisted in the case

14  investigations and preparing discovery, consulted with counsel, assisted with locating witnesses

15  and unnamed class members, located key documents, and accepted substantial personal risks and

16  responsibilities on the class' behalf.[48] The requested amount is reasonable and Tesla does not

17  object. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-1827 SI, 2011 WL

18  7575003, at *2 (N.D. Cal. Dec. 27, 2011) (approving $15,000 incentive awards for 11 class

19  representatives "in recognition of their work performed for the benefit of the class and risks

20  undertaken"); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Pracs. Litig.*, No.

21  5:09-md-02015 JF, 2011 WL 1877630, at *7 (N.D. Cal. May 17, 2011) (approving class

22  representative incentive awards ranging from $5,000 to $14,250 each); *Singer v. Becton*

23  *Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010)

24  (finding class representative award of $25,000 reasonable).

25  **5.      The Requested Attorneys' Fees and Costs Are Reasonable**

26      The requested attorney's fees and costs are reasonable. Proposed Counsel achieved an

27  excellent and extremely fast settlement while ultimately avoiding the uncertainties and risks

28
[48] Martin Decl. ¶¶ 22.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT        3:17-CV-03763-JSC

associated with the arbitration agreements, class action waivers, protracted litigation, contested class certification, motion for summary judgment, and trial. Throughout this litigation, Proposed Counsel dedicated time and resources in litigating the case and will continue to do so through the settlement approval process.[49] Proposed Counsel will file a separate and more detailed motion for an award of attorney's fees and costs before the deadline for the class members to make objections. For purposes of preliminary approval, the Court is only being asked to determine whether the Settlement's provision allowing Proposed Counsel to request up to the stated amount should be preliminary approved.

The Settlement provides and the parties have agreed that Proposed Counsel may apply to the Court for an amount not to exceed $333,333.33 in attorneys' fees plus up to $20,000 in actual costs.[50] This constitutes a maximum fee request of 33.3 percent of the Gross Fund Value.

The United States Supreme Court instructs that a request for attorney's fees should not result in a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Ideally, of course," the Court continued, "litigants will settle the amount of a fee." *Id.* (internal citations omitted). The parties have adhered to this wisdom. The requested fees and costs were negotiated at arms-length after the settlement fund and additional settlement benefits had been established.[51]

Federal courts often award thirty-three percent of the common fund in attorney's fees. For instance: *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) (affirming attorney's fee of 33% of the recovery); *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)(33% fee award); *Williams v. MGM-Pathe Comm'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)(one-third of total fund awarded); *Parks v. Blue Buffalo Company, LTD, Great Plains Leasing, LLC,* Case No. 3:12-cv-01274 (USDC of Southern District of CA) (33.33% fee award). At this juncture, however, Proposed Counsel have not yet requested a specific fee award so the Court is merely being asked to approve the right to do so as set forth in the Settlement.

---

[49] Martin Decl. ¶ 22.
[50] Martin Decl. Ex. 1, ¶ 55.
[51] Martin Decl., ¶ 13.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

1

### 6.      Counsel Are Experienced in Similar Litigation

2          Proposed Counsel is well respected and specializes in wage-and-hour and consumer class

3 actions.    Proposed Counsel prosecuted numerous wage-and-hour class actions involving

4 California Labor Code violations both in state and federal court.[52]    Proposed Counsel

5 competently evaluated the claims on a fully informed basis.  Given the risks inherent in litigation

6 and the defenses asserted, this settlement is in the class' best interest.  Likewise, Proposed

7 Counsel is well versed in complex class action and is highly qualified. Accordingly, the parties

8 are well suited to make informed judgments regarding the nature of the settlement.

9 ## VI.    CONDITIONAL CERTIFICATION IS WARRANTED

10          When granting preliminary approval of the Settlement, this Court also must determine

11 that the proposed classes are certifiable. *See* MCL 4th, § 21.632; *Amchem,* 521 U.S. at 620.

12 Certification is warranted where, as here, it is demonstrated that the four prerequisites of Rule

13 23(a) — i.e. numerosity, commonality, typicality, and adequacy of representation — and one of

14 the three requirements of Rule 23(b), are satisfied. *See* Fed. R. Civ. P. 23.  Certification of a class

15 action for damages requires a showing that:

16
17
18
> questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
> Fed. R. Civ. P. 23(b)(3).

19
20 Given that the proposed class will be certified for the purposes of settlement only, the Rule

21 23(b)(3) requirement of superiority need not be met here because manageability issues are not a

22 bar to certification "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

23          Plaintiffs propose that the Court provisionally certify this action as a class action pursuant

24 to Rule 23 for settlement purposes. Provisional certification is an appropriate device in

25 settlements of class actions where the agreement to settle the case occurs before certification.

26 *See, e.g., Jaffe v. Morgan Stanley & Co., Inc.,* No. C-06-3903 TEH, 2008 WL 346417, at *2-3

27 (N.D. Cal. Feb. 7, 2008); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL

28
---
[52] Martin Decl. ¶¶ 23-26.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                      3:17-CV-03763-JSC

1   1991529, at *2-3 (N.D. Cal. Jun. 30, 2007). Under the circumstances, there is more than a

2   sufficient factual basis for the Court to provisionally certify this action as a class action for

3   settlement purposes and to appoint Proposed Counsel — Alisa A. Martin of AMartin Law, PC

4   and Lindsay C. David of Brennan & David Law Group— as Class Counsel.

