Alisa A. Martin, State Bar No. 224037
**AMARTIN LAW, PC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone:  (619) 308-6880
Facsimile:  (619) 308-6881
alisa@amartinlaw.com

Lindsay C. David, State Bar No. 283267
**BRENNAN & DAVID LAW GROUP**
2888 Loker Avenue E., Ste 302
Carlsbad, CA 92010
Telephone: (760) 730-9408
Facsimile: (760)888-3575
lcdavid@brennandavid.com

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WILSON, CARRIE HUGHES, AND KATIA SEGAL, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> TESLA, INC., a corporation dba TESLA MOTORS, INC., and TESLA MOTORS, INC., a corporation, <br><br> Defendants. | Case No. 3:17-CV-03763-JSC <br><br> **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  August 30, 2018 <br> Time: 9:00 AM <br> Courtroom: Courtroom F - 15th Floor <br> Hon. Jacqueline Scott Corley |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 30, 2018, at 9:00 a.m., at the United States District Court for the Northern District Of California, located in Courtroom F on the 15th Floor at the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102.

Plaintiff will and hereby does move before the Honorable Jacqueline Scott Corley, for an order: (a) preliminarily approving the proposed settlement; (b) provisionally certifying the classes and appointing class representatives and class counsel; (c) approving the proposed notice and authorizing its dissemination; and (d) setting dates and procedures for the fairness hearing, including deadlines for class members to object to or request exclusion from the settlement.

This unopposed motion is based on this notice and motion, the supporting memorandum of points and authorities, and the declarations of Alisa A. Martin and Lindsay David all filed concurrently herewith, as well as the pleadings on file in this action, and upon such other matters, evidence, and arguments as may be presented to the Court before or at the hearing on this motion.

Dated:  July 21, 2018

AMARTIN LAW, PC
BRENNAN & DAVID LAW GROUP

By: s/ *Lindsay C. David*
Lindsay C. David

Attorneys for Plaintiff and the Class

**TABLE OF CONTENTS**

I.     INTRODUCTION _____ 1

II.    BACKGROUND _____ 4
       A.   Procedural History _____ 4
       B.   Tesla's Alleged Wrongdoings _____ 4
            1.   Misclassification Under the Commission Salesperson Exception ___ 5
            2.   Unpaid Overtime _____ 6
            3.   Missed Meal Breaks _____ 6
            4.   Missed Rest Breaks _____ 7
       C.   Discovery _____ 8
       D.   Potentially Enforceable Arbitration Agreements and Class Action Waivers ___ 8
       E.   Mediation and Settlement Negotiations _____ 10
       F.   Addition of PAGA Claims _____ 10

III.   SETTLEMENT TERMS _____ 11
       A.   Settlement Amount _____ 11
       B.   Class Representative Incentive Payment _____ 12
       C.   Attorney's Fees and Costs _____ 12
       D.   LWDA Distribution _____ 12
       E.   Administration Costs _____ 12
       F.   Individual Class Members' Settlement Shares _____ 13
       G.   Unclaimed Funds _____ 14
       H.   Dissemination of Class Notice _____ 14
       I.   Procedures for Resolving Disputes _____ 15
       J.   No Claim Form Requirement _____ 15
       K.   Opt-Out/Request for Exclusion Procedures _____ 16
       L.   Objection Procedures _____ 16

IV.    THE SETTLEMENT PROVIDES ADEQUATE COMPENSATION _____ 16
       A.   Valuations of The Primary Claims for Mediation _____ 16
       B.   Valuation for The Primary Claims Based on Proposed Settlement ___ 21
       C.   Analysis of Class Members' Average Settlement Shares _____ 22

V.     PRELIMINARY APPROVAL IS WARRANTED _____ 23
       A.   The Law Favors Settlement _____ 23
       B.   The Preliminary Approval Process _____ 23
       C.   The Settlement Is in the Range of Possible Approval _____ 24
            1.   The Settlement Was Achieved at Arm's Length _____ 25
            2.   Counsel Engaged in Extensive Discovery _____ 25
            3.   The Settlement Suffers from No Obvious Deficiencies ___ 25
            4.   The Requested Incentive Payment Is Reasonable _____ 25
            5.   The Requested Attorneys' Fees and Costs Are Reasonable ___ 27
            6.   Counsel Are Experienced in Similar Litigation _____ 28

VI.    CONDITIONAL CERTIFICATION IS WARRANTED _____ 28
       A.   The Numerosity Requirement is Satisfied _____ 29
       B.   The Commonality Requirement is Satisfied _____ 29
       C.   The Typicality Requirement is Satisfied _____ 30
       D.   The Adequacy Requirement is Satisfied _____ 30

VII.   THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS _____ 31

VIII.  CONCLUSION _____ 31

# TABLE OF AUTHORITIES

## CASES

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) .......................................... 24

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1203, 1214, 78 Cal. Rptr. 3d 572 (2008)
......................................................................................................................................... 20

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997)...................................... 24

*Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 960, 962 (2005) ...................... 6

*Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017) ..................................................... 3, 9, 10

*Finder v. Leprino Foods Co.*, No. 1:13-CV-2059 AWI-BAM, 2015 U.S. Dist. LEXIS 30652, at
*1 (E.D. Cal. March 12, 2015)................................................................................... 19

*Fleming v. Covidien Inc.*, 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011)...................... 20

*Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.1982) ........................................... 24

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)................................. 29

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ........................................................... 27

*In re Autozone, Inc. Wage and Hour Litig.*, Case No. 3:10-md-021590CRB, 2016 WL 4208200
at **6-7 (N.D. Cal. Aug. 10, 2016) ........................................................................... 19

*In Re HP Laser Printer Litig.*, No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D.
Cal. Aug 31, 2011)..................................................................................................... 25

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)....................................... 27

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *2-3 (N.D.
Cal. Jun. 30, 2007) .................................................................................................... 29

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). .................................. 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-1827 SI, 2011 WL 7575003, at *2
(N.D. Cal. Dec. 27, 2011) .......................................................................................... 26

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Pracs. Litig.*, No. 5:09-md-
02015 JF, 2011 WL 1877630, at *7 (N.D. Cal. May 17, 2011) .................................. 26

*Jaffe v. Morgan Stanley & Co., Inc.*, No. C-06-3903 TEH, 2008 WL 346417, at *2-3 (N.D. Cal.
Feb. 7, 2008) .............................................................................................................. 29

Labor Code § 201.............................................................................................................. 19

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003)....................... 30

*Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016)................ 19

*Makabi v. Gedalia*, No. BC468146, (L.A. Super. Ct. May 8, 2013) ................................ 20

*Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) ......................................... 27

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).......... 24

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d
615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983) .................................... 23

*Officers for Justice*, 688 F.3d at 625 ............................................................................. 24

*Parks v. Blue Buffalo Company, LTD, Great Plains Leasing, LLC,* Case No. 3:12-cv-01274
(USDC of Southern District of CA)........................................................................... 28

*Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 670 (2014)............................... 5, 7

*Rannis v. Recchia*, 380 Fed. Appx. 646, 650-51 (9th Cir. 2010)................................... 29

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)................... 26

*Serrano v. Bay Bread LLC,* 2016 Cal. Super. LEXIS 8043, *22 (June 29, 2016)....................... 19

*Singer v. Becton Dickinson and Co.,* 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal.
June 1, 2010).............................................................................................................. 27

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36, 138 Cal. Rptr. 3d 130
(2012) ......................................................................................................................... 21

*Varela v. Lamps Plus, Inc.*, 701 F. App'x 670, 672 (9th Cir. 2017) ........................... 3, 10

-ii-

*Williams v. MGM-Pathe Comm'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)............................ 27

*Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) .................................................................................................................................. 24

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 989 (9th Cir. 2010) ...................................................................................................................................... 1

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ........................................................................................................................ 3, 9, 10


## STATUTES

Fed. R. Civ. P. 23. .................................................................................................................... 28

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 29

Fed. R. Civ. P. 23(b)(3) ............................................................................................................ 28

Fed. R. Civ. P. 23(c)(2)(B). ...................................................................................................... 31

Cal. Lab. Code § 226.7(b)............................................................................................................ 7

Cal. Lab.Code § 2699.3(a) .......................................................................................................... 2

Cal. Lab. Code § 203 ................................................................................................................ 19

Cal. Lab. Code § 226.7 ........................................................................................................ 7, 19

Cal. Lab. Code § 226(e) ........................................................................................................... 19