5           **A.      The Numerosity Requirement is Satisfied**

6           With respect to numerosity, Rule 23(a)(1) requires that the class be so numerous that

7   joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Here, approximately 253

8   members of the proposed class were allegedly not paid all wages owed.  By any measure, the

9   numerosity requirement is met.  While it is true that on the low end, the Supreme Court has

10  indicated that a class of 15 "would be too small to meet the numerosity requirement," *Gen. Tel.*

11  *Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980), the Ninth Circuit recently upheld a class

12  of only 20 persons. *Rannis v. Recchia,* 380 Fed. Appx. 646, 650-51 (9th Cir. 2010).

13          **B.      The Commonality Requirement is Satisfied**

14          Here, common questions of law and fact exist and predominate (as required by Rule

15  23(b)(3)) and as to class over any individual questions, including:

16      •   Whether Tesla is required to provide class members with meal breaks or meal break

17          premium wages in lieu thereof under California law;

18      •   Whether Tesla is required to provide class members with rest breaks or premium

19          wages in lieu thereof under California law;

20      •   Whether Tesla misclassified class members and was required to provide them with

21          overtime compensation under California law;

22      •   Whether Tesla failed to provide class members with timely and accurate wage

23          statements as required under California law;

24      •   Whether Tesla failed to provide class members with final wages as required under

25          California law; and

26      •   Whether Tesla engaged in unfair business practices as to class members in violation

27          of California law.

28

1   Where, as here, Tesla's liability would be determined primarily by looking at their

2   uniform policies and practices, and timekeeping and payroll records, the common questions in

3   this litigation will predominate over any individual issues.

4   **C.    The Typicality Requirement is Satisfied**

5   Plaintiffs meet the typicality requirement of Rule 23(a). Plaintiffs, like all class members,

6   suffered the wage-and-hours violations alleged in the complaints and outlined above. They assert

7   the similar or identical legal claims as all class members, making their claims typical of the class.

8   **D.    The Adequacy Requirement is Satisfied**

9   With respect to the adequacy of representation requirement of Rule 23(a), named

10  plaintiffs must not have interests antagonistic to those of the class, and the plaintiffs' attorneys

11  must be qualified, experienced, and generally able to conduct the litigation. *See Hanlon*, 150

12  F.3d at 1020. As discussed above, Proposed Counsel is exceptionally well qualified, experienced

13  and able to conduct the litigation. Further, Plaintiffs' interests are coextensive with those of the

14  class they seek to represent since Plaintiffs were injured in the same manner and seek identical

15  relief as the class.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir.

16  2003) (finding that plaintiffs must have been injured themselves, not merely represent injured

17  parties).

18  Having volunteered to serve as the Class Representative, Plaintiffs have taken a

19  leadership role in the litigation, performed and stood ready to perform any number of tasks, and

20  demonstrated a commitment to bringing about the best results possible for his fellow class

21  members.[53] Moreover, Plaintiffs and their attorneys have no interests antagonistic to the class'

22  interests and are not subject to any unique defenses. Plaintiffs and their attorneys have and will

23  continue to fairly and adequately protect the class' interests.[54]

24  **VII.   THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS**

25  Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that "[t]he court must

26  direct notice in a reasonable manner to all class members who would be bound by the proposal."

27

28  [53] Martin Decl. ¶¶ 27-31.
    [54] Martin Decl. ¶ 31.

-24-

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                    3:17-CV-03763-JSC

1    Rule 23 further requires "the best notice practicable under the circumstances, including

2    individual notice to all members who can be identified through reasonable effort." *See* Fed. R.

3    Civ. P. 23(c)(2)(B).

4         Here, the parties agreed to provide notice via direct mail to all class members.[55]  This is

5    the best practicable and affords class members with all due process protections required by Rule

6    23.   As such, the proposed Notice attached the Joint Stipulation as Exhibit 1 should be

7    approved.[56]

8    **VIII.   CONCLUSION**

9         For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant this

10   motion in its entirety and consistent with the [Proposed] Order submitted herewith.

11   Dated:  May 17, 2018                          AMARTIN LAW, PC
                                                    BRENNAN & DAVID LAW GROUP
12

13                                         By: /s/ *Alisa A. Martin*
                                               Alisa A. Martin
14

15                                             Attorneys for Plaintiffs and the Class

16

17

18

19

20

21

22

23

24

25

26

27

_____

28   [55] Martin Decl., Ex. 1, ¶ 53.
     [56] Martin Decl., Ex. 1, Ex. 1.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                              3:17-CV-03763-JSC

1

## Certificate of Service

2

      The undersigned hereby certifies that all counsel of record who are deemed to have

3

consented to electronic service are being served May 17, 2018, with a copy of this document via

4

the Court's CM/ECF system.  I certify that all parties in this case are represented by counsel who

5

are CM/ECF participants.   Any other counsel of record will be served by electronic mail,

6

facsimile transmission, and/or first class mail on this same date.

7

8

                                                      */s/  Lindsay David*        

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                3:17-CV-03763-JSC