Cal. Lab. Code § 2699(e)(2) .................................................................................................... 20

Cal. Lab. Code § 226(e)(1) ...................................................................................................... 20


## OTHER AUTHORITIES

IWC Order 7-2001 § 11 ............................................................................................................... 6

IWC Order 7-2001 § 12 ............................................................................................................... 7

IWC Order 7-2001 §§ 7(A)(3) and 11 ........................................................................................ 7

IWC Wage Order 4-2001 § 3(D) ................................................................................................ 5

IWC Wage Order 7-2001 § 3(D) ................................................................................................ 7


## TREATISES

Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions, § 11.41(4th ed. 2002) .......... 25

Manual for Complex Litigation, (Fourth) ("MCL 4th") § 21.632 (2004). .................................. 23

Manual for Complex Litigation, § 30.44 (2nd ed. 1985)............................................................ 24

MCL 4th, § 21.632..................................................................................................................... 28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On June 21, 2018, the Court heard Plaintiffs Brian Wilson, Carrie Hughes, and Katia Segal's request for preliminary approval of a $1,000,000, non-reversionary, non-claims-made settlement with their former employer, Tesla, Inc. ("Tesla"), covering a class period dating back to June 29, 2013, for a 253 member class, defined as: *All current and former employees of Tesla who worked in California during the class period as an owner advisor, sales advisor, or another similar exempt sales position.  The Class Period is from June 29, 2013 through the date of Preliminary Approval of the Settlement by the Court.*  The proposed settlement would resolve alleged California labor code violations based on Tesla's purported misclassification of owner and sales advisors ("OAs"), which resulted in the nonpayment of overtime hours and the nonprovision of meal and rest breaks, all of which Tesla denies.  The Court denied the motion and asked the parties to address the following issues:

•   **First**, the Court was concerned about the proposed class notice because the notice (1) contained an inadvertent reference to a claim form, (2) did not offer class members a practical method to obtain copies of the complaint, settlement agreement, motions, and other relevant documents, (3) did not identify a website that provides information about the settlement, (4) did not clearly indicate that class members could contact Proposed Counsel via email, (5) did not clearly explain the circumstances under which class members would receive compensation because the notice implied in one section that if class members did nothing, they would receive compensation, but in another section indicated that compensation was contingent upon the Court finally approving the settlement, and (6) did not adequately conform with the requirements outlined in *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 989 (9th Cir. 2010) because the notice did not specify how class members could obtain a copy of the anticipated attorney fee motion and did not indicate that the attorney's fee motion would be available to the class before the deadline to object to the settlement.  Proposed Counsel re-drafted the notice to address those concerns.  (*See* Martin Decl., Ex 1, Ex. 1).

• **Second**, the Court wanted additional information about how the potential claims were valued.  Proposed Counsel addressed that request by elaborating on the steps taken and information used to value the claims, as well as, providing a chart showing pertinent calculations. (*See* Brief, §IV; and David Decl., Ex. 4).

• **Third**, the Court wanted additional information about the arbitration agreements that the class executed and additional analysis as to whether the agreements, including class waivers, were enforceable. Proposed Counsel provides that information below (*See* Brief, § II(D); David Decl. ¶ 2).

• **Fourth,** the Court inquired about where the email addresses that would be used for mailing the reminder notices were coming from under paragraph 53(a)(i) of the settlement agreement. Tesla will be providing all email addresses in its custody, possession, or control. (*See* Brief, §III(H); David Decl, ¶ 10).

• **Fifth**, the Court raised concerns about the complaint being amended to add PAGA claims after the parties had reached a settlement and asked why discounts  were given to the claims since they could not be compelled to arbitration. As explained below, Proposed Counsel mailed to the Labor and Workforce Development Agency ("LWDA") notice of the alleged PAGA violations on June 29, 2017 – the same day the initial complaint was filed. As per Labor Code § 2699.3(a), Proposed Counsel had to wait at least 65 days before adding the claims to the complaint.  Before that hold period expired, the Court stayed the action pending mediation per the parties' stipulation.  The parties fully addressed and analyzed the PAGA claims at mediation.  Because PAGA penalties are discretionary and routinely reduced by courts, the parties settled the claims for less than their potential maximum value. (*See* Brief, § II(A, F), IV(A)(6); Martin Decl., ¶3; Docket No. 13).

• **Sixth**, the Court expressed concern over the speed in which the settlement was reach.  As addressed below, Proposed Counsel performed a detailed damages analysis based on a significant amount of information and data produced by Tesla.  Plus, Proposed Counsel weighed the benefit to the Class with the risk of proceeding with litigation.  (*See* Brief, §IV; David Decl., Ex. 4).

• **Seventh,** the Court indicated that the proposed incentive awards were high compared to the amount typically awarded. As explained below, the Class Representatives seek $10,000 each because, among other reasons, two of the plaintiffs' employment ended after filing the complaint and the plaintiffs each faced media attention that will likely have a negative impact on future employment. (*See* Brief, §V(5)(C)).

The proposed Joint Stipulation of Settlement ("Settlement") is fair, adequate, and reasonable, and in the class' best interest because, among other things, the non-opt out class members will receive monetary compensation for their unpaid wages without having to do anything. This is particularly valuable because absent this settlement, the class likely would have to pursue any claims they have against Tesla in arbirtration because the class is arguably bound to arbitration agreements, many of which preclude class-wide relief. When the parties began exploring early resolution, the issue of whether the class waivers were enforceable was pending before the United States Supreme Court in *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017) and the issue of whether class wide arbitration could be available to Class Members whose arbitration agreements were silent as to class actions in light of *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) and *Varela v. Lamps Plus, Inc.*, 701 F. App'x 670, 672 (9th Cir. 2017). The answer to these questions would have significantly impacted Tesla's liability exposure because if the Court held that class action waivers were unenforceable, then Tesla would potentially be subject to classwide damages. But if the Court held that class action waivers were enforceable, then Tesla's liability exposure would be limited to Plaintiffs' individual damages, which is far less then classwide damages.

Facing that uncertainty, the parties reached the settlement less than a year after filing the complaint, which is a phenomenal benefit to the class. Despite the relative speed that this settlement was reached, the parties still engaged in substantial discovery and analysis to reach a fair and appropriate settlement. Thus, the parties seek a court order: (a) preliminarily approving the proposed settlement; (b) provisionally certifying the class and appointing class

representatives and class counsel; (c) approving the proposed class notice packet and authorizing its dissemination; and (d) setting the final approval hearing.[1]

## II.   BACKGROUND

### A.   Procedural History

- **June 29, 2017** – Plaintiff Wilson filed a class action complaint against Tesla in the District Court for the Northern District of California, alleging causes of action for (1) failure to pay overtime wages under FLSA; (2) failure to pay minimum wage under the Cal. Lab. Code; (3) failure to provide overtime compensation under Cal. Lab. Code; (4) failure to provide meal breaks; (5) failure to provide rest breaks, (6) failure to provide proper wage statements, and (7) unfair business practices.

- **June 29, 2017** – Plaintiff gave written notice of the alleged PAGA violations by filing online with LWDA and by certified mail to Tesla.

- **August 11, 2017** – Plaintiff Wilson amended the complaint to add Plaintiff Hughes and assert a cause of action for failure to pay final wages.  (Dkt 10).  On August 29, 2017, the Court entered an order to stay the action pending mediation. (Dkt 14).

- **May 17, 2018** – Plaintiffs Wilson and Hughes filed a second amended complaint to add Plaintiff Segal, assert a cause of action under California's Private Attorneys General Act ("PAGA") Labor Code 2699 *et seq*., and remove the cause of action under FLSA.[2]

- **May 16, 2018** – Plaintiff filed a copy of the proposed settlement agreement online with the LWDA.

### B.   Tesla's Alleged Wrongdoings

Tesla is an automaker and a technology and design company that focuses on energy innovation. Tesla does not sell its automobiles via dealerships, but instead uses a factory-direct sales system with non-negotiable pricing.  Tesla has showrooms across the nation in which a few cars are available for test drives and purchase.[3] Tesla employed Plaintiffs and others as OAs. OAs worked in Tesla's showrooms and sold cars to Tesla's customers. Tesla classified its OAs

---

[1] Declaration of Alisa A. Martin (Martin Decl.) ¶ 2, Ex. 1, Joint Stipulation of Settlement.
[2] Martin Decl., ¶ 3.
[3] Martin Decl., ¶ 4.

as exempt under the commissioned salesperson exemption and compensated its OAs by paying them a salary, as well as bonuses and commissions.[4]

Plaintiffs allege that Tesla primarily violated California law by misclassifying them and other OAs as exempt from overtime and breaks, resulting in the nonpayment of overtime pay and failure provide legally compliant meal and rest breaks as laid out more fully below.[5] Tesla not only denies these allegations, but also contends that each employee was subject to an arbitration agreement and many to a  class waiver, which – based on the United States Supreme Court's decision – would mean that each OA would have to initiate his/ her own individual arbitration to receive any compensation. Placing that burden on each OA would result in many OAs never pursuing their claims due to the time and resources involved arbitration.[6]

### 1.    Misclassification Under the Commission Salesperson Exception

Under California law, employees may be classified as "exempt" from overtime under the "commission salesperson exception," if they (1) make at least 1.5 times the minimum wage and (2) over half of their compensation comes from commissions.  IWC Wage Order 4-2001 § 3(D). California law requires the commissioned sales exception to be evaluated on a workweek basis. *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 670 (2014).  Plaintiffs allege that Tesla treated OAs as exempt under the commission salesperson exception without ever evaluating whether the exception's requirements had been met. Plaintiffs further allege that OAs were misclassified because – as shown by their wage statements – for the vast majority of time, OAs' commissions failed to make up over half of their income.[7]

In response, Tesla contends that OAs were rarely misclassified because, among other things, OAs also earned bonuses and that these bonuses should be treated as another form of commissions  when  evaluating  whether  over  half  of  their  compensation  comes  from commissions.  Tesla further contends that Plaintiffs will not be able to certify this issue because,

---

[4] Martin Decl., ¶ 5.
[5] Martin Decl., ¶ 6.
[6] Martin Decl., ¶ 7.
[7] Martin Decl., ¶ 8.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                          3:17-CV-03763-JSC

among other reasons, to establish misclassification, every OAs' wage statements have to be reviewed, thereby involving individualized inquiries and issues.[8]

### 2.    Unpaid Overtime

Plaintiffs allege that OAs were only exempt from overtime during workweeks wherein OAs' commissions equated to over half of their compensation; otherwise, OAs were entitled to overtime as follows:

- one and one-half times the employee's regular pay rate for all hours worked in excess of eight hours up to and including 12 hours in any workday, and for the first eight hours worked on the seventh consecutive workday in a workweek if the employee's commissions did not equate to more than half of his or her income; and

- double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and in excess of eight hours on the seventh consecutive workday in a workweek if the employee's commissions did not equate to more than half of his or her income.[9]

Plaintiffs allege that Tesla regularly required OAs to work over eight hours per day or forty hours per week.  Because Tesla always treated OAs as exempt, Tesla never paid them overtime.  Tesla, however, denies Plaintiffs allegations, arguing, among other things, that OAs generally were not scheduled or expected to work over eight hours per day or forty hours per week and that to the extent some OAs did work those hours, those hours were not recorded anywhere, thereby making damages difficult to prove, particularly on a class-wide basis.[10]

### 3.    Missed Meal Breaks

California law requires employers to provide non-exempt employees with duty-free, uninterrupted 30-minute meal breaks within the first five hours of work. IWC Order 7-2001 § 11. Employers cannot formulate policies that result in employees not receiving statutory breaks, which are mandatory. *Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 960, 962 (2005).

---

[8] Martin Decl., ¶ 8.
[9] Martin Decl., ¶ 9.
[10] Martin Decl., ¶ 9.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                    3:17-CV-03763-JSC

Employers also cannot require employees to work through their meal breaks. Labor Code § 226.7(a). Employers who fail to provide employees with the opportunity to take meal breaks, must pay one additional hour of pay at employees' regular pay rate for each workday a meal break was not provided.  Moreover, employers are required to keep accurate records of all meal breaks taken. IWC Order 7-2001 §§ 7(A)(3) and 11; Labor Code § 226.7(b).

Generally exempt employees are not subject to meal and rest break requirements; however, that general rule does not apply to employees that fall under the commissioned salesperson exemption.   Employees that fall under that exemption are only exempt from overtime pay, not the meal and rest break requirement. IWC Wage Order 7-2001 § 3(D); *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 670 (2014).  So regardless of whether the OAs were, or were not, properly classified as exempt from the overtime requirement under the commissioned sales exemption, OAs were entitled to receive off-duty breaks.

Plaintiffs allege that Tesla did not provide OAs with lawful meal breaks and that this was confirmed by Tesla's written meal break policy that expressly did not apply to OAs. Tesla denies this allegation, arguing that breaks were built into OAs' work schedule and that OAs were free to take breaks whenever necessary.  Moreover, Tesla argues that each store was operated by a different store manager who controlled the day to day functions including employee management and breaks, thereby precluding certification.[11]

### 4.    Missed Rest Breaks

Under California law, employers must permit employees to take statutory rest breaks during which they are relieved of all duties. Rest breaks must - insofar as practicable - be taken in the middle of each work period and be at the minimum rate of 10 minutes for every 4 hours worked, or a major fraction thereof. IWC Order 7-2001 § 12. Employees are entitled to an additional hour of pay for any shift during which they did not receive a lawful rest break. *Id.*; Labor Code § 226.7.  Like meal breaks, the commissioned sales exemption does not apply to the rest break requirement. IWC Wage Order 7-2001 § 3(D).

---

[11] Martin Decl., ¶ 10

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                    3:17-CV-03763-JSC

Plaintiffs contend Tesla's written rest break policy only applied to non-exempt employees and Tesla did not provide OAs with rest breaks in accordance with California law.[12] Tesla denies this allegation, arguing, among other things, that OAs were free to take breaks whenever necessary and that that each store was run differently making this claim difficult to certify.  Tesla further argues that rest break claims are notoriously difficult to prove and that the claim is implausible given the OAs worked in malls.[13]

### C.   Discovery

Proposed Counsel conducted discovery and research before and after filing the complaint. Tesla also produced key information and data, including the number of class members, policies and procedures, and payroll data so that Plaintiffs could evaluate their claims and prepare for mediation. Proposed Counsel also obtained information from witnesses; reviewed and analyzed the produced documents, information, and data; researched the applicable laws and potential defenses; and prepared a damages model.[14]

### D.   Potentially Enforceable Arbitration Agreements and Class Action Waivers

A driving force behind the parties exploring and reaching a settlement early in this case concerned arbitration agreements that Plaintiffs and class members signed.  The issue was whether Plaintiffs were permitted to pursue class claims in arbitration.  Tesla's concern about potential classwide liability exposure fueled its interest in reaching an early resolution.

As background, Tesla required its employees to sign arbitration agreements. Tesla utilized two versions. The current version contains a class action waiver, which states "[a]ny claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative procceding…"; whereas the earlier version did not contain a class action waiver or directly reference class actions.  Plaintiffs and class members signed arbitration agreements with Tesla.  Plaintiffs Brian Wilson and Carrie Hughes signed agreements that contained the class waiver.[15]  And Plaintiff Katie Segal, who

---

[12] Martin Decl., ¶ 11.
[13] Martin Decl., ¶ 11.
[14] Martin Decl., ¶ 12.
[15] David Decl., Ex. 3

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

started working at Tesla in 2013, signed the earlier version that did not contain a class action waiver.[16] The Court asked for the exact numer of class members who signed agreements with the waivers and without waivers. Based on data provided for mediation, Proposed Counsel estimated that anywhere between 39% and 81% of the class signed agreements with waivers, but Tesla is working on getting an exact number before the next hearing.

Tesla argued that regardless of which version a class member signed, both versions preclude anyone from pursuing classwide relief in arbitration.[17] As for the version that contained a class action waiver, when the parties negociated and reached this settlement, the issue of whether a class action waiver was valid was pending before the United States Supreme Court in *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017). The pending case provided uncertainty that both sides factored into their damage analysis. After the parties reached a settlement, the Supreme Court resolved that issue, holding that class waivers were valid, which means that if this settlement is not approved, then a large number of class members – anywhere between 99 and 205 members – will have to initiate their own lawsuit or arbitration to obtain any type of relief. The chances of that happening are slim because, among other reasons, employees (rightly or wrongly) fear retaliation from Tesla and/or other employers, lack the financial means to hire an attorney, are intimidated by the legal process, etc.

As for the version that lacked a class action waiver, Tesla argued that the agreement still precluded the classwide relief, relying on *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010), which explained that the Federal Arbitration Act (FAA) requires a contractual basis for concluding that a party *affirmatively* agreed to submit a dispute to class arbitration and held that a party may *not* be compelled to submit to class-wide arbitration under the FAA where the parties' arbitration agreement is silent on the issue. However, Proposed Counsel contends that Tesla's arbitration includes language that shows the parties affirmatively agreed to class arbitration, including a provision that states the agreement preserves "all rights and remedies that you or Tesla would be

---

[16] David Decl., Ex. 2
[17] David Decl. ¶2

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

entitled to pursue in a court of law…"[18].  Courts have held that similar language in arbitration

agreements shows, at a minimum, the agreement is capable of two interpretations, one permitting

class arbitration, and this dual interpretation results in the ambiguity being construed against

drafter, including the Ninth Circuit in *Varela v. Lamps Plus, Inc.*, 701 F. App'x 670, 672 (9th Cir.

2017). In that case, the court held that (1) where an agreement is silent as to arbitration or

otherwise gives no express mention of class proceedings, (2) the parties did not stipulate that

they failed to reach an agreement as to class actions, and (3) the contract is ambiguous as to class

actions, the ambiguity is construed against the drafter. *Id* at *672.  The *Varela* decision will be

reviewed by the Supreme Court and thus is at risk of being overturned.

In short, when the parties reached the settlement, both sides faced risk, and continue to

face risk, regarding the availablilty of classwide relief.

### E.    Mediation and Settlement Negotiations

In light of the uncertainty regarding the validity and enforcement of class action waivers

raised by *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017) and the ability to proceed on a

classwide basis in light of the arbitration agreement under *Stolt-Nielsen S.A. v. AnimalFeeds Int'l

Corp.*, 559 U.S. 662, 684, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) and *Varela v. Lamps Plus,

Inc.*, 701 F. App'x 670, 672 (9th Cir. 2017), the Parties decided on early mediation. Accordingly,

on November 10, 2017, the Parties mediated their dispute with Michael Dickstein. With the

assistance of Michael Dickstein, the Parties reached an agreement as to key terms of the

settlement. Thereafter, the Parties continued negotiating with Dickstein's assistance and

eventually executed the Settlement in May 2018.[19]

### F.    Addition of PAGA Claims

After the parties executed the Settlement, on May 1, 2018, Plaintiffs filed an amended

complaint to add PAGA claims.  However, Tesla and the LWDA knew about the claims since

June 29, 2017 when, as per Labor Code § 2699.3(a), Plaintiff gave written notice of the alleged

PAGA violations by filing online with LWDA and by certified mail to Tesla.  Plaintiff could not

---

[18] David Decl., Ex. 2
[19] Martin Decl., ¶ 13.

immediately amend the complaint to add the PAGA claims because, as per Labor Code § 2699.3(a), Plaintiff had to wait until September 2, 2017 (i.e. 65 days) before adding PAGA claims to the complaint. Before that date arrived, the parties agreed to partipate in mediation and requested the Court to stay the proceedings pending mediation, which the Court granted. (Dckt No. 14). Although the PAGA claims were not added until after the settlement was reached, the parties fully addressed and analyzed the claims at mediation. For example, Tesla produced all the payroll data for all Class Members covering the PAGA period to allow Plaintiffs to fully analyze potential PAGA penalties and unpaid wages covering the PAGA liability period. Moreover, because of Tesla's inability to compel the PAGA penalty claims to arbitration, the PAGA claims were the second leading reason as to why Tesla agreed to early mediation. California courts recently ruled that PAGA claims are not subject to mediation and are subject to broad classwide discovery. So regardless of how the arbitration and class waiver issues were ultimately resolved, a portion of this case was going to remain in court.

## III. SETTLEMENT TERMS

### A. Settlement Amount

As a result of arms-length negotiations, the Parties agreed to a settlement amount of $1,000,000 ("Gross Fund Value"). This amount is based on a class size of 253 class members who collectively worked 13,691 weeks. If the ultimate work weeks exceed 13,691 by more than 10%, after the class period closes on the date of Preliminary Approval, the Gross Fund Value will be proportionally increased.[20] The Gross Fund Value is non-reversionary and includes all court-awarded attorney's fees and costs, administrative costs, incentive awards, employer's share of the payroll taxes, and the LWDA payment. The Gross Fund Amount is to be paid into an escrow account administered by a court-appointed administrator in one payment. Tesla must make this payment within 7 calendar days from the entry of the Final Approval Order and Judgment.[21]

---

[20] Martin Decl., Ex. 1, ¶¶ 23, 53, 55
[21] Martin Decl., Ex. 1, ¶ 54.

Subject to court approval, the court-appointed administrator will pay from the Gross Fund Value all fees, costs, and awards, including any court-awarded incentive payment, attorney's fees and costs, administration costs, and PAGA penalties. The remaining amount, referred to in the Settlement as the Net Common Fund, will be paid to non-opt out class members, as explained below.[22]

### B.   Class Representative Incentive Payment

Plaintiffs Wilson, Hughes, and Segal worked diligently to represent the class' best interests. Subject to Court approval, the settlement provides for an incentive award of $10,000 to each class representative for, among other things, prosecuting this case, taking the risks of serving as the class representative, providing factual information and documentation necessary to prosecute the action, providing a general release of all claims, and maintaining contact with counsel.[23]

### C.   Attorney's Fees and Costs

The settlement provides that Proposed Counsel may request 33.3% of the Gross Settlement Amount, totaling $333,333.33, plus costs up to $20,000.[24]

### D.   LWDA Distribution

For purposes of Section 2699(j) of the California Labor Code, $50,000 of the Settlement Fund will be treated as PAGA penalties, of which $37,500 will be paid to the California Labor and Workforce Development Agency ("LWDA").[25]

### E.   Administration Costs

Subject to court approval, the parties agreed to the appointment of ILYM Group, Inc. as the third party administrator to manage all settlement funds, prepare and mail the class notice packets, locate class members, and issue settlement payments, including payments to the class,

---

[22] Martin Decl., Ex. 1, ¶ 55.
[23] Martin Decl., Ex. 1, ¶¶ 27-31.
[24] Martin Decl., Ex. 1, ¶ 28.
[25] Martin Decl., Ex. 1, ¶ 30.

1 the class representative, class counsel, tax authorities, and the LWDA.[26] ILYM Group's quote to

2 perform all administrative tasks provided in the Settlement is capped at $15,000.[27]

3 **F.    Individual Class Members' Settlement Shares**

4 The settlement does not require class members to submit a claim to receive

5 compensation. Approximately $550,000 will be distributed over one payment to non-opt out

6 class members as individual settlement shares. The settlement shares are calculated as follows:

7 1.  Certain expenses, costs, payments, and taxes will be subtracted from the Settlement

8 Fund:

9 | **Gross Fund Value (\$1,000,000)** | - | **Incentive Awards (\$30,000)** | = | **Net Common Fund (approx. \$550,000)** |
| --- | --- | --- | --- | --- |
| | | **Class Counsel Fees (\$333,333.33)** | | |
| | | **Class Counsel Costs (\$20,000)** | | |
| | | **Administrative Costs (\$15,000)** | | |
| | | **PAGA Payment (\$37,500)** | | |
| | | **Employer Taxes (\$14,000)** | | |

18 2.  The remaining Net Common Fund will be distributed to non-opt out class members

19 based on the number weeks each individual member worked during the class period:

20 | **Indiv.'s Workweeks** | ÷ | **Total # of Class' Workweeks** | = | **Indiv.'s Proportional Share** |
| --- | --- | --- | --- | --- |
| **Net Settlement Fund** | x | **Class Member's Proportional Share** | = | **Indiv.'s Settlement Share** |

23 Assuming every class member participates in the settlement, the average settlement share for 253

24 members is approximately $2,173.91 which is equivalent to, on average, 72.5 hours of work at

25 an hourly rate of $30. The potential recovery is significant given (1) the speed in which class

26 members will receive their settlement payments, (2) the nonenforcement of potentially valid

---

[26] Martin Decl., Ex. 1, ¶ 34.
[27] Martin Decl., ¶ 13.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                      3:17-CV-03763-JSC

arbitration agreements and/or class action waivers that were purportedly entered into by class members and (3) Tesla's defenses as outlined in Section IV herein.[28]

Thus, the settlement is fair, reasonable, and in the class' best interest, particularly after balancing the proposed settlement terms, the speed in which class members will receive his and her settlement, and obtaining classwide relief against the risk of not being able to pursue class-wide relief, the probable outcome of liability, the untested issues, the range of recovery at trial, and the likelihood of collection of any recovery at trial, along with considering: whether the case could continue as a class action; the prospect of an adverse ruling on class certification; the difficulties of complex litigation; the lengthy process of establishing specific damages; individual issues; and possible delays and appeals. Proposed Counsel also considered Tesla's opposing arguments, supporting evidence, and case law.[29]

One-third of the settlement share will represent wages that are subject to tax withholdings and reported on an IRS Form W-2, and the other two-thirds will equally represent interest and penalties that will be reported on a Form 1099.[30]

**G.  Unclaimed Funds**

Participating class members will have 180 calendar days to cash their settlement checks. Any residue from the uncashed checks shall be paid by the Settlement Administrator to the California Department of Industrial Relations Unclaimed Wages Fund, with the identity of the Participating Class Member to whom the funds belong.[31]

**H.  Dissemination of Class Notice**

Class notice will be distributed by direct mail.  The Notice will be in English and substantially similar to the form attached to the Settlement as Exhibit 1. The Notice sets forth a brief description of the case, provides the class definition, informs the class about the nature and scope of the settlement, sets forth the requested attorney's fees and costs and incentive payment, informs the class about their opportunity to be heard at the Final Settlement Approval Hearing,

---

[28] Martin Decl., Ex. 1, ¶ 55; Martin Decl. ¶14.
[29] Martin Decl., ¶ 14.
[30] Martin Decl., Ex. 1, ¶ 55.
[31] Martin Decl., Ex. 1, ¶ 55.

informs class about their right to either object to or opt-out of the settlement, and provides the procedures for doing so.  The Notice also explains the res judicata effects of not opting out and provides Proposed Counsels' and the Settlement Administrator's contact information. The Notice further provides class members with their estimated settlement amount and explains how this amount was calculated.   The Settlement Administrator will mail and email a reminder postcard 30 days after the Class Notice is sent to Settlement Class Members. [32]

Before notices are mailed, the Settlement Administrator will conduct a search for a more current address through the National Change of Address Database maintained by the United States Postal Service.  If any notices are returned as undeliverable, the Settlement Administrator will conduct one search for a more current address through other means, which may include an internet search and will re-mail the packets. [33]

### I.        Procedures for Resolving Disputes

The Class Notice discloses each class member's estimated settlement amount and the number of workweeks used to calculate that amount.  If class members dispute the number of workweeks used to determine their settlement amount, they can contact the Settlement Administrator. [34]

The Settlement has procedures in place for resolving disputes. The Settlement Administrator will first try to resolve any dispute.  In the absence of fraud or gross negligence, Tesla's records will be presumed accurate. If the Settlement Administrator cannot resolve the dispute, the Parties' counsel shall confer in good faith and make use of the services of mediator Michael Dickstein. If counsel cannot stipulate to a compromise, the parties shall seek resolution by the Court. [35]

### J.        No Claim Form Requirement

Class members do not have to do anything to receive money from the settlement.  There is no claim form requirement.

---

[32] Martin Decl., Ex. 1, Ex. 1; Martin Decl., Ex. 1, ¶ 53.
[33] Martin Decl., Ex. 1, ¶ 53.
[34] Martin Decl., Ex. 1, Ex. 2.
[35] Martin Decl. Ex. 1, ¶ 53

### K.   Opt-Out/Request for Exclusion Procedures

To be excluded from the settlement, class members must submit a request for exclusion to the Settlement Administrator by the Response deadline.[36] As directed in the proposed class notice, the request for exclusion must (1) contain the name and last 4 digits of the Social Security number of the person requesting exclusion; (2) be signed by the Class Member; and (3) be mailed to the administrator, postmarked no later than 60 days after the class notice packet is initially mailed. Anyone who opts-out of the settlement will not receive money from the settlement, will not be bound by the settlement, and will not have the right to object, appeal or comment on the settlement.[37]

### L.   Objection Procedures

Any class member, who does not submit a valid and timely opt-out request to the Settlement Administrator, may object to the settlement by submitting his or her objection to the Settlement Administrator by the response deadline.  The objection must (1) state the full name of the Class Member; (2) be signed by the Class Member; (3) state the grounds for the objection; and (4) must be postmarked by the response deadline and returned to the Settlement Administrator at the specified address.  Class members who opt-out of the settlement cannot object to the settlement.[38]

## IV.   THE SETTLEMENT PROVIDES ADEQUATE COMPENSATION

### A.   Valuations of The Primary Claims for Mediation

#### 1.   Unpaid Overtime

**Violation**.  Plaintiffs alleged that Tesla treated its OAs as exempt under the commission salesperson exemption without evaluating whether over half of their compensation came from commissions.

---

[36] Martin Decl., Ex. 1, Ex. C.
[37] Martin Decl., Ex. 1, ¶ 53.
[38] Martin Decl., Ex. 1, ¶ 39.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

**Initial Valuation**.  Proposed Counsel valued the total liability exposure for this claim at approximately **$1.2 mil** (using an estimated 2 hours of overtime per week at an overtime rate of $45 per hour for each the 13,691 workweeks).  *See* Liability Exposure Chart for calculations.[39]

**Discounted**.  Although Plaintiffs are confident that this issue is certifiable, Plaintiffs considered Tesla's arguments when evaluating this claim. Tesla argued that the issue of whether each OA was misclassified is arguably determined on a case by case basis and the amount of overtime each OA worked may not have occurred regularly and/or resulted from a uniform, state-wide policy.  Tesla further argued that the likelihood of getting this claim certified is not certain because the claim involves individualized issues that may predominate and there is no easy way of identifying those who worked overtime.  Moreover, Tesla argued that it was Tesla's policy and practice to not schedule its OAs for overtime.  Finally, Tesla argued that the OAs were properly classified as exempt because their bonuses were simply another form of commissions, and their bonuses and commissions together exceeded their salary, i.e. amounted to over one-half of their total income.  While Proposed Counsel disagrees with this assessment, Proposed Counsel concedes there is no black and white law regarding classification of the bonus and whether they can be considered in conjunction with the commissions when classifying a commissioned salesperson as exempt and/or non-exempt. Factoring in Tesla's arguments and certification issues, Proposed Counsel reduced their valuation to **$500,000**.[40]

### 2.   Missed Meal Breaks

**Violation**. Although Tesla classified its OAs as exempt from overtime, this exemption only applied to overtime and not meal and rest breaks.  As such, Tesla was required to provide meal and rest breaks to each of its OAs, but Plaintiffs alleged that Tesla failed to provide breaks or pay an additional hour of compensation for missed breaks.

**Initial Valuation**.  Plaintiffs initially estimated the liability exposure for this claim could exceed **$1 million** over a four-year period. Witness interviews revealed that depending on business, OAs often did not receive breaks. As such, this valuation assumed that half of the shifts

---

[39] David Decl., Ex. 4
[40] Martin Decl., ¶ 16.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

(34,227 shifts[41]) during the liability period involved missed meal breaks and used an hourly rate of $30. *See* Liability Exposure Chart for calculations. [42]

**Discounted**. Plaintiffs considered Tesla's arguments that OAs' work schedules factored in sufficient time for OAs to take breaks and that there was no uniform, statewide policy that specifically denied OAs their ability to take legally compliant meal breaks, thereby making the claim difficult to get certified due to individualized issues. Plaintiff thus reduced its initial valuation to **$500,000**, which accounted for Tesla's arguments, and the uncertainties and vagaries of certification and trial.[43]

### 3. Missed Rest Breaks

Like meal breaks, Tesla was required to provide OAs, regardless of whether they were improperly classified as exempt, with legally compliant rest breaks. Plaintiffs allege that Tesla's rest break policies were limited to non-exempt employees, and that based on Plaintiffs' and witnesses' accounts, OAs were not provided legally compliant rest breaks.

**Initial Valuation**. Proposed Counsel initially valued the claim at approximately **$1 million**. *See* Liability Exposure Chart for calculations.[44]

**Discount**. Tesla denies that OAs were not afforded rest breaks or had a company-wide policy that precluded OAs from taking breaks. Tesla further contends that each Tesla store had its own store manager and instructions, thereby undermining the appropriateness of class certification.[45] To account for Tesla's defenses, the potential difficulty in establishing this claim, and the potential difficulty in getting this claim certified, Proposed Counsel reduced the valuation to **$350,000**.

### 4. Waiting Time Penalties

**Violation**. Plaintiffs allege that Tesla is liable for waiting time penalties due to nonpayment of overtime and missed meal breaks.

---

[41] Calculated using 5 Shifts for Each of the 13,691 workweeks (13,691 Workweeks x 5 = 68,455 Shifts)
[42] David Decl., Ex. 4
[43] Martin Decl., ¶ 17.
[44] David Decl., Ex. 4
[45] Martin Decl., ¶ 17.

1    **Initial Valuation**. Proposed Counsel initially valued this claim between $1 million and

2    $1.5 million. *See* Liability Exposure Chart for calculations.[46]

3    **Discount**.   Although nonpayment of overtime will undoubtedly support a waiting time

4    penalty, missed break claims do not conclusively generate a wage to which a § 203 claim could

5    be tethered.  The California Court of Appeal stated, arguably in dicta, that a meal break violation

6    claim under Labor Code § 226.7 cannot support a waiting time penalty under Labor Code § 203.

7    *Ling v. P.F. Chang's China Bistro, Inc.,* 245 Cal. App. 4th 1242, 1261 (2016); *Serrano v. Bay*

8    *Bread LLC,* 2016 Cal. Super. LEXIS 8043, *22 (June 29, 2016)(stating that no published

9    California case holds contrary to *Ling*); *but see In re Autozone, Inc. Wage and Hour Litig.*, Case

10   No. 3:10-md-021590CRB, 2016 WL 4208200 at **6-7 (N.D. Cal. Aug. 10, 2016) (holding that

11   meal period payments constitute "wages" and can therefore form the basis of Labor Code §§

12   201-203 claim for waiting time penalties).  As discussed above, Tesla disputed the underlining

13   overtime claim and argued that even if it did fail to pay overtime, it did not act willfully, a

14   required showing under § 203.  Taking Tesla's arguments into account and the uncertainties

15   outlined above, Proposed Counsel reduced the value of this claim to **$500,000**.[47]

16                    **5.       Wage Statement Violations**

17   **Violation.**  Plaintiffs alleged that since Tesla failed to pay overtime and rest break

18   premiums, Tesla failed to provide proper wage statements.

19   **Initial Valuation**.  Plaintiffs valued the total liability exposure for this claim between

20   $250,000 and $500,000. *See* Liability Exposure Chart for calculations.[48]

21   **Discount**.   A portion of this claim is based on the nonpayment meal and rest break

22   premiums.  Federal courts do not uniformly agree on whether that meal and rest break premiums

23   under Labor Code § 226.7 can support a wage statement penalty under Labor Code § 226(e).

24   *See Finder v. Leprino Foods Co.,* No. 1:13-CV-2059 AWI-BAM, 2015 U.S. Dist. LEXIS 30652,

25   at *1 (E.D. Cal. March 12, 2015). Plus, Tesla argued that plaintiffs cannot establish "injury" that

26   resulted from Tesla's "knowing and intentional failure" to furnish wage statements that included

27

28   [46] David Decl., Ex. 4
     [47] Martin Decl., ¶ 18.
     [48] David Decl., Ex. 4

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                              3:17-CV-03763-JSC

premium pay for missed breaks.  *See* Cal. Lab. Code § 226(e)(1). After taking conflicting law and Tesla's defenses into account, Plaintiffs applied a significant discount to realistically reflect Tesla's liability exposure and valued this claim at $50,000.

### 6.   PAGA Penalties

**Violation.**  Plaintiffs sought PAGA penalties based on the nonpayment of overtime and missed break premiums.

**Initial Valuation**.   The various penalty valuations are set forth in the Liability Chart. For mediation, we valued PAGA penalties for underpaid waged, missed meal breaks, and missed rest breaks at $417,000.. This was based on a 90% violation rate for underpaid wages, 90% violation rate for missed meal. breaks and a 50% violation rate for missed rest breaks. *See* Liability Exposure Chart for calculations.[49]

**Discount to Valuation For Defenses**.  PAGA claims are difficult to evaluate because there are many obstacles to the actual award of the civil penalty. First, defendants routinely argue that penalties cannot accrue until a court has actually found a violation to exist. Here, as of yet, there has been no finding. Additionally, § 2699(e)(1) and (2) give trial courts discretion to access or lower civil penalties. Second, defendants routinely argue that when statutory penalties are imposed, the imposition of additional civil penalties under PAGA is unjust, *etc*. Several courts have addressed this issue and have exercised broad discretion to dramatically limit such awards, including:

- *Fleming v. Covidien Inc.,* 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) (invoking § 2699(e)(2) and reducing PAGA penalty award from $2.8 million to $500,000);

- *Makabi v. Gedalia,* No. BC468146, (L.A. Super. Ct. May 8, 2013)(trial court invoked § 2699(e)(2) and declined to apply any PAGA penalties, despite finding that defendants violated PAGA);

- *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1203, 1214, 78 Cal. Rptr. 3d 572 (2008) (approving reduction of penalty amount to one-third of the

---

[49] David Decl., Ex. 4

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

damages award even though there was "no evidence that Cintas [did] not entertain a good faith belief that the LWO did not apply to workers in Plaintiffs' position");

- *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36, 138 Cal. Rptr. 3d 130 (2012)(reducing penalty amount by 30% where "defendants took their obligations under Wage Order No. 9 seriously and attempted to comply with the law).

Thus, the likelihood of the full amount of penalties being awarded where, as here, the underlying "premium pay" sums are sought[50] and in light of the Court's discretion to deny or significantly reduce PAGA penalties,[51] particularly when the prescribed award would be "unjust, arbitrary and oppressive, or confiscatory"[52] is unlikely.  Based on the various risks, Plaintiffs discounted their valuation to $200,000 and ultimately settled the claim for $50,000.

### 7.   Summary

In sum, Plaintiffs valued the claims at mediation as follows:

| MEDIATION NEGOTIATION CLAIM VALUATIONS | | | | | | |
|---|---|---|---|---|---|---|
| Unpaid Overtime | Missed Meal Breaks | Missed Rest Breaks | Wage Statement Penalty | Waiting Time Penalty | PAGA Penalties | TOTAL |
| ~$500k | ~$500k | ~$ 350k | ~$ 50k | ~$500k | ~$200k | ~$2.1 mil |

### B.   Valuation for The Primary Claims Based on Proposed Settlement

Plaintiffs valued all claims at mediation at approximately $2.1 million and ultimately settled this case at $1 million.  So, the case settled at approximately 47% of the valuation amount.  The settlement amount distributed among the primarily is approximately as follows:

| SETTLEMENT CLAIM VALUATIONS **BEFORE** SUBTRACTING FEES, COSTS, AWARDS, EMPLOYER TAXES AND LWDA PAYMENTS | | | | | | |
|---|---|---|---|---|---|---|
| Unpaid Overtime | Missed Meal Breaks | Missed Rest Breaks | Wage Statement Penalty | Waiting Time Penalty | PAGA Penalties | TOTAL |

---

[50] Martin Decl., ¶ 20.
[51] *See* Cal. Labor Code § 2699(e)(2).
[52] *Id.*

-21-

| ~$250K | ~$250K | ~$200K | ~$25K | ~$175K | $50 k | $1 mil |
|--------|--------|--------|-------|--------|-------|--------|

After subtracting from the gross settlement amount approximately $353,333.33 for attorneys' fees and costs, $30,000 for incentive payments, $37,250 for the LWDA payment, $15,000 for administration fees, and approximately $14,500 for employer taxes, the remaining $550,000 is approximately apportioned as follows:

| SETTLEMENT CLAIM VALUATIONS AFTER SUBTRACTING FEES, COSTS, AWARDS, EMPLOYER TAXES AND LWDA PAYMENT | | | | | | |
|---|---|---|---|---|---|---|
| Unpaid Overtime | Missed Meal Breaks | Missed Rest Breaks | Wage Statement Penalty | Waiting Time Penalty | PAGA Penalties (25%) | TOTAL |
| ~$138k | ~$138k | ~$112k | ~$13.5k | ~$138k | $12.5k | $550,000 |

## C.  Analysis of Class Members' Average Settlement Shares

Assuming every class member participates in the settlement and worked the same number of workweeks, the average settlement share for each of the 253 members[53] is approximately $2,173.91 after subtracting from the gross settlement amount approximately $353,333.33 for attorneys' fees and costs, $30,000 for incentive payments, $37,500 for the LWDA payment, $15,000 for administration fees, and approximately $14,000 for employer taxes. Because class members during the class period received an average hourly range between $30,[54] the average settlement share compensates approximately 72.5 work hours on average.

If this case settled for the total valuation amount of $2.1 million, each class member would receive on average $4,553 after subtracting an estimated amount of $720k for attorneys' fees and costs, $30,000 for incentive payments, $150,000 LWDA payment, $15,000 administration fees, and approximately $33,000 for employer taxes. Of course, it's extremely rare for there to be 100% recovery under a settlement, particularly since plaintiffs can only get 100% recovery if they win on every claim at trial and the Court does not exercise discretion to

---

[53] Martin Decl., ¶ 14.
[54] Martin Decl., ¶ 14.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                           3:17-CV-03763-JSC

1   reduce or eliminate any of the penalties.  Under the proposed settlement, the class recovers on

2   average approximately 47% of the total valuation of the primary claims.

3   **V.      PRELIMINARY APPROVAL IS WARRANTED**

4         **A.      The Law Favors Settlement**

5         It is well established that settlements are the preferred means of dispute resolution,

6   particularly in class actions where substantial resources can be conserved by avoiding the time,

7   cost and rigor of prolonged litigation.  *See Officers for Justice v. Civil Serv. Comm'n of the City*

8   *and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217

9   (1983) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution.

10  This is especially true in complex class action litigation."). Indeed, the preference for settlement

11  is evident in the Federal Rules of Civil Procedure themselves. *In re Syncor ERISA Litig.,* 516

12  F.3d 1095, 1101 (9th Cir. 2008).

13        The policies favoring settlement apply with particular force in this case, where

14  approximately 253 current and former California employees allege that they were not provided

15  meal and rest breaks or provided premium wages in lieu thereof and were misclassified as

16  exempt and not paid for overtime hours worked.  Given the very high costs of litigating a wage-

17  and-hour case against a well-funded company, class members would have difficulty pursuing

18  their claims individually.  Moreover, class members entered into arbitration agreements which

19  would require class members to either initiate the case in an arbitration setting or litigate the

20  validity of the arbitration agreement.  Plus, individual lawsuits and/or arbitrations would clog the

21  courts and take years to resolve. The proposed settlement is the best and only means to ensure

22  that all class members receive prompt and efficient relief.

23        **B.      The Preliminary Approval Process**

24        Court approval of class action settlements is a two-step process: preliminary approval and

25  final approval. Manual for Complex Litigation, (Fourth) ("MCL 4th") § 21.632 (2004). At the

26  preliminary approval stage, the court must "make a preliminary determination on the fairness,

27  reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of

28  the certification, proposed settlement, and date of the final fairness hearing." *Id*.  The court must

also make a preliminary determination whether the class may be certified for settlement purposes under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997). After preliminary approval, notice of the proposed settlement is given to the class, and the court conducts a final approval hearing, also known as a fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the fairness hearing, the court will consider arguments for and in opposition to approval of the settlement, including comments submitted by class members in response to the class notice. The fairness hearing, however, is not "a trial or rehearsal for trial on the merits." *Officers for Justice,* 688 F.3d at 625. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*

While the parties certainly believe that this settlement meets all the criteria for final approval, at this juncture, they ask only that the Court take the first step in the process and grant preliminary approval of the settlement.

**C.    The Settlement Is in the Range of Possible Approval**

At this preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.1982)). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . ." *Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (citing Manual for Complex Litigation, § 30.44 (2nd ed. 1985).

In determining whether a settlement falls within the range of possible approval, courts consider whether the negotiations occurred at arm's length, whether sufficient discovery or investigation took place, and whether the proponents of the settlement are experienced in similar

1   litigation. *See* Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions, § 11.41(4th ed.

2   2002). Considering the discovery and settlement efforts, these criteria are satisfied.

### 1.   The Settlement Was Achieved at Arm's Length

The settlement is presumptively fair because there is nothing to suggest collusion between the parties. To the contrary, all material settlement terms were reached via mediation with Michael Dickstein.  The fact that Michael Dickstein oversaw negotiations evidences that the negotiations were non-collusive. *See, e.g., In Re HP Laser Printer Litig.,* No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D. Cal. Aug 31, 2011) (finding the fact that the parties appeared before a neutral third party mediator evidence supporting a finding that there was no collusion between the parties in reaching settlement).

### 2.   Counsel Engaged in Extensive Discovery

Proposed Counsel engaged in focused and thorough discovery.  Proposed Counsel's investigation includes: propounding extensive informal discovery; locating and interviewing witnesses; extensive online research; preparing a damages model based upon the information gathered; and reviewing and analyzing documents produced by Tesla and nonparties.[55]

### 3.   The Settlement Suffers from No Obvious Deficiencies

The settlement has no "obvious deficiencies" and confers substantial benefits to class members. In sum, approximately 253 members will be given the opportunity to receive monetary compensation for allegedly unpaid overtime and missed breaks without having to submit a claim. Given the relief and uncertainties of protracted litigation, the settlement is unquestionably well within the range of possible approval.

### 4.   The Requested Incentive Payment Is Reasonable

The proposed Class Representative incentive award is fair and reasonable. As the Ninth Circuit observed:

> Incentive awards are fairly typical in class action cases. Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and,

---

[55] Martin Decl., ¶ 12.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

> sometimes, to recognize their willingness to act as a private attorney
> general. Awards are generally sought after a settlement or verdict
> has been achieved. *Rodriguez v. West Publishing Corp.*, 563 F.3d
> 948, 958-59 (9th Cir. 2009) (emphasis and citations omitted).

The parties agreed that Plaintiffs may seek an incentive payment of $10,000 each because, among other things, they took the initiative to be named in this lawsuit, assisted in the case investigations and preparing discovery, consulted with counsel, assisted with locating witnesses and unnamed class members, located key documents, accepted substantial personal risks and responsibilities on the class' behalf, and executed general releases.[56] The request amount is particularly appropriate in this case because this case has generated a significant amount of media coverage.  News stories about the settlement and the Class Representatives can easily be found on the internet, many of which include specific information about each of the Plaintiffs. In fact, a news reporter was present at the last hearing and will likely be present at all future hearings regarding this settlement.  Because this case was generated so much attention, it will have a more realistic impact on the Class Representatives' future employment opportunities. The Class Representatives will each provide declarations supporting their requested incentive awards with their motion for attorney's fees and costs that will be made available to the class before their deadline to object to the settlement.  This will give the class the opportunity to object to the requested amount or otherwise express any concerns they may have to it.  Under the circumstances mentioned above and which will be discussed in detail in the attorney's fee motion, the requested amount – to which Tesla does not object – is reasonable. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-1827 SI, 2011 WL 7575003, at *2 (N.D. Cal. Dec. 27, 2011) (approving $15,000 incentive awards for 11 class representatives "in recognition of their work performed for the benefit of the class and risks undertaken"); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Pracs. Litig.*, No. 5:09-md-02015 JF, 2011 WL 1877630, at *7 (N.D. Cal. May 17, 2011) (approving class representative incentive awards ranging from $5,000 to $14,250 each); *Singer v. Becton Dickinson and Co.*, 08-cv-821-

---

[56] Martin Decl. ¶ 22.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

1    IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (finding class representative

2    award of $25,000 reasonable).

3               **5.    The Requested Attorneys' Fees and Costs Are Reasonable**

4               The requested attorney's fees and costs are reasonable. Proposed Counsel achieved an

5    excellent and extremely fast settlement while ultimately avoiding the uncertainties and risks

6    associated with the arbitration agreements, class action waivers, protracted litigation, contested

7    class certification, motion for summary judgment, and trial. Throughout this litigation, Proposed

8    Counsel dedicated time and resources in litigating the case and will continue to do so through the

9    settlement approval process.[57] Proposed Counsel will file a separate and more detailed motion

10   for an award of attorney's fees and costs before the deadline allowing the class members to view

11   and make objections before the final approval hearing. For purposes of preliminary approval, the

12   Court is only being asked to determine whether the Settlement's provision allowing Proposed

13   Counsel to request up to the stated amount should be preliminary approved.

14              The Settlement provides and the parties have agreed that Proposed Counsel may apply to

15   the Court for an amount not to exceed $333,333.33 in attorneys' fees plus up to $20,000 in actual

16   costs.[58]  This constitutes a maximum fee request of 33.3 percent of the Gross Fund Value.

17              The United States Supreme Court instructs that a request for attorney's fees should not

18   result in a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Ideally, of

19   course," the Court continued, "litigants will settle the amount of a fee." *Id.* (internal citations

20   omitted). The parties have adhered to this wisdom. The requested fees and costs were negotiated

21   at arms-length after the settlement fund and additional settlement benefits had been established.[59]

22              Federal courts often award thirty-three percent of the common fund in attorney's fees.

23   For instance: *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) (affirming attorney's

24   fee of 33% of the recovery); *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)(33%

25   fee award); *Williams v. MGM-Pathe Comm'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)(one-third

26   of total fund awarded); *Parks v. Blue Buffalo Company, LTD, Great Plains Leasing, LLC,* Case

27   ---

[57] Martin Decl. ¶ 22.

28   [58] Martin Decl. Ex. 1, ¶ 55.
[59] Martin Decl., ¶ 13.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                    3:17-CV-03763-JSC

No. 3:12-cv-01274 (USDC of Southern District of CA) (33.33% fee award). At this juncture, however, Proposed Counsel have not yet requested a specific fee award so the Court is merely being asked to approve the right to do so as set forth in the Settlement.

### 6. Counsel Are Experienced in Similar Litigation

Proposed Counsel is well respected with a concentrated practice in wage-and-hour and consumer class actions.  Proposed Counsel prosecuted numerous wage-and-hour class actions involving California Labor Code violations both in state and federal court.[60]  Proposed Counsel competently evaluated the claims on a fully informed basis.  Given the risks inherent in litigation and the defenses asserted, this settlement is in the class' best interest.  Likewise, Proposed Counsel is well versed in complex class action and is highly qualified. Accordingly, the parties are well suited to make informed judgments regarding the nature of the settlement.

## VI.   CONDITIONAL CERTIFICATION IS WARRANTED

When granting preliminary approval of the Settlement, this Court also must determine that the proposed class is certifiable. *See* MCL 4th, § 21.632; *Amchem,* 521 U.S. at 620. Certification is warranted where, as here, it is demonstrated that the four prerequisites of Rule 23(a) — i.e. numerosity, commonality, typicality, and adequacy of representation — and one of the three requirements of Rule 23(b), are satisfied. *See* Fed. R. Civ. P. 23.  Certification of a class action for damages requires a showing that:

> questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

Given that the proposed class will be certified for the purposes of settlement only, the Rule 23(b)(3) requirement of superiority need not be met here because manageability issues are not a bar to certification "for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620.

Plaintiffs propose that the Court provisionally certify this action as a class action pursuant to Rule 23 for settlement purposes.  Provisional certification is an appropriate device in

---

[60] Martin Decl. ¶¶ 23-26; David Dec. ¶¶ 11-12

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

1  settlements of class actions where the agreement to settle the case occurs before certification.

2  *See, e.g., Jaffe v. Morgan Stanley & Co., Inc.,* No. C-06-3903 TEH, 2008 WL 346417, at *2-3

3  (N.D. Cal. Feb. 7, 2008); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL

4  1991529, at *2-3 (N.D. Cal. Jun. 30, 2007). Under the circumstances, there is more than a

5  sufficient factual basis for the Court to provisionally certify this action as a class action for

6  settlement purposes and to appoint Proposed Counsel — Alisa A. Martin of AMartin Law, PC

7  and Lindsay C. David of Brennan & David Law Group— as Class Counsel.

8  **A.    The Numerosity Requirement is Satisfied**

9  With respect to numerosity, Rule 23(a)(1) requires that the class be so numerous that

10  joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Here, approximately 253

11  members of the proposed class were allegedly not paid all wages owed.  By any measure, the

12  numerosity requirement is met.  While it is true that on the low end, the Supreme Court has

13  indicated that a class of 15 "would be too small to meet the numerosity requirement," *Gen. Tel.*

14  *Co. of the Nw., Inc. v. EEOC,* 446 U.S. 318, 330 (1980), the Ninth Circuit recently upheld a class

15  of only 20 persons. *Rannis v. Recchia,* 380 Fed. Appx. 646, 650-51 (9th Cir. 2010).

16  **B.    The Commonality Requirement is Satisfied**

17  Here, common questions of law and fact exist and predominate (as required by Rule

18  23(b)(3)) and as to class over any individual questions, including:

19  •    Whether Tesla is required to provide class members with meal breaks or meal break
20       premium wages in lieu thereof under California law;

21  •    Whether Tesla is required to provide class members with rest breaks or premium
22       wages in lieu thereof under California law;

23  •    Whether Tesla misclassified class members and was required to provide them with
24       overtime compensation under California law;

25  •    Whether Tesla failed to provide class members with timely and accurate wage
26       statements as required under California law;

27  •    Whether Tesla failed to provide class members with final wages as required under
28       California law; and

- • Whether Tesla engaged in unfair business practices as to class members in violation of California law.

Where, as here, Tesla's liability would be determined primarily by looking at their uniform policies and practices, and timekeeping and payroll records, the common questions in this litigation will predominate over any individual issues.

## C.    The Typicality Requirement is Satisfied

Plaintiffs meet the typicality requirement of Rule 23(a). Plaintiffs, like all class members, suffered the wage-and-hours violations alleged in the complaints and outlined above. They assert the similar or identical legal claims as all class members, making their claims typical of the class.

## D.    The Adequacy Requirement is Satisfied

With respect to the adequacy of representation requirement of Rule 23(a), named plaintiffs must not have interests antagonistic to those of the class, and the plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the litigation. *See Hanlon*, 150 F.3d at 1020. As discussed above, Proposed Counsel is exceptionally well qualified, experienced and able to conduct the litigation. Further, Plaintiffs' interests are coextensive with those of the class they seek to represent since Plaintiffs were injured in the same manner and seek identical relief as the class. *See Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir. 2003) (finding that plaintiffs must have been injured themselves, not merely represent injured parties).

Having volunteered to serve as the Class Representatives, Plaintiffs have taken a leadership role in the litigation, performed and stood ready to perform any number of tasks, and demonstrated a commitment to bringing about the best results possible for their fellow class members.[61] Moreover, Plaintiffs and their attorneys have no interests antagonistic to the class' interests and are not subject to any unique defenses. Plaintiffs and their attorneys have and will continue to fairly and adequately protect the class' interests.[62]

---

[61] Martin Decl. ¶¶ 27-31.
[62] Martin Decl. ¶ 31.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                      3:17-CV-03763-JSC

1

## VII.   THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS

2

Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that "[t]he court must

3

direct notice in a reasonable manner to all class members who would be bound by the proposal."

4

Rule 23 further requires "the best notice practicable under the circumstances, including

5

individual notice to all members who can be identified through reasonable effort." *See* Fed. R.

6

Civ. P. 23(c)(2)(B).

7

Here, the parties agreed to provide notice via direct mail to all class members.[63]  This is

8

the best practicable and affords class members with all due process protections required by Rule

9

23.  As such, the proposed Notice attached the Settlement as Exhibit 1 should be approved.[64]

10

## VIII.   CONCLUSION

11

For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant this

12

motion in its entirety and consistent with the [Proposed] Order submitted herewith.

13

Dated: July 21, 2018                         AMARTIN LAW, PC

14
                                             BRENNAN & DAVID LAW GROUP

15
                                    By: /s/ *Alisa A. Martin*

16
                                             Alisa A. Martin

17
                                    By: /s/ *Lindsay C. David*
                                             Lindsay C. David

18
                                             Attorneys for Plaintiffs and the Class

19

20

21

22

23

24

25

26

27

28

---

[63] Martin Decl., Ex. 1, ¶ 53.
[64] Martin Decl., Ex. 1, Ex. 1.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                         3:17-CV-03763-JSC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763-JSC

1

## **Certificate of Service**

2

The undersigned hereby certifies that all counsel of record who are deemed to have

3

consented to electronic service are being served July 21, 2018, with a copy of this document via

4

the Court's CM/ECF system.  I certify that all parties in this case are represented by counsel who

5

are CM/ECF participants.   Any other counsel of record will be served by electronic mail,

6

facsimile transmission, and/or first class mail on this same date.

7

8

*/s/  Lindsay David*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS'  UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                                    3:17-CV-03763-JSC