Alisa A. Martin, State Bar No. 224037
**AMARTIN LAW, PC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 308-6880
Facsimile: (619) 308-6881
alisa@amartinlaw.com

Lindsay C. David, State Bar No. 283267
**BRENNAN & DAVID LAW GROUP**
2888 Loker Avenue E., Ste 302
Carlsbad, CA 92010
Telephone: (760) 730-9408
Facsimile: (760)888-3575
lcdavid@brennandavid.com

*Attorneys for Plaintiffs and the Class*

# UNITED STATE DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WILSON, CARRIE HUGHES, AND KATIA SEGAL, on behalf of themselves and all others similarly situated,<br><br>         Plaintiff,<br><br>vs.<br><br>TESLA, INC., a corporation dba TESLA MOTORS, INC., and TESLA MOTORS, INC., a corporation,<br><br>         Defendants. | Case No. 3:17-CV-03763-JSC<br><br>**MARTIN DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION**<br><br>Date: August 30, 2018<br>Time: 9:00 a.m.<br>Courtroom: Courtroom F - 15th Floor<br>Hon. Jacqueline Scott Corley |

I, Alisa A. Martin, declare as follows:

     **1.**     I am a member of the bar of the State of California and a shareholder of AMartin

Law, PC, attorney for Plaintiffs Brian Wilson, Carrie Hughes, and Katia Segal. I make this

declaration in support of Plaintiffs' unopposed motion for preliminary approval of a class action

settlement and provisional class certification. If called as a witness, I would and could testify to the following:

**2.** Attached as **Exhibit 1** is the Joint Stipulation of Settlement ("Joint Stipulation").

### Procedural History

**3.** On June 29, 2017, Plaintiff Wilson filed a class action complaint against Tesla in the District Court for the Northern District of California, alleging causes of action for (1) failure to pay overtime wages under FLSA; (2) failure to pay minimum wage under the Cal. Lab. Code; (3) failure to provide overtime compensation under Cal. Lab. Code; (4) failure to provide meal breaks; (5) failure to provide rest breaks, (6) failure to provide proper wage statements, and (7) unfair business practices. On June 29, 2017, Proposed Counsel mailed notice to the LWDA seeking to recover penalties under PAGA. On August 11, 2017, Plaintiff Wilson amended the complaint to add Plaintiff Hughes and assert a cause of action for failure to pay final wages. Om May 16, 2018, Plaintiffs filed a copy of the proposed the settlement agreement online with the LWDA. On May 17, 2018, Plaintiffs Wilson and Hughes filed a second amended complaint to add Plaintiff Segal, assert a cause of action under California's Private Attorneys General Act ("PAGA") Labor Code 2699 *et seq*., and remove the cause of action under FLSA. Based on the alleged violations, Plaintiffs seek to recover compensatory damages, pre-judgment interest, waiting time penalties, statutory penalties, civil penalties, restitution, attorney fees and costs, and injunctive relief.

### Tesla's Alleged Wrongdoings

**4.** Plaintiffs alleged the following facts in their complaints. Tesla is an automaker and a technology and design company that focuses on energy innovation. Tesla does not sell its automobiles via dealerships, but instead uses a factory-direct sales system with non-negotiable pricing. Tesla has showrooms across the nation in which a few cars are available for test drives and purchase.

**5.** Plaintiffs also alleged that Tesla employed Plaintiffs and others as Owner Advisors ("OAs"). OAs worked in Tesla's showrooms and sold cars to Tesla's customers. Tesla classified its OAs as exempt under the commissioned salesperson exemption and compensated

its OAs by paying them a salary, as well as bonuses and commissions.

6. Plaintiffs alleged Tesla primarily violated California law by failing to provide meal and rest breaks to its owner advisors and misclassifying its owner advisors as exempt and failing to pay overtime.

7. Tesla however denied the allegations and argued that each employee was subject to both an arbitration agreement and class waiver.

*Misclassification Resulting in Unpaid Overtime*

8. Plaintiffs alleged that Tesla treated OAs as exempt under the commission salesperson exception without ever evaluating whether the exception's requirements had been met. Plaintiff further allege that OAs were misclassified because – as shown by their wage statements – for the vast majority of time, OAs' commissions failed to make up over half of their income. In response, Tesla argued that OAs were rarely misclassified because, among other things, OAs earned bonuses and that these bonuses should be treated as another form of commissions when evaluating whether over half of their compensation comes from commissions. Tesla further argued that Plaintiffs would not be able to certify this issue because, among other reasons, to establish misclassification, every OAs' wage statements have to be reviewed, thereby involving individualized inquiries and issues.

9. Plaintiffs alleged that OAs were only exempt from overtime during workweeks wherein OAs' commissions equated to over half of their compensation; otherwise, OAs were entitled to overtime. Plaintiffs alleged that Tesla regularly required OAs to work over eight hours per day or forty hours per week. Because Tesla always treated OAs as exempt, Tesla never paid them overtime. Tesla, however, denied these allegations and argued, among other things, that OA generally were not scheduled or expected to work over eight hours per day or forty hours per week and that to the extent some OAs did work those hours, those hours were not recorded anywhere, thereby making damages difficult to prove, particularly on a class-wide basis.

*Missed Meal and Rest Breaks*

10. Plaintiffs alleged that Tesla did not provide OAs with lawful meal breaks and that this was confirmed by Tesla's written meal break policy that expressly did not apply to OAs.

Tesla denied this allegation and argued that breaks were built into OAs' work schedule and that OAs were free to take breaks whenever necessary. Tesla also argued that each store was operated by a different store manager who controlled the day to day functions including employee management and breaks, thereby precluding certification.

11. Plaintiffs argued that Tesla's written rest break policy only applied to non-exempt employees and that Tesla did not provide OAs with rest breaks in accordance with California law. Tesla denied these allegations and argued that OAs were free to take breaks whenever necessary and that that each store was run differently making this claim difficult to certify. Tesla further argued that rest break claims are notoriously difficult to prove and that the claim is implausible given the OAs worked in malls.

## Discovery

12. I conducted discovery and research before and after filing the complaint. Tesla produced key information and data, including the number of class members, policies and procedures, timekeeping data, and payroll data so that Plaintiffs could evaluate their claims and prepare for mediation. I also obtained information from witnesses; reviewed and analyzed the produced documents, information, and data; researched the applicable laws and potential defenses; and prepared a damages model.

## Mediation and Settlement Negotiations

13. In light of the uncertainty regarding the validity and enforcement of class action waivers raised by *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017) and the ability to proceed on a classwide basis in light of the arbitration agreement under *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) and *Varela v. Lamps Plus, Inc.*, 701 F. App'x 670, 672 (9th Cir. 2017), the Parties decided on early mediation. Accordingly, on November 10, 2017, the Parties mediated their dispute with Michael Dickstein. With the assistance of Michael Dickstein, the Parties reached an agreement as to key terms of the settlement. Thereafter, the Parties continued negotiating with Dickstein's assistance and eventually executed the Joint Stipulation in May 2018.

MARTIN DECL. ISO UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763

## Joint Stipulation's Fairness

14.    Assuming every class member participates in the settlement, the average settlement share for 253 members is approximately $2,173.91 which is equivalent to, on average, 72.5 hours of work at an hourly rate of $30. The potential recovery is significant given (1) the speed in which class members will receive their settlement payments, (2) the nonenforcement of potentially valid arbitration agreements and/or class action waivers that were purportedly entered into by class members and (3) Tesla's defenses that employees were properly classified because their bonus and commission income exceeded the employee's salary and Tesla's policy that its employees were entitled to take meal and rest breaks.

15.    I believe the Joint Stipulation is fair, reasonable, and in the class' best interest, particularly after balancing the proposed settlement terms, the speed in which class members will receive his and her settlement, and obtaining classwide relief against the risk that the Supreme Court in *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017) will enforce class action waivers, thereby precluding the Plaintiffs from pursue class-wide relief, the probable outcome of liability, the untested issues, the range of recovery at trial, and the likelihood of collection of any recovery at trial, along with considering: whether the case could continue as a class action; the prospect of an adverse ruling on class certification; the difficulties of complex litigation; the lengthy process of establishing specific damages; individual issues; and possible delays and appeals. Plaintiffs' counsel also considered Tesla's opposing arguments, supporting evidence, and case law.

## Valuations of the Primary Claims

16.    *Unpaid Overtime*. Plaintiffs alleged that Tesla treated its OAs as exempt under the commission salesperson exception without evaluating whether over half of their compensation came from commissions. Although Plaintiffs are confident that this issue is certifiable, Plaintiffs considered Tesla's arguments when evaluating this claim. Because the issue of whether each OA was misclassified is arguably determined on a case by case basis and the amount of overtime each OA worked may not have occurred regularly and/or resulted from a uniform, state-wide policy, the likelihood of getting this claim certified is not certain because the claim involves individualized issues that may predominate and there is no easy way of

identifying those who worked overtime. Moreover, Tesla argued that it was Tesla's policies and practices to not schedule its OAs for overtime. Finally, Tesla argued that the OAs were properly classified as exempt because their bonuses were simply another form of commissions and that when their bonuses were added to their commissions, together both forms of compensation exceeded their salary. While I disagree with this assessment, I concede there is no black and white law regarding classification of the bonus and whether they can be considered in conjunction with the commissions when classifying a commissioned salesperson as exempt and/or non-exempt. I valued this claim at approximately $1.2 mil (using an estimated 2 hours of overtime per week at an overtime rate of $45 per hour for each the 13,691 workweeks). However, factoring in Tesla's arguments and certification issues, Il reduced my valuation to $500,000.

**17.** *Missed Meal and Rest Breaks.* Although Tesla classified its OAs as exempt from overtime, this exemption only applied to overtime and not meal and rest breaks. As such, Tesla was required to provide meal and rest breaks to each of its OAs. Plaintiffs allege that Tesla's written meal and rest break policies were limited to non-exempt employees, and OAs were not provided legally compliant meal breaks; however, Tesla contends that its work schedules factor in sufficient time for OAs to take breaks and that there is no uniform, statewide policy that specifically denied OAs their ability to take legally compliant meal and breaks, thereby making the claim difficult to get certified due to individualized issues. Plaintiffs estimated the liability exposure possible meal break violations could exceed $1 million over a four-year period if legally compliant meal breaks were not provided half of the time. This estimate assumed that half of the shifts (34,227 shifts[1]) during the liability period involved missed meal breaks and used an hourly rate of $30. But for mediation negotiation purposes, Plaintiffs reduced the estimated damages to $500,000, which accounted for Tesla's arguments, and the uncertainties and vagaries of certification and trial. I used a similar calculation for failure to pay rest break premium wages. I initially valued the claim at approximately $1 million, but reduced the

---

[1] Calculated using 5 Shifts for Each of the 13,691 workweeks (13,691 Workweeks x 5 = 68,455 Shifts)

calculation to $350k to account for Tesla's defenses, the potential difficulty in establishing this claim, and the potential difficulty in getting this claim certified.

18. *Waiting Time Penalties*. The teeth of this claim hinge on the unpaid overtime. The actual unpaid overtime claim in this case is based on Tesla's misclassification of its OAs and resulting failure to pay overtime compensation. Although I initially valued this claim between $1 mil and $1.5 mil, I reduced this claim to $500,000 because of the uncertainties outlined above.

19. *Wage Statement Violations*. Although, some federal court decisions hold that meal and rest break premiums under Labor Code § 226.7 can support a wage statement penalty under Labor Code § 226(e), Tesla argued that plaintiffs cannot establish "injury" that resulted from Tesla's "knowing and intentional failure" to furnish wage statements that included premium pay for missed breaks. *See* Cal. Lab. Code § 226(e)(1). I valued this claim between $250,000 and $500,000. However, taking Tesla's arguments into account, I applied a significant discount on Tesla's realistic liability exposure and valued this claim at $50,000.

20. *PAGA Penalties*. PAGA claims are difficult to evaluate because there are many obstacles to the actual award of the civil penalty. First, defendants routinely argue that penalties cannot accrue until a court has actually found a violation to exist. Here, there has yet been no finding. Additionally, § 2699(e)(1) and (2) give trial courts discretion to access or lower civil penalties. Second, defendants routinely argue that when statutory penalties are imposed, the imposition of additional civil penalties under PAGA is unjust, *etc.*. Thus, I valued the PAGA penalties for unpaid wages and missed breaks at around $417,000; however, the likelihood of that sum being awarded where, as here, the underlying "premium pay" sums are properly sought, is unlikely. Based on the various risks, Plaintiffs discounted their valuation to $200,000 and settled the claim for $50,000

### Administration Costs

21. I received a quote from ILYM Group, Inc. to perform all administrative tasks outlined in the Joint Stipulation with a $15,000.

**Time in Case**

22.     To date, I have spent hours pursuing this case, and expect to spend additional hours to complete the approval process, including working with the settlement administrator and overseeing the notice mailings, corresponding with class members, preparing a motion for final approval, preparing a motion for an award of reasonable attorney fees, and overseeing the payment process.

**Experience**

23.     I graduated from University of San Diego's law school and was admitted to the bar in 2002. The same year, I joined the law firm of Cooley LLP in San Diego, California, of the State of California. Cooley is a large national firm that focuses, among other things in complex litigation, including class action defense. Since joining Cooley, I have spent the last decade successfully litigating complex cases, including numerous class actions.

24.     In or about February 2009, I left Cooley to work as senior attorney at the law firm of Harrison Patterson & O'Connor. In approximately July of 2011, the partners of Harrison Patterson & O'Connor elected to spin off their practice groups: Patterson Law Group, APC and Harrison & Bodell, LLP. I joined Patterson Law Group as of counsel. I also have my own firm, AMartin Law, PC.

25.     My current practice focuses on complex class actions on behalf of consumers and employees. I have served as counsel and class counsel in multiple class cases, including, but not limited to the employment class actions described below, which make up a partial sampling of my employment cases:

        **a.**     *Pompa v. Target Corporation*, Case No. CV-10-0634 AHM (FFMx) (C.D. Cal.) (wage and hour class action on behalf of pharmacist employees);

        **b.**     *DeLapp v. U.S. Bank,* Case No. CGC-10-500638 (San Francisco County Sup. Ct.) (wage and hour class action for former employees for lost vacation pay);

        **c.**     *Fletcher v. The Toro Company*, Case No. 37-2008-00095573 (San Diego County Sup. Ct.) (wage and hour class action on behalf of factory

workers);

    **d.**    *Von Retteg v. La Costa Limousine,* Case No. 37-2008-00086676 (San Diego County Sup. Ct.) (wage and hour class action on behalf of limousine drivers);

    **e.**    *Chase, et al. v. Rite Aid Corp.*, Case No. BC381055 (Los Angeles County Sup. Ct.) (wage and hour class action on behalf of Rite Aid pharmacists);

    **f.**    *Republic Services Wage and Hour Cases,* Case No. JCCP No. 4658 (San Diego County Sup. Ct.) (wage and hour class action on behalf of security guards and factory workers);

    **g.**    *La Masa, et al. v. Indymac Resources, Inc.,* Case No. 626836 (Stanislaus County Sup. Ct.) (wage and hour class action on behalf of bank workers);

    **h.**    *Verdugo v. Richman Management Corp., et al.,* Case No. 37-2008-00081654 (San Diego County Sup. Ct.) (wage and hour class action on behalf of security guards);

    **i.**    *Parks v. Blue Buffalo Company, LTD, Great Plains Leasing, LLC,* Case No. 3:12-cv-01274 (USDC of Southern District of CA) (wage and hour class action on behalf of product demonstrators);

    **j.**    *Zapata v. BAE Systems Advanced Ceramics, Inc.,* Case No. 37-2008-81654 (San Diego County Sup. Ct.) (wage and hour class action on behalf of factory workers);

    **k.**    *Alburez v. CRC Health Group, Inc.,* Case No. 37-2010-89945 (San Diego County Sup. Ct.) (wage and hour class action on behalf of clinic workers); and

    **l.**    *Campuzano v. B & E Concepts Unlimited Inc. et al.,* Case No. 30-2014-00711312 (Orange County Sup. Ct.) (wage and hour class action on behalf of restaurant workers).

**26.**    In addition to these employment class actions, I have prosecuted numerous state and federal consumer class actions. I have also successfully handled numerous individual

employment and business litigation cases.

**Plaintiffs' Efforts and Risks**

27.     Plaintiffs Brian Wilson, Carrie Hughes, and Katia Segal pursued this case to ensure that the class received compensation for their unpaid overtime. By pursuing this case for the class' benefit, Plaintiffs risk that future employers will discover his involvement in this case and not offer him employment.

28.     Moreover, Plaintiffs spent time on this case. For instance, plaintiffs reviewed filings and case-related documents, participated in several meetings and conference calls, and participated remotely at the mediation. Plaintiffs were always available to respond to its counsel's inquiries. They also assisted with evaluating the proposed Joint Stipulation. This work was undertaken in order to achieve the proposed Joint Stipulation.

29.     Plaintiffs also undertook the risk of being held liable for Plaintiffs' costs if he did not achieve a favorable outcome, made individual concessions to obtain this settlement, and perhaps most importantly, undertook the risk that this case will negatively impact future employment opportunities which was a particular concern in this case given all of the media attention this case received.

30.     Plaintiffs executed general releases as a condition of the proposed Joint Stipulation. Tesla required Plaintiffs to generally release all claims they may have against Tesla and to execute a California Civil Code section 1542 waiver, which leaves them without recourse for claims they may have against Tesla now or in the future.  In short, Plaintiffs are making substantial concessions for the class' benefit.

31.     Plaintiffs nor I have interests that are antagonistic to the class' interests and are not subject to a unique defense.  We have, and will continue to, fairly and adequately protect the class' interests

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed on May 16, 2018 in San Diego, California.

*/s/ Alisa Martin*
Alisa A. Martin

**EXHIBIT 1**

MARTIN DECL. ISO UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT                    3:17-CV-03763

Alisa A. Martin, State Bar No. 224037
**AMARTIN LAW, PC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619)308-6880
Facsimile: (619)308-6881
alisa@amartinlawgrp.com

Lindsay C. David, State Bar No. 283267
**BRENNAN & DAVID LAW GROUP**
2888 Loker Avenue East, Suite 302
Carlsbad, CA 92010
Telephone: (760)730-9408
Facsimile: (760)888-3575
lcdavid@brennanlawgrp.com

Attorneys for Plaintiffs BRIAN WILSON and
CARRIE HUGHES

[Additional Counsel Listed on Next Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WILSON and CARRIE HUGHES, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>TESLA, INC., a corporation dba TELSA MOTORS, INC., and TESLA MOTORS, INC. a corporation,<br><br>        Defendants. | CASE NO. 3:17-cv-03763-JSC<br><br><br><br>Complaint Filed: June 29, 2017<br>Trial Date:     None Set<br>Judge:        Hon. Jacqueline Scott Corley<br>              Courtroom F, 15th Floor<br><br>**STIPULATION OF CLASS ACTION SETTLEMENT** |

JACK S. SHOLKOFF, CA Bar No. 145097
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: (213)239-9800
Facsimile: (213)239.9045
jack.sholkoff@ogletree.com

RACHEL J. MOROSKI, CA Bar No. 286805
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA 94105
Telephone: (415)442-4810
Facsimile: (415)442-4870
rachel.moroski@ogletree.com

Attorneys for Defendants
TESLA, INC. DBA TESLA MOTORS, INC.
AND TESLA MOTORS, INC.

IT IS HEREBY STIPULATED, by and between plaintiffs Brian Wilson, Carrie Hughes, and Katia Segal, individually and on behalf of all others similarly situated, on the one hand (collectively "Plaintiffs"), and defendants Tesla, Inc. and Tesla Motors, Inc. (collectively "Tesla"), on the other hand, and subject to the approval of the Court, that the Actions are hereby compromised and settled pursuant to the terms and conditions set forth in this Stipulation of Class Action Settlement ("Stipulation").

This Stipulation shall be binding on Plaintiffs and all Participating Class Members, and on Defendants and their past, current or former parent companies, subsidiary companies and/or related companies, partnerships, or joint ventures, and with respect to each of them, all of their and/or or such related entities' predecessors and successors, and, with respect to each such entity, all of its past, present, and future employees, officers, partners, principals, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), and any other persons acting by, through, under, or in concert with any of the persons or entities listed in this subsection, and their successors and any individual or entity who could be jointly liable with any of the foregoing, and their respective counsel, subject to the terms and conditions hereof and the Court's approval.

Defendants deny all material allegations in the Actions, as well as the PAGA notice to the California Labor and Workforce Development Agency.

## DEFINITIONS

1. "Actions" means the putative class action entitled *Brian Wilson, Carrie Hughes, et al. v. Tesla, Inc., et al.; Case No.* 17-CV-03763-JSC and *Katia Segal v. Tesla, Inc. JAMS Arbitration*

2. "Class Counsel" means Alisa A. Martin of AMartin Law, PC and Lindsay C. David of Brennan & David Law Group.

3. "Class Counsel Award" means reasonable attorneys' fees for Class Counsel's litigation and resolution of the Actions (not to exceed 33 1/3% of the Settlement Amount), and Class Counsel's expenses and costs reasonably incurred in connection with the Actions.

4. "Class Information" means information regarding Class Members that Defendants shall in good faith compile from their records and shall transmit in electronic form to the Settlement Administrator and shall include: each Class Member's full name; last known address; Social Security number; and total number of workweeks.

5. "Class Members" means all employees of Tesla who worked in California during the class period as an owner advisor, sales advisor, or another similar exempt sales position at any time during the Class Period.

6. "Class Notice" means the Notice of Class Action Settlement, substantially in the form attached as **Exhibit 1,** which shall be subject to Court approval and which the Settlement Administrator shall mail to each Class Member explaining the terms of this Stipulation and the Settlement.

7. "Class Period" means the period from June 29, 2013 to the date of preliminary approval of the settlement.

8. "PAGA Representative Group" shall be defined as all Employees of Tesla who worked in California from June 29, 2016 as an Owner Advisor, Sales Advisor, or another similar sales position to the date of the date of Preliminary Approval.

9. "PAGA Period" means the period from June 29, 2016 to the date of the date of Preliminary Approval.

10. "Class Representative Service Awards" means the amount that the Court authorizes to be paid to Plaintiffs, in addition to Plaintiffs' Individual Settlement Awards, in recognition of Plaintiffs' efforts and risks in assisting with the prosecution of the Actions.

11. "Compensable Workweeks" means the total number of weeks during which a Class Member worked for Tesla as an owner advisor, sales advisor, or another similar sales position classified by Tesla as exempt during the Class Period based on Defendants' records and which shall be used to calculate Individual Settlement Awards.

12. "*Wilson* Action" means the putative class action entitled *Brian Wilson, Carrie Hughes, et al. v. Tesla, Inc., et al.,* Northern District Court Case No. 17-cv-03763-JSC.

13. "*Segal* Action" means the JAMS Arbitration entitled *Katia Segal v. Tesla, Inc.*

14.   "Defendants" means defendants Tesla, Inc. and Tesla Motors, Inc.

15.   "Defense Counsel" means Jack Sholkoff and Rachel Moroski of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

16.   "Effective Date" means the date on which all of the following events have occurred: (i) this Stipulation has been executed by all Parties, Class Counsel, and Defense Counsel; (ii) the Court has given preliminary approval to the Settlement; (iii) the Class Notice has been mailed to the Class Members, providing them an opportunity to opt out of the Settlement; (iv) the Court has held a Final Approval Hearing and entered a Final Order and Judgment certifying the Class and finally approving this Stipulation; and (v) in the event there are written objections filed prior to the Final Approval Hearing which are not later withdrawn, the later of the following events: when the period for filing any appeal, writ or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or any appeal, writ or other appellate proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or any appeal, writ or other appellate proceeding has upheld the Court's Final Order and Judgment with no right to pursue further remedies or relief. In this regard, it is the intention of the Parties that the Settlement shall not become effective until the Court's order approving the Settlement is final, and there is no further recourse by an appellant or objector who seeks to contest the Settlement. It is further agreed by and between the Parties that this Settlement shall not become effective, and Defendants shall not have any obligation (monetary or otherwise) under the terms of this Settlement, unless and until any objections, writs and/or appeals, and any rights of appeal with respect to any objections or the judgment, have been finally exhausted and resolved upholding the terms of this Settlement.

17.   "Employers' Share of Payroll Taxes" means Defendants' portion of payroll taxes, including, but not limited to FICA and FUTA, on the portion of the Individual Settlement Awards that constitutes wages.

18.   "Final Approval Hearing" means the hearing to be conducted by the Court after the filing by Plaintiffs of an appropriate motion and following appropriate notice to Class

Members giving Class Members an opportunity to request exclusion from the Class and Settlement and to object to the Settlement, at which time Plaintiffs shall request that the Court finally approve the fairness, reasonableness and adequacy of the terms and conditions of the Settlement, enter the Final Order and Judgment, and take other appropriate action.

19.    "Final Order and Judgment" means the order and judgment to be entered by the Court upon granting final approval of the Settlement and this Stipulation as binding upon the Parties and Participating Class Members.

20.    "Individual Settlement Award" means the amount payable from the Net Settlement Amount to each Participating Class Member.

21.    "Information Sheet" means the form that shall be prepared by the Settlement Administrator and sent to each Class Member that sets forth the total number of Compensable Workweeks and the estimated Individual Settlement Award for the Class Member, substantially in the form attached as **Exhibit 2**.

22.    "LWDA" means the California Labor and Workforce Development Agency.

23.    "Settlement Amount" means the amount Defendants shall pay in connection with this Settlement, by way of a common fund, which shall be inclusive of all Individual Settlement Awards to Participating Class Members, Class Counsel Award, Settlement Administration Costs, Class Representative Service Awards, PAGA payment to the LWDA, and Employers' Share of Payroll Taxes.  Subject to Court approval and the terms of this Stipulation, the Settlement Amount Defendants shall be required to pay is One Million Dollars ($1,000,000.00).

24.    "Net Settlement Amount" means the Settlement Amount, less Class Counsel Award, Class Representative Service Awards, PAGA payment to the LWDA, Employers' Share of Payroll Taxes, and Settlement Administration Costs.

25.    "Notice of Objection" means a Class Member's written objection to the Settlement.

26.    "Notice Packet" means the packet of documents which shall be mailed to all Class Members by the Settlement Administrator, including the Class Notice and Information Sheet.

27. "PAGA" means the Labor Code Private Attorneys General Act of 2004, California Labor Code sections 2698, et seq.

28. "Participating Class Members" means Plaintiffs and all other Class Members who do not submit a valid and timely Request for Exclusion.

29. "Parties" means Plaintiffs and Defendants.

30. "Plaintiff Wilson" means Plaintiff Brian Wilson.

31. "Plaintiff Hughes" means Plaintiff Carrie Hughes.

32. "Plaintiff Segal" means Plaintiff Katia Segal.

33. "Plaintiffs" means plaintiffs Brian Wilson, Carrie Hughes, and Katia Segal collectively.

34. "Preliminary Approval Order" means the order to be issued by the Court approving and authorizing the mailing of the Notice Packet by the Settlement Administrator, setting the date of the Final Approval Hearing and granting preliminary approval of the Settlement set forth in this Stipulation, among other things.

35. "Released Class Claims" with respect to the Participating Class Members (including Plaintiffs) shall mean: Any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown that have been, could have been or might in the future be asserted by Plaintiffs, or the Class Members or any of their respective heirs, executors, administrators, beneficiaries, predecessors, successors, attorneys, assigns, agents and/or representatives arising out of any claims that were or could have been encompassed in the Action, and any claims which reasonably flow from the facts alleged in Plaintiffs' Complaint, First Amended Complaint, Second Amended Complaint, including, but not limited to, 1) failure to pay minimum wages under California law; (2) failure to provide overtime under California law; (3) failure to provide meal periods under California law; (4) failure to provide rest breaks under California law; (6) failure to provide accurate wage statements under California law; (7) failure to provide final wages under California law; (8) unlawful business practices in violation of California's Business and Professions Code; and (9) penalties pursuant to PAGA, and any other claims for unpaid wages (including claims for

minimum wage, overtime, and meal period and rest period premiums), interest, penalties (including waiting time penalties pursuant to Labor Code section 203, pay stub penalties pursuant to Labor Code section 226, and civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004 (Labor Code sections 2698, et seq.) ("PAGA")), claims pursuant to Labor Code sections 200, 201, 202, 218.5, 226, 226.7, 510, 512, 558, 1174, 1194, 1197, 1198, and 1199, the Industrial Welfare Commission Wage Orders, claims under the Fair Labor Standards Act, and claims under Business and Professions Code sections 17200, et seq., claims for attorneys' fees and costs, conversion, fraud, common count, and unfair business practices. Released Claims include all claimed or unclaimed compensatory, consequential, incidental, liquidated, punitive and exemplary damages, restitution, interest, costs and fees, injunctive or equitable relief, and any other remedies available at law or equity allegedly owed or available to the Class arising or reasonably flowing from the Second Amended Complaint against the Released Parties for the time period from the beginning of time up to and including the Date of Final Approval

36.     "Plaintiffs' Released Claims" applies to Plaintiffs only, and means any Released Class Claims, in addition to all claims, demands, rights, actions, liabilities, obligations, damages, rights, liabilities, and/or causes, of any form whatsoever, whether known or unknown, unforeseen, unanticipated, unsuspected or latent, that Plaintiffs individually may possess against the Released Parties arising from Plaintiffs' employment with Defendants and/or the Released Parties that have been or could have been asserted by Plaintiffs, or the heirs, successors and/or assigns of Plaintiffs, whether directly, indirectly, representatively, derivatively or in any other capacity, against Defendants or any of the other Released Parties, arising at any time prior to entry of the Final Order and Judgment. Plaintiffs expressly waive all rights and benefits under the terms of section 1542 of the California Civil Code. Section 1542 reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Notwithstanding the provisions of section 1542, and for the purpose of implementing a full and complete release and discharge of all of their Released Claims, Plaintiffs expressly acknowledge

that this Settlement is intended to include in its effect, without limitation, all Released Claims which Plaintiffs do not know or suspect to exist in their favor at the time of execution hereof, and that the Settlement contemplates the extinguishment of all such Released Claims. The Released Claims expressly exclude any workers compensation claim that Plaintiffs have or may have against Defendants.

37. "Released Parties" means defendants Tesla and all of Tesla's current or former parent companies, subsidiary companies and/or related companies, partnerships, or joint ventures, and, with respect to each of them, all of their and/or such related entities' predecessors and successors, and, with respect to each such entity, all of its past, present, and future employees, officers, partners, principals, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), and any other persons acting by, through, under, or in concert with any of the persons or entities listed in this subsection, and their successors.

38. "Request for Exclusion" means a written request by a Class Member to opt out of, or exclude oneself, from the Settlement.

39. "Response Deadline" means the date sixty (60) days after the Settlement Administrator mails the Notice Packets to Class Members and the last date on which Class Members may submit a Request for Exclusion or objection to the Settlement.

40. "Settlement" means the final and complete disposition of the Actions pursuant to this Stipulation.

41. "Settlement Administration Costs" means the reasonable costs and fees of administration of this Settlement to be paid to the Settlement Administrator from the Settlement Amount, including, but not limited to: (i) printing and mailing and re-mailing (if necessary) of Notice Packets to Class Members; (ii) preparing and submitting to Participating Class Members and government entities all appropriate tax filings and forms; (iii) computing the amount of and distributing Individual Settlement Awards, Class Representative Service Awards and Class Counsel Award; (iv) processing and validating Requests for Exclusion; (v) establishing a Qualified Settlement Fund, as defined by the Internal Revenue Code; and (vi) calculating and

remitting to the appropriate government agencies all employer and employee payroll tax obligations arising from the Settlement and preparing and submitting filings required by law in connection with the payments required by the Settlement.

42. "Settlement Administrator" means Ilym Group, Inc.

## **RECITALS**

43. <u>Procedural History</u>. On June 29, 2017, Plaintiff Wilson filed a putative wage and hour class action complaint against Tesla, Inc. alleging causes of action for: (1) failure to pay overtime wages under FLSA; (2) failure to pay minimum wages under California law; (3) failure to provide overtime under California law; (4) failure to provide meal periods under California law; (5) failure to provide rest breaks under California law; (6) failure to provide accurate wage statements under California law; (7) unlawful business practices in violation of California's Business and Professions Code. On August 11, 2017, Plaintiff Wilson filed a First Amended Complaint adding Plaintiff Hughes as a named Plaintiff and alleging an additional claim for: (8) failure to provide final wages under California law.

44. On August 11, 2017, Plaintiff Segal initiated an arbitration alleging similar wage and hour class action allegations against Tesla, Inc. and Tesla Motors, Inc. as follows: (1) failure to pay minimum wages under California law; (2) failure to provide overtime under California law; (3) failure to provide meal periods under California law; (4) failure to provide rest breaks under California law; (6) failure to provide accurate wage statements under California law; (7) failure to provide final wages under California law; (8) unlawful business practices in violation of California's Business and Professions Code.

45. <u>Settlement Negotiations</u>. On November 10, 2017, the parties attended a private mediation session with mediator Michael Dickstein and reached a resolution, subject to the Parties entering into a more comprehensive written settlement agreement. The parties continued to negotiate the remaining details and Defendants' counsel circulated a fully executed MOU on February 16, 2018.

46. <u>Benefits of Settlement to Plaintiffs and Class Members</u>. Plaintiffs and Class Counsel recognize the expense and length of continued proceedings necessary to litigate

Plaintiffs' disputes in the Actions through trial and through any possible appeals. Plaintiffs also have taken into account the uncertainty and risks of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Plaintiffs and Class Counsel were made aware of Defendants' intention to enforce its arbitration agreement and class waivers. Plaintiffs and Class Counsel are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Actions, both generally and in response to Defendants' defenses thereto, and the difficulties in establishing damages, penalties, restitution and other relief sought in the Actions. Plaintiffs and Class Counsel also have taken into account Defendants' agreement to enter into a settlement that confers substantial benefits upon the Class Members. Based on the foregoing, Plaintiffs and Class Counsel have determined that the Settlement set forth in this Stipulation is fair, adequate, and reasonable and is in the best interests of all Class Members.

47. <u>Defendants' Reasons for Settlement</u>. Defendants have concluded that any further defense of the Actions would be protracted and expensive for all Parties. Substantial amounts of Defendants' time, energy, and resources have been, and unless this Settlement is completed, shall continue to be, devoted to the defense of the claims asserted by Plaintiffs. Defendants have also taken into account the risks of further litigation in reaching their decision to enter into this Settlement. Even though Defendants have denied and continue to deny each of the claims asserted by Plaintiffs in the Actions, Defendants have agreed, nonetheless, to settle in the manner and upon the terms set forth in this Stipulation. Defendants have asserted and continue to assert that the claims alleged by Plaintiffs have no merit and do not give rise to any liability, damages, restitution, penalties or other payments. Defendants have expressly denied and continue to deny any wrongdoing whatsoever. Nothing contained in this Stipulation, no documents referred to herein, and no action taken to carry out this Stipulation, shall be construed or used as an admission by or against Defendants as to the merits or lack thereof of the claims asserted in the Actions. Defendants contend that they have complied with all applicable state, federal and local laws.

# TERMS OF SETTLEMENT

NOW THEREFORE, in consideration of the mutual covenants, promises, and agreements set forth herein, the Parties agree, subject to the Court's approval, as follows:

48. <u>Binding Settlement</u>. This Settlement shall bind the Parties and all Participating Class Members, subject to the terms and conditions hereof and the Court's approval.

49. <u>Tax Liability</u>. The Parties make no representations as to the tax treatment or legal effect of the payments specified herein, and Class Members are not relying on any statement or representation by the Parties, Class Counsel or Defense Counsel in this regard. Participating Class Members and Class Counsel understand and agree that they shall be responsible for the payment of all taxes and penalties assessed on the payments specified herein, and shall hold the Parties, Class Counsel and Defense Counsel free and harmless from and against any claims resulting from treatment of such payments as non-taxable, including the treatment of such payments as not subject to withholding or deduction for payroll and employment taxes.

50. <u>Circular 230 Disclaimer</u>. The Parties acknowledge and agree that (1) no provision of this Stipulation, and no written communication or disclosure between or among the Parties, Class Counsel or Defense Counsel and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her, or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Stipulation, (b) has not entered into this Stipulation based upon the recommendation of any other party or any attorney or advisor to any other party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party; and (3) no attorney or adviser to any other party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Stipulation.

51.  _Preliminary Approval of Settlement_.  The Parties agree that they will stipulate to the filing of a Second Amended Complaint.  Within five (5) days of the full execution of the Stipulation, Plaintiffs will file a Second Amended Complaint.  The Second Amended Complaint shall contain the same facts and claims as the existing First Amended Complaint, except: (1) the Second Amended Complaint will add Katia Segal as a named Plaintiff and class representative; (2) the Second Amended Complaint shall dismiss and not include Plaintiffs' FLSA Claim contained in their First Claim for Relief for failure to pay overtime wages under the FSLA; and (3) the Second Amended Complaint will add a claim for relief pursuant to the Labor Code Private Attorney General Act (Labor Code sections 2698, _et seq._) ("PAGA") based upon the facts contained in the existing First Amended Complaint and the facts alleged in the Letter from Alisa Martin on behalf of Brian Wilson to the Labor Workforce Development Agency dated June 29, 2017 providing notice to the LWDA pursuant to PAGA.

Within twenty-one (21) days of full execution of the Stipulation, Plaintiffs shall move the Court to enter the Preliminary Approval Order, thereby provisionally certifying the class for settlement purposes only and setting a Final Approval Hearing date.  The Parties agree to work diligently and cooperatively to have this Settlement presented to the Court for preliminary approval.  The Preliminary Approval Order shall provide for, among other things, the Notice Packet to be sent to Class Members as specified herein.  The Parties agree that provisional certification of the class is for settlement purposes only and is in no way an admission by Defendants in the Actions or in any other proceeding that class certification is proper.

52.  _Release by Plaintiffs and Other Participating Class Members_:  Upon the Effective Date, Plaintiffs shall be deemed to have released Plaintiffs' Released Claims and all other Participating Class Members shall be deemed to have released their Released Class Claims against the Released Parties.

53.  _Settlement Administration_.

a.  Within thirty (30) calendar days of entry of the Preliminary Approval Order, Defendants shall provide the Settlement Administrator with the Class Information for purposes of mailing the Notice Packets to Class Members.

i.     <u>Notice by First Class U.S. Mail</u>. Upon receipt of the Class Information, the Settlement Administrator shall perform a search based on the National Change of Address Database maintained by the United States Postal Service to update and correct any known or identifiable address changes. Within fourteen (14) days after receiving the Class Information from Defendants as provided herein, the Settlement Administrator shall mail copies of the Notice Packet to all Class Members via regular First Class U.S. Mail. The Settlement Administrator shall exercise its best judgment to determine the current mailing address for each Class Member. The address identified by the Settlement Administrator as the current mailing address shall be presumed to be the most current mailing address for each Class Member. The Parties agree that this procedure for notice provides the best notice practicable to Class Members and fully complies with due process. A reminder postcard will be mailed and e-mailed out 30 days after the Class Notice is sent to Settlement Class Members.

ii.     <u>Undeliverable Notice Packets</u>. Any Notice Packet returned to the Settlement Administrator as non-delivered on or before the Response Deadline shall be re-mailed to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address by the use of skip-tracing, or other type of automated search, using the name, address and/or Social Security number of the Class Member involved, and shall then perform a re-mailing to the Class Member whose Notice Packet was returned as non-delivered, assuming another mailing address is identified by the Settlement Administrator. If these procedures are followed, notice to Class Members shall be deemed to have been fully satisfied, and if the intended recipient of the Notice Packet does not receive the Notice Packet, the intended recipient shall nevertheless remain a Class Member and shall be bound by all terms of the Settlement and the Final Order and Judgment.

iii.     <u>Determination of Individual Settlement Awards</u>. The Settlement Administrator shall determine the eligibility for, and the amounts of, each Individual Settlement Award under the terms of this Stipulation. The Settlement Administrator's determination of the eligibility for and amount of each Individual Settlement Award shall be binding upon the Class Member and the Parties, yet subject to review by Class Counsel, Defense Counsel and the Court.

In the absence of fraud or gross negligence, Defendants' records shall be given the presumption of accuracy.

        iv.     <u>Disputes Regarding Administration of Settlement</u>. Any dispute not resolved by the Settlement Administrator concerning the administration of the Settlement shall be resolved by the Court. Prior to any such involvement of the Court, counsel for the Parties shall confer in good faith and make use of the services of mediator Michael Dickstein, if necessary, to resolve the dispute without the necessity of involving the Court. Should the services of Michael Dickstein fail to resolve the dispute, the Parties shall seek resolution by the Court.

        b.     <u>Exclusions</u>. The Class Notice shall explain that Class Members who wish to exclude ("opt-out") themselves from the Class and Settlement must submit a Request for Exclusion to the Settlement Administrator by the Response Deadline. The Request for Exclusion must: (1) contain the name and the last 4 digits of the Social Security number of the person requesting exclusion; (2) be signed by the Class Member; and (3) be postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address. Subject to review by Class Counsel, Defense Counsel and the Court, the date of the postmark on the return mailing envelope on the Request for Exclusion shall be the exclusive means used by the Settlement Administrator to determine whether a Class Member has timely requested exclusion from the class and Settlement. Any Class Member who timely and properly requests to be excluded from the class and Settlement shall not be entitled to any benefits under the Settlement and shall not be bound by the terms of the Settlement nor shall the Class Member have any right to object to the Settlement or appeal from the entry of the Final Order and Judgment. Class Members who do not submit a valid and timely Request for Exclusion on or before the Response Deadline shall be bound by all terms of the Settlement and the Final Order and Judgment entered in this Action if the Settlement is finally approved by the Court. No later than ten (10) days after the Response Deadline, the Settlement Administrator shall provide counsel for the Parties a complete list of all Class Members who submitted a timely and valid Request for Exclusion. Defendants, at their sole discretion, then shall have the right, but not the obligation, to revoke the Settlement if ten percent (10%) or more of the Class Members timely exclude themselves. Defendants shall

exercise their revocation rights, if at all, within fourteen (14) days of the Response Deadline by providing written notice to Class Counsel.

        c.    <u>Objections</u>. The Class Notice shall state that Class Members who wish to object to the Settlement must submit to the Settlement Administrator a Notice of Objection by the Response Deadline. The Notice of Objection must (1) state the full name of the Class Member; (2) be signed by the Class Member; (3) state the grounds for the objection; and (4) must be postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address. The Settlement Administrator shall email a copy of the Notice of Objection and all supporting documents forthwith to Class Counsel and Defense Counsel. Class Counsel will lodge a copy of the Notice of Objection with the Court. Subject to review by Class Counsel, Defense Counsel and the Court, the date of the postmark on the return mailing envelope on the Notice of Objection shall be the exclusive means used by the Settlement Administrator to determine whether a Class Member has timely objected to the Settlement. At no time shall any of the Parties, Class Counsel or Defense Counsel seek to solicit or otherwise encourage or discourage Class Members from submitting a Notice of Objection or filing an appeal from the Final Order and Judgment.

        d.    <u>Escalator/ Descalator</u>. It is estimated that there are 253 class members who collectively worked 13,691 weeks in the class period as Class Members. The amount of the Total Class Settlement will be proportionally increased to the extent the final numbers exceed the above workweeks by more than ten percent (10%).

        e.    <u>Monitoring and Reviewing Settlement Administration</u>. The Parties have the right to monitor and review the administration of the Settlement to verify that the monies allocated under the Settlement are distributed in a correct amount, as provided for in this Stipulation.

        f.    <u>Best Efforts</u>. The Parties agree to use their best efforts to carry out the terms of this Settlement.

    54.    <u>Funding of Settlement Amount</u>. The Settlement Amount shall be paid by Defendants as follows: No later than seven (7) days after the Effective Date, Defendants shall

provide to the Settlement Administrator, by way of a wire transfer, One Million Dollars ($1,000,000.00). If this Settlement is not finally approved by the Court in full, or is terminated, rescinded, canceled or fails to become effective for any reason, or if the Effective Date does not occur, then no portion of the Settlement Amount shall be paid, and the amounts received by the Settlement Administrator pursuant to this paragraph shall be, within seven days of the Court's failure to approve the Settlement in full, or this Agreement is terminated, rescinded, canceled or fails to become effective for any reason, or if the Effective Date does not occur, returned to Defendants.

55. <u>Allocation of Settlement Amount</u>. All Individual Settlement Awards, Class Representative Service Awards, the Class Counsel Award, the PAGA Payment to the LWDA, Settlement Administration Costs, and the Employers' Share of Payroll shall be paid from the Settlement Amount in a single disbursement following receipt of all installments detailed in paragraph 52 above. No portion of the Settlement Amount shall revert to Defendants or result in an unpaid residue.

a. <u>Individual Settlement Awards</u>. Class Members shall not be required to submit a claim in order to receive a share of the Net Settlement Amount. Individual Settlement Awards shall be paid by the Settlement Administrator to all Participating Class Members from the Net Settlement Amount pursuant to the formula set forth herein. Individual Settlement Awards shall be mailed by the Settlement Administrator by regular First Class U.S. Mail to each Participating Class Member's last known mailing address within fourteen (14) days after Defendants provide the Settlement Administrator with the payment of the Settlement Amount. Prior to mailing the Individual Settlement Awards, the Settlement Administrator shall perform a search based on the National Change of Address Database maintained by the United States Postal Service to update and correct any known or identifiable address changes.

i. Each Participating Class Member's Individual Settlement Award shall be calculated solely by the Settlement Administrator according to the following formula: Defendants shall provide the Settlement Administrator with the Compensable Workweeks for each Participating Class Member. The Settlement Administrator shall then divide the Net

Settlement Amount by the total number of Compensable Workweeks for all Participating Class Members resulting in a value for each week worked by the Participating Class Members during the Class Period ("Workweek Value"). The Settlement Administrator shall then take the number of Compensable Workweeks for each Participating Class Member and multiply it by the Workweek Value.

   ii. Individual Settlement Awards shall be made by check and shall be made payable to each Participating Class Member as set forth in this Stipulation.

   iii. Individual Settlement Awards shall be allocated as follows: 1/3 as wages subject to all applicable tax withholdings, 1/3 as non-wage penalties not subject to payroll tax withholdings, and 1/3 as non-wage interest not subject to payroll tax withholdings. The Settlement Administrator shall issue an IRS Form W-2 to each Participating Class Member for the portion of each Individual Settlement Award payment allocated as wages and subject to all applicable tax withholdings. The Settlement Administrator shall issue an IRS Form 1099 to each Participating Class Member for the portion of each Individual Settlement Award payment allocated as non-wage penalties and interest and not subject to payroll tax withholdings.

   iv. Individual Settlement Award checks shall remain negotiable for 180 days from the date of mailing. If an Individual Settlement Award check remains uncashed after One Hundred Eighty (180) days from issuance, the Settlement Administrator shall pay over the amount represented by the check, without the need to include interest, to the California Department of Industrial Relations Unclaimed Wages Fund, with the identity of the Participating Class Member to whom the funds belong. In such event, the Participating Class Member shall nevertheless remain bound by the Settlement.

   v. All monies received by Participating Class Members under the Settlement which are attributable to wages shall constitute income to such Participating Class Members solely in the year in which such monies actually are received by the Participating Class Members. It is expressly understood and agreed that the receipt of Individual Settlement Awards shall not entitle any Participating Class Member to additional compensation or benefits under any collective bargaining agreement or under any bonus, contest or other compensation or benefit

plan or agreement in place during the period covered by the Settlement, nor shall it entitle any Participating Class Member to any increased pension and/or retirement, or other deferred compensation benefits. It is the intent of the Parties that Individual Settlement Awards provided for in this Stipulation are the sole payments to be made by Defendants to Participating Class Members in connection with this Settlement, with the exception of Plaintiffs, and that the Participating Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Individual Settlement Awards. Furthermore, the receipt of Individual Settlement Awards by Participating Class Members shall not, and does not, by itself establish any general, special, or joint employment relationship between and among the Participating Class Member(s) and Defendants.

       b.    <u>Class Representative Service Awards</u>. Subject to Court approval, Plaintiffs shall each be paid a Class Representative Service Award not to exceed Ten Thousand Dollars ($10,000.00), or any lesser amount as awarded by the Court, for their time and effort in bringing and presenting the Actions and for releasing their Released Claims. Defendants shall not oppose or object to Plaintiffs' request for Class Representative Service Awards in an amount not to exceed Ten Thousand Dollars ($10,000.00) to each Plaintiff. The Class Representative Service Awards shall be paid to Plaintiffs from the Settlement Amount no later than fourteen (14) days after Defendants provide the Settlement Administrator with the final installment payment of the Settlement Amount. The Settlement Administrator shall issue an IRS Form 1099 to each Plaintiff for their respective Class Representative Service Awards. Plaintiffs shall be solely and legally responsible to pay any and all applicable taxes on their respective Class Representative Service Awards and shall hold harmless Defendants, Class Counsel and Defense Counsel from any claim or liability for taxes, penalties, or interest arising as a result of payment of the Class Representative Service Awards. The Class Representative Service Awards shall be made in addition to Plaintiffs' Individual Settlement Awards. Any amounts not requested by Plaintiffs or not awarded by the Court for the Class Representative Service Awards shall become part of the Net Settlement Amount and shall be distributed to Participating Class Members as part of their Individual Settlement Awards.

c.    <u>Class Counsel Award</u>. Subject to Court approval, Class Counsel shall be entitled to receive reasonable attorneys' fees in an amount not to exceed one-third (1/3) of the Settlement Amount, which amounts to Three Hundred Thirty-Three Thousand Three Hundred Thirty Three Dollars and Thirty Three Cents ($333,333.33). In addition, subject to Court approval, Class Counsel shall be entitled to an award of reasonable costs associated with Class Counsel's prosecution of the Actions in an amount not to exceed Twenty Thousand Dollars ($20,000.00). Defendants shall not oppose or object, and shall file a statement of non-opposition, to Plaintiffs' request for an award of attorneys' fees in an amount not to exceed Three Hundred Thirty-Three Thousand Three Hundred Thirty Three Dollars and Thirty Three Cents ($333,333.33) and request for an award of reasonable costs not to exceed Twenty Thousand Dollars ($20,000.00). In the event the Plaintiffs' Counsel seek and/or the Court awards Class Counsel less than Three Hundred Thirty Three Thousand Three Hundred Thirty Three Dollars and Thirty Three Cents ($533,333.33) in attorneys' fees and/or less than Twenty Thousand Dollars ($20,000.00) in costs, the difference shall become part of the Net Settlement Amount and shall be distributed to Participating Class Members as part of their Individual Settlement Awards. Class Counsel shall be paid any Court-awarded attorneys' fees and costs no later than seven (7) days after Defendants provide the Settlement Administrator with the payment of the Settlement Amount. This Settlement is not conditioned upon the Court awarding Class Counsel any particular amount of attorneys' fees or costs.

i.    Class Counsel shall be solely and legally responsible to pay all applicable taxes on the Class Counsel Award. Class Counsel shall provide the Settlement Administrator with properly completed and signed IRS Form W-9s in order for the Settlement Administrator to process the Class Counsel Award approved by the Court. The Settlement Administrator shall issue IRS Form 1099s to counsel for Plaintiff Hernandez and counsel for Plaintiff Cruz for their respective shares of for Class Counsel Award.

ii.    In the event Class Counsel is required to take any action to enforce the Settlement or judgment, Class Counsel shall be entitled to reasonable attorneys' fees and costs, to be awarded by the Court, in addition to the Class Counsel Award.

iii.     Plaintiff's Counsel represents that they will not recommend to any putative class members that they not participate in this settlement. Plaintiff's Counsel further represents that they do not currently represent or have communicated with any party that Plaintiff's Counsel intends to represent in claims against Tesla other than the Plaintiffs named in the instant action.

d.     <u>PAGA Payment to the LWDA</u>. Fifty Thousand Dollars ($50,000.00) from the Settlement Amount shall be allocated as penalties under PAGA, of which Thirty-Seven Thousand Five Hundred Dollars ($37,500.00) shall be paid by the Settlement Administrator directly to the LWDA. The remaining Twelve Thousand Five Hundred Dollars ($12,500.00) shall be part of the Net Settlement Amount and shall be distributed to Participating Class Members as part of their Individual Settlement Awards.

e.     <u>Settlement Administration Costs</u>. The Settlement Administration Costs, which are estimated to be approximately Fifteen Thousand Dollars ($15,000.00), shall be paid from the Settlement Amount. Prior to Plaintiffs filing a motion for final approval of the Settlement, the Settlement Administrator shall provide the Parties with a statement detailing the Settlement Administration Costs to date. The Parties agree to cooperate in the Settlement Administration process and to make all reasonable efforts to control and minimize Settlement Administration Costs.

i.     The Settlement Administrator shall be authorized to establish a Qualified Settlement Fund ("QSF") pursuant to IRS rules and regulations in which the Settlement Amount shall be placed and from which payments required by the Settlement shall be made.

ii.     The Settlement Administrator shall keep the Parties timely apprised of the performance of all Settlement Administrator responsibilities required by the Settlement.

iii.     The Parties each represent they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

f.  Employers' Share of Payroll Taxes.  The Employers' Share of Payroll Taxes shall be paid from the Settlement Amount.  The Settlement Administrator shall calculate the amount of the Employers' Share of Payroll Taxes and shall remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities in a timely manner.

56.  Final Settlement Approval Hearing and Entry of Final Order and Judgment.  Upon expiration of the Response Deadline, a Final Approval Hearing shall be conducted to determine whether to grant final approval of the Settlement, including determining the amounts properly payable for: (i) the Class Counsel Award; (ii) the Class Representative Service Awards; (iii) the PAGA Payment; and (iv) Settlement Administration Costs.  Prior to the Final Approval Hearing, the Settlement Administrator shall provide a written report or declaration to the Parties describing the process and results of the administration of the Settlement to date, which report or declaration shall be filed by Plaintiffs with the Court prior to the Final Approval Hearing.  If the Court grants final approval of the Settlement, the Settlement Administrator shall post notice of final judgment on its website within seven (7) calendar days of entry of the Final Order and Judgment.

57.  Nullification of Settlement.  In the event: (i) the Court does not enter the Preliminary Approval Order; (ii) the Court does not grant final approval the Settlement; (iii) the Court does not enter the Final Order and Judgment; or (iv) the Settlement does not become final for any other reason, this Stipulation shall be rendered null and void, any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void from the beginning and this Stipulation and any documents related to it shall not be used by any Class Member or Class Counsel to support any claim or request for class certification in the Action, and shall not be used in any other civil, criminal or administrative action against Defendants or any of the other Released Parties.  If Defendants elect to revoke the Settlement, as specified in paragraph 51(b), the Parties and any monies required to be paid under this Settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Stipulation, and the Parties shall proceed in all respects as if this Stipulation had not been executed, except that any Settlement Administration Costs already incurred by the Settlement Administrator shall be paid to the Settlement Administrator by Defendants.  In the event an appeal is filed from the

Final Order and Judgment, or any other appellate review is sought, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review. Any fees incurred by the Settlement Administrator prior to it being notified of the filing of an appeal from the Final Order and Judgment, or any other appellate review, shall be paid by Defendants to the Settlement Administrator.

58. <u>No Admission by Defendants</u>. Defendants deny all claims alleged in the Actions and deny all wrongdoing whatsoever by Defendants. Neither this Stipulation, nor any of its terms and conditions, nor any of the negotiations connected with it, is a concession or admission, and none shall be used against Defendants as an admission or indication with respect to any claim of any fault, concession, or omission by Defendants or that class certification is proper under the standard applied to contested certification motions. The Parties stipulate and agree to the certification of the proposed class for settlement purposes only. The Parties further agree that this Stipulation will not be admissible in this or any other proceeding as evidence that either (i) a class action should be certified or (ii) Defendants are liable to Plaintiffs or any Class Member, other than according to the terms of this Stipulation.

59. <u>Confidentiality</u>. Plaintiffs and Class Counsel agree not to disclose or publicize the settlement among the parties contemplated herein (the "Settlement"), including the fact of the Settlement, its terms or contents, and the negotiations underlying the Settlement, in any manner or form, directly or indirectly, to any person or entity, except potential class members and as shall be contractually required to effectuate the terms of the Settlement as set forth herein. For the avoidance of doubt, this section means Plaintiff and Class Counsel will not to issue any press release or website postings, communicate with, or respond to any media or publication entities, publish information in manner or form, whether printed or electronic, on any medium or otherwise communicate, whether by print, video, recording or any other medium, with any person or entity concerning the Settlement, including the fact of the Settlement, its terms or contents and the negotiations underlying the Settlement, except as shall be contractually required to effectuate the terms of the Settlement as set forth herein. However, for the limited purpose of allowing Class Counsel to prove adequacy as class counsel in other actions, Class Counsel may disclose

the name of the Parties in this action and the venue/case number of this action (but not any other settlement details) for such purposes.

60.     The settlement shall remain confidential until Plaintiffs file their motion for preliminary approval of class action settlement with the Court.

61.     <u>Exhibits and Headings</u>. The terms of this Stipulation include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein. The Exhibits to this Stipulation are an integral part of the Settlement. The descriptive headings of any paragraphs or sections of this Stipulation are inserted for convenience of reference only.

62.     <u>Interim Stay of Action</u>. The Parties agree to stay and to request that the Court stay all proceedings in the Actions, except such proceedings necessary to implement and complete the Settlement and enter the Final Order and Judgment.

63.     <u>Amendment or Modification</u>. This Stipulation may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

64.     <u>Entire Agreement</u>. This Stipulation and any attached Exhibits constitute the entire agreement between the Parties, and no oral or written representations, warranties, or inducements have been made to Plaintiffs or Defendants concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in this Stipulation and its Exhibits. No other prior or contemporaneous written or oral agreements may be deemed binding on the Parties.

65.     <u>Authorization to Enter Into Settlement Agreement</u>. Class Counsel and Defense Counsel warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Stipulation and to take all appropriate actions required or permitted to be taken by such Parties pursuant to this Stipulation to effectuate its terms, and to execute any other documents required to effectuate the terms of this Stipulation. The Parties, Class Counsel and Defense Counsel shall cooperate with each other and use their best efforts to effect the implementation of the Settlement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may

seek the assistance of the Court and/or mediator Mark Rudy to resolve such disagreement. The person signing this Stipulation on behalf of Defendants represents and warrants that he/she is authorized to sign this Stipulation on behalf of Defendants. Plaintiffs represent and warrant that they are authorized to sign this Stipulation and that they have not assigned any claim, or part of a claim, covered by this Settlement to a third-party. The Parties have cooperated in the drafting and preparation of this Stipulation Agreement. Hence, in any construction made of this Stipulation, the same shall not be construed against any of the Parties.

66. <u>Binding on Successors and Assigns</u>. This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

67. <u>California Law Governs</u>. All terms of this Stipulation and the Exhibits hereto shall be governed by and interpreted according to the laws of the State of California, without giving effect to any law that would cause the laws of any jurisdiction other than the State of California to be applied.

68. <u>Counterparts</u>. This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

69. <u>This Settlement is Fair, Adequate and Reasonable</u>. Plaintiffs represent that this Settlement is a fair, adequate, and reasonable settlement of the Actions and they have arrived at this Settlement after extensive arm's-length negotiations, taking into account all relevant factors, present and potential.

70. <u>Jurisdiction of the Court</u>. Following entry of the Final Order and Judgment, the Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Stipulation and all orders and judgments entered in connection therewith, and the Parties, Class Counsel and Defense Counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the Settlement embodied in this Stipulation and all orders and judgments entered in connection therewith.

71. <u>Invalidity of Any Provision</u>. Before declaring any term or provision of this Stipulation invalid, the Parties request that the Court first attempt to construe the terms or

1  provisions valid to the fullest extent possible consistent with applicable precedents so as to define

2  all provisions of this Stipulation as valid and enforceable.

3       72.   <u>Binding Nature of Notice of Class Action Settlement</u>.  It is agreed that because the

4  Class Members are so numerous, it is impossible or impractical to have each Class Member

5  execute the Stipulation.  The Class Notice shall advise all Class Members of the binding nature of

6  the Settlement, and the release of Released Claims and shall have the same force and effect as if

7  this Stipulation were executed by each Participating Class Member.

8

9  Dated: _____5/1/2018_____, 2018           _____

10                                  Plaintiff Brian Wilson

11

12

13 Dated: _____5/1/2018_____, 2018           _____

14                                  Plaintiff Carrie Hughes

15

16

17 Dated: _____5/1/2018_____, 2018           _____

18                                  Plaintiff Katia Segal

19

20 Dated: May 1, 2018               Defendant Tesla, Inc.

21

22                      By:    _____

23                      Its:      Senior Counsel

24

25 [signatures continue]

26

27

28

Dated: _____ May 1 _____, 2018        Defendant Tesla Motors, Inc.

By: _____

Its: _____
          Senior Counsel

Approved as to form and content:

Dated: 5/1/2018 _____, 2018        AMARTIN LAW, PC

By: _____
ALISA A. MARTIN
Attorneys for Plaintiffs, BRIAN WILSON, CARRIE
HUGHES, and KATIA SEGAL

Dated: May 1 _____, 2018        BRENNAN & DAVID LAW GROUP

By: _____
LINDSAY DAVID
Attorneys for Plaintiffs, BRIAN WILSON,
CARRIE HUGHES, and KATIA SEGAL

Dated: May 1 _____, 2018        OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By: _____
JACK S. SHOLKOFF
Attorneys for Defendants TESLA, INC. and TESLA
MOTORS, INC.

33916732.3

1098621/02533328v.1

EXHIBIT 1


NOTICE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WILSON, CARRIE HUGHES, AND KATIA SEGAL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>TESLA, INC. a corporation dba TESLA MOTORS, INC., and TESLA MOTORS, INC., a corporation,<br><br>Defendant. | Case No. 3:17-cv-03763-JSC<br><br>Assigned for All Purposes To:<br>Judge: Honorable Jacqueline Scott-Corley<br>Courtroom F<br><br>**NOTICE OF SETTLEMENT OF CLASS AND REPRESENTATIVE CLAIMS** |

> **If you worked for TESLA, INC. or TESLA MOTORS, INC. ("Tesla") as an owner advisor, sales advisor, or another similar exempt sales position in California at any time between June 29, 2013 and DATE, then you may be entitled to a cash payment under this Settlement.**
>
> **If you received this Notice, you most likely are entitled to a cash payment.**

***A Federal District Court Judge for the Northern District of California has authorized this notice. This is not a solicitation from a lawyer.***

**If you are a member of the class, you will be bound by this Settlement and your rights will be affected by this litigation unless you exclude yourself from the class as explained below. PLEASE READ THIS NOTICE CAREFULLY.**

- A former Tesla employee initiated a lawsuit in the Federal District Court for the Northern District of California asserting that Tesla violated California law by failing to provide meal and rest breaks and by misclassifying Owner Advisors as "exempt," resulting in the failure to provide overtime compensation.

- Tesla denies these allegations. The Court has not decided the merits of these claims.

- To avoid further litigation expenses, Tesla agreed to a class settlement. This Notice explains your rights under this Settlement.

- Your legal rights are affected by this Settlement and you have a choice to make now:

| SUMMARY OF WHAT TO DO | |
|---|---|
| **DO NOTHING** | **Please see the enclosed Information Sheet for Your estimated portion of the settlement.**<br><br>**To receive your estimated portion, you do not need to do anything. *However, the settlement is contingent on final approval by the Court. Additionally, Tesla has the option to withdraw from the settlement if more than 10% of class members ask to be excluded from the Settlement.***<br><br>If you do nothing, you give up your right to sue Tesla for the claims released by this Settlement. |
| **ASK TO BE EXCLUDED** | This will remove you from the Class and you will receive no settlement money. But you will keep your rights to pursue your claims against Tesla in a separate action.<br><br>If you want to exercise this option, you must do so by – [INSERT DATE – 60 DAYS FROM MAILING], as described in Section 12, below. |
| **OBJECT** | If you don't like the Settlement, you can file an Objection with the Court and explain why so.<br><br>If you want to exercise this option, you must do so by – [INSERT DATE – 60 DAYS FROM MAILING], as described in Section 13, below. |

These rights and options—**and the deadlines to exercise them**—are explained below.

**Any questions?** Read on.

| TABLE OF CONTENTS |
|---|

**BASIC INFORMATION** ..........................................................................................**3**

1. Why did I get this notice? ...........................................................................3
2. What is this lawsuit about?.........................................................................4
3. Why is there a settlement?.........................................................................4

**THE SETTLEMENT BENEFITS—WHAT YOU GET**..........................................................**4**

4. What does the settlement provide?...........................................................4

5.   What claims am I releasing as part of this lawsuit? ...................................................5
6.   How is my estimated payment determined? ...........................................................6
7.   What if I disagree with the number of weeks used to calculate my estimated settlement amount? .........................................................................................................................7
8.   Is the settlement fair? ...........................................................................................7
9.   Can Tesla retaliate against me? .............................................................................8

**YOUR RIGHTS AND OPTIONS** ................................................................................**8**

10.  How do I receive money from the settlement? ........................................................8
11.  If I want to be part of the settlement, is there anything that can prevent me from receiving payment? .............................................................................................................8
12.  How do I exclude myself from the settlement? ........................................................8
13.  May I object to the settlement? ............................................................................9

**THE LAWYERS REPRESENTING YOU** .......................................................................**9**

14.  Do I have a lawyer in this case? ............................................................................9
15.  How will the lawyers be paid? .............................................................................10

**FINAL APPROVAL OF THE SETTLEMENT** .............................................................**10**

16.  When will Final Approval of the Settlement Take Place? .........................................10
17.  What is the effect of Final Approval of the Settlement? ..........................................11
18.  When will money be distributed under this Settlement? ..........................................11

**GETTING MORE INFORMATION** .........................................................................**11**

19.  How do I get more information? ..........................................................................11

**INFORMATION SHEET** ......................................................................................**1**

<div style="background:black; color:white; text-align:center; padding:10px;">

**BASIC INFORMATION**

</div>

| **1.   Why did I get this notice?** |
| --- |

A proposed settlement (the "Settlement") has been reached in a class action lawsuit entitled *Brian Wilson et al.  v. Tesla, Inc., et al.,* United States District Court for the Northern District of California Case No. 3:17-cv-03763-JSC (the "Lawsuit").

This Notice briefly describes the Lawsuit and informs you of your rights and options regarding the proposed Settlement, which, if approved, will resolve all claims against Tesla regarding misclassification, unpaid overtime, meal breaks, and rest breaks.

## 2.    What is this lawsuit about?

Brian Wilson, Carrie Hughes, and Katia Segal ("Plaintiffs" or "Class Representatives"), former employees of Tesla, allege (on behalf of themselves and others similarly situated) the following claims against Tesla: (1) failure to pay all owed wages; (2) failure to provide legally compliant meal and rest periods, (3) failure to provide timely and accurate wage statements, (4) failure to provide final wages, (5) unlawful and/or unfair business practices in violation of California Business and Profession Code Section 17200 et seq. predicted on the above alleged violations. and (6) penalties pursuant to The Labor Code Private Attorneys General Act of 2004, California Labor Code Section 2698 et seq. ("PAGA").

Plaintiffs primarily allege that Tesla failed to provide Owner Advisors with meal and rest breaks and to pay one hour of additional pay for missed breaks. Plaintiffs further allege that Tesla misclassified Owner Advisors as exempt from overtime. In particular, Plaintiffs allege that they should not have been classified as exempt because over half of their income did not come from commissions, which is a requirement for the exemption. As a result of the misclassification, Plaintiffs argue that Owner Advisors should have received overtime compensation when they worked over 8 hours a day or 40 hours a week.

Tesla denies that it did anything wrong and is confident that it has strong legal and factual defenses to the above claims.

The Court has not ruled on the merits of Plaintiffs' claims or Tesla' defenses.

## 3.    Why is there a settlement?

Instead of going to trial, both sides agreed to a settlement to avoid the costs and risks of a trial.   This Settlement is a compromise reached after good faith, arm's length negotiations between Plaintiffs and Tesla (collectively, the "Parties") and is not an admission of liability on the part of Tesla.  Both sides agree that in light of the risks and expenses associated with continued litigation, this Settlement is fair, adequate and reasonable.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

## 4.    What does the settlement provide?

Tesla will pay a settlement of $1,000,000 ("Settlement Amount") to end this lawsuit.

Class Members will receive a portion of the Net Settlement Amount, which is the $1,000,000 less payments of: (1) the amount payable to Wilson, Hughes, and Segal as an incentive award

of up to $10,000 each for a total of $30,000 as approved by the Court; (2) the sum of up to $353,333.33 as attorneys' fees and costs to Class Counsel as approved by the Court; (3) the Administrative Expenses of up to $15,000 as approved by the Court; (5) the $50,000 payment to the California Labor & Workforce Development Agency for civil penalties; and (6) the payment of any and all applicable federal, state or local payroll taxes or other employer-tax related obligations or contributions required under any and all applicable laws.

| 5. | What claims am I releasing as part of this lawsuit? |
|---|---|

If you do not exclude yourself from the Settlement, you will be releasing your right to pursue claims against Tesla were or could have been asserted in this Lawsuit. The exact release language to which you will be bound is as follows:

**Released Claims:**

Any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown that have been, could have been or might in the future be asserted by Plaintiffs, or the Class Members or any of their respective heirs, executors, administrators, beneficiaries, predecessors, successors, attorneys, assigns, agents and/or representatives arising out of any claims that were or could have been encompassed in the Action, and any claims which reasonably flow from the facts alleged in Plaintiffs' Complaint, First Amended Complaint, Second Amended Complaint, including, but not limited to, 1) failure to pay minimum wages under California law; (2) failure to provide overtime under California law; (3) failure to provide meal periods under California law; (4) failure to provide rest breaks under California law; (6) failure to provide accurate wage statements under California law; (7) failure to provide final wages under California law; (8) unlawful business practices in violation of California's Business and Professions Code; and (9) penalties pursuant to PAGA, and any other claims for unpaid wages (including claims for minimum wage, overtime, and meal period and rest period premiums), interest, penalties (including waiting time penalties pursuant to Labor Code section 203, pay stub penalties pursuant to Labor Code section 226, and civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004 (Labor Code sections 2698, et seq.) ("PAGA")), claims pursuant to Labor Code sections 200, 201, 202, 218.5, 226, 226.7, 510, 512, 558, 1174, 1194, 1197, 1198, and 1199, the Industrial Welfare Commission Wage Orders, claims under the Fair Labor Standards Act, and claims under Business and Professions Code sections 17200, et seq., claims for attorneys' fees and costs, conversion, fraud, common count, and unfair business practices. Released Claims include all claimed or unclaimed compensatory, consequential, incidental, liquidated, punitive and exemplary damages, restitution, interest, costs and fees, injunctive or equitable relief, and any other remedies available at law or equity allegedly owed or available to the Class arising or reasonably flowing from the Second Amended Complaint against the Released Parties for the time period from the beginning of time up to and including the Date of Final Approval

**Claims Excluded From the Release:**

This release excludes the release of claims not permitted by law, including workers' compensation, personal injury or discrimination claims. Moreover, this release excludes any wage and hour claims you may have against Tesla after the date of final approval.

**"Released Parties" means:**

Means defendants Tesla and all of Tesla's current or former parent companies, subsidiary companies and/or related companies, partnerships, or joint ventures, and, with respect to each of them, all of their and/or such related entities' predecessors and successors, and, with respect to each such entity, all of its past, present, and future employees, officers, partners, principals, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), and any other persons acting by, through, under, or in concert with any of the persons or entities listed in this subsection, and their successors.

Feel free to contact Class Counsel via email (alisa@amartinlaw.com or lcdavid@brennandavid.com) or telephone (619-308-6880 or 760-730-9408) if you have any questions regarding the scope of the release.

| 6. | How is my estimated payment determined? |
|---|---|

Your estimated settlement amount is based on the percentage of total weeks you worked compared to the total weeks that all Owner Advisors worked at Tesla between June 29, 2013 and [INSERT, 2018] (which is referred to as the "Class Period"). That percentage is then multiplied by the total funds that will be available to distribute to the Class.

| # of weeks you worked | ÷ | Total # of weeks the class worked | = | Your Percentage of settlement amount |
|---|---|---|---|---|
| Net Settlement Fund | x | Your Percentage of settlement amount | = | Your settlement amount |

An example of how this calculation works is provided below; **however, please note that the numbers used below are for illustrative purposes only and do not reflect the actual numbers that will be used to calculate you estimated settlement amount.**

- Assume all class members combined worked a total of 10,000 weeks during the Class Period and you personally worked 50 of those weeks. Your percentage would be 50/1000 = 5% of the total workweek. Now assume $500,000 is available to be distributed among class members after subtracting all fees, costs, and other payments. Your estimated settlement amount would be 5% of $500,000, which amounts to $2,500.

- **The actual number of weeks used to calculate your estimated settlement amount is listed on Information Sheet, which is a separate document enclosed with this notice**.

- The total number of weeks worked by all class members is [INSERT].  This number may decrease if anyone decides to be excluded from the Settlement.  Typically, only a small number of class members, if any, will exclude themselves from a settlement.  As such, the total number of workweeks by all class members will likely not significantly decrease.

Due to mandated tax withholdings applicable to the wage portion of each Settlement Award, your estimated settlement amount may be less due to regular wage withholdings because 1/3 of your settlement amount will be treated as wages and 2/3 will be treated as penalties and interest. Please note that nothing in this Notice or the Settlement is intended to constitute tax advice.  You should consult your own tax advisor for such advice.

| **7.  What if I disagree with the number of weeks used to calculate my estimated settlement amount?** |
|---|

If you disagree with the number of weeks that you worked between June 29, 2013 and [INSERT] as specified on your Information Sheet, you must complete Section 3 on the Information Sheet and return with all documentation to support your position **to the Settlement Administrator via email at claims@ilymgroupclassaction.com, fax at (888-845-6185) or mail at 14771 Plaza Drive, Suite L, Tustin, CA 92780** by [INSERT DATE THAT IS 60 days after mailing].

The Settlement Administrator will review your Information Sheet and supporting documentation, as well as Tesla's records, to resolve your dispute.  If the Settlement Administrator is unable to resolve the dispute, Plaintiffs' attorneys and Tesla's attorneys will try and resolve the dispute, using a mediator if necessary.  If they are unable to resolve the dispute, the Court will resolve the dispute.  Tesla's records are presumed accurate unless you submit verifiable evidence to the contrary.

**See the Information Sheet for your specific estimated settlement amount.**

| **8.      Is the settlement fair?** |
|---|

Class Counsel is experienced in class action litigation and has a duty to represent the interests of all Class Members. Based on analyzing the law concerning the claims, analyzing records, making factual investigations, considering risks involved in further litigation, ensuring that the Class receives payment without having to wait for years of protracted litigation with no certainty of success, and using a professional third-party mediator to assist in reaching a fair settlement of this lawsuit, Class Counsel believes the Settlement is fair, adequate and reasonable. Additionally, the Court has reviewed the Settlement and has preliminarily determined the Settlement to be fair.

| 9. | Can Tesla retaliate against me? |
|---|---|

No.  Tesla represents that it will not retaliate against any employee as a result of his or her participation in the Settlement.  Moreover, it is unlawful for Tesla to retaliate against anyone who participates in the Settlement. If you or anyone else is being retaliate against, immediately report this to Class Counsel by calling or emailing Alisa A. Martin at (619) 308-6880, alisa@amartinlaw.com or Lindsay David at (760) 730-9408, lcdavid@brennanddavid.com.

## YOUR RIGHTS AND OPTIONS

**You have to decide whether to be included or excluded from the Settlement and you have to decide this NOW.**

| 10. | How do I receive money from the settlement? |
|---|---|

If you wish to receive money from the Settlement, you do not need to do anything.

| 11. | Is there anything that can prevent me from receiving money under the Settlement? |
|---|---|

There are generally three scenarios that could prevent you from receiving money under the Settlement:

- First, if more than 10% of the Class Members ask to be excluded from the settlement, Tesla could exercise its option to withdraw from the Settlement.

- Second, the Court could find that the Settlement is not fair or reasonable and deny final approval.

- Third, the Court could grant final approval, but that decision could subsequently get reversed on appeal.

| 12. | How do I exclude myself from the settlement? |
|---|---|

**You may request to be excluded from the Settlement and Class by submitting to the Settlement Administrator a request for exclusion which must: (1) contain your name and the last 4 digits of your Social Security number; (2) be signed by you; and (3) be returned or postmarked by [INSERT] and returned to the Settlement Administrator via email at claims@ilymgroupclassaction.com, fax at (888-845-6185) or mail at 14771 Plaza Drive, Suite L, Tustin, CA 92780.**

If you submit a proper and timely request for exclusion, you will no longer be a member of the Class, and you will not be eligible to receive any of the benefits under the Settlement or be entitled to object to the terms of the Settlement. You also will not be bound by the terms of the Settlement, and you may pursue any claims that you may have, at your own expense, against the Defendants.

Please note that all class members are potentially bound to an arbitration agreement, which means if you exclude yourself from this Settlement, there is a reasonable chance that you will be precluded from pursuing your claims in court and having your case tried before a jury. Instead, you may have to pursue your claims against Tesla in arbitration. The parties have disputed the scope and impact of the arbitration agreements in this case, but the Court has not issued any rulings in this Lawsuit on the matter.

| 13. | May I object to the settlement? |
|---|---|

If you do not exclude yourself from the Settlement and the Class, as provided in Section 12 above, and you have objections or serious concerns with the settlement, you may inform the Court about your objections or concerns by filing a written objection.

To be valid, the objection must (i) be in writing and signed by you, (ii) identify each specific objection, as well as its basis and any legal support for each objection, (iii) your full name and address, and (iv) be postmarked, emailed, faxed or delivered to the Settlement Administrator (see contact information below), Class Counsel (see contact information in Section 14 below) or the Court no later than _____ sixty (60) days after mailing.

<div align="center">

Settlement Administrator Contact Information:
Email: claims@ilymgroupclassaction.com
Address: 14771 Plaza Drive, Suite L, Tustin, CA 92780
Fax: (888) 845-6185

</div>

If you submit an objection, you may appear at the Final Approval Hearing (discussed below in Section 16) to address your objection. You may appear either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.

Based on the objection, the Court may deny approval of the Settlement, which means no settlement payments will be sent out and the lawsuit will continue.

## THE LAWYERS REPRESENTING YOU

| 14. | Do I have a lawyer in this case? |
|---|---|

The Court has approved the law firms of AMartin Law, PC, and Brennan & David Law Group to represent you and other Class Members in this class action. These lawyers are called Class

Counsel. You will not be separately charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| CLASS COUNSEL | |
| --- | --- |
| Alisa A. Martin<br>AMARTIN LAW, PC<br>600 West Broadway, Suite 700<br>San Diego, CA 92101<br>Tel: (619) 308-6880<br>alisa@amartinlaw.com | Lindsay C. David<br>BRENNAN & DAVID LAW GROUP<br>2888 Loker Avenue E, Suite 302<br>Carlsbad, CA 92010<br>Tel: (760)730-9408<br>lcdavid@brennandavid.com |

**15.    How will the lawyers be paid?**

Class Counsel will ask the Court to approve a payment of Attorneys' Fees and Cost Award of up to 33 1/3% of the Gross Settlement Amount, which will be paid out of the Total Settlement Amount. These attorney's fees will pay Class Counsel for bringing the lawsuit on your behalf, investigating the facts, litigating the case, negotiating the Settlement, and incurring costs. Tesla will not to oppose these attorney's fees or costs. The Court may award less than the requested amount.  The Court will not approve a request for attorneys' fees until the final approval hearing.  Class Counsel will file their request for attorneys' fees by Insert date that is 30 days after mailing.   You may review and object to the motion for Attorneys' Fees and Costs by following the procedures in Section 13 above.  You can obtain a copy of Class Counsel's request for attorneys' fees by requesting a copy from Class Counsel via email at lcdavid@brennandavid.com, going to www.tesla-owner-advisor-lawsuit.com, or going to the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov. For more detailed instructions, please see section 16 below.

**FINAL APPROVAL OF THE SETTLEMENT**

**16.    When will Final Approval of the Settlement Take Place?**

The Court will hold a Final Approval Hearing on _____ at _____a.m. in Courtroom F of the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102.

The date of the final approval hearing may change without further notice. To confirm that the date has not changed, please email Class Counsel at lcdavid@brennandavid.com, go to the settlement website located at tesla-owner-advisor-lawsuit.com, or going to the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov. For more detailed instructions, please see section 16 below.

You may attend and you may ask to speak, but you don't have to.

| | |
|---|---|
| **17.** | **What is the effect of Final Approval of the Settlement?** |

If the Court enters an order granting final approval of the Settlement, and that order is not appealed, all Class Members (except those who request to be excluded) will receive a check via mail and will be bound by the Settlement terms, including the release set forth in Section 5 above.

| | |
|---|---|
| **18.** | **When will money be distributed under this Settlement?** |

If the Court grants final approval of the Settlement and enters judgment within 30 days of the final approval hearing and (2) no one appeals the decision, checks will be mailed out by approximately INSERT DATE THAT IS 60 DAYS FROM FINAL APPROVAL HEARING].

**Please note** that this estimated mailing date will be pushed out if the Court delays entering a final approval order and judgment or if someone appeals the Court's decision. If the estimated mailing date is delayed or if the Settlement does not receive final approval, information about the delay or nonapproval will be posted at www.tesla-owner-advisor-lawsuit.com.

## GETTING MORE INFORMATION

| | |
|---|---|
| **19.** | **How do I get more information?** |

You may contact Class Counsel at the addresses listed in Section 14 above without having to pay for any attorneys' fees. You also have the right to speak with an attorney of your choosing at your own expense. Please do not contact the Court.

This Notice only summarizes the Lawsuit, the Settlement and related matters. For copies of the pleadings filed in this case, you may go to the website www.tesla-owner-advisor-lawsuit.com or email Class Counsel at lcdavid@brennandavid.com.

You may also access the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

If your address changes, or is different from the address on the envelope enclosing this Notice, please promptly notify the Settlement Administrator.

**PLEASE DO <u>NOT</u> CONTACT THE COURT ABOUT THIS SETTLEMENT NOTICE**

EXHIBIT 2

**INFORMATION SHEET**

*BRIAN WILSON v. TESLA, INC., et al.*

District Court for the Northern District of California Case Number 3:17-cv-03763-JSC

Please complete, sign, date and return this Form to ILYM Group via email at claims@ilymgroupclassaction.com, mail at 14771 Plaza Drive, Suite L, Tustin, CA 92780, or fax: (888) 845-6185 **ONLY IF** (1) your personal contact information has changed, and/or (2) you wish to dispute any of the items listed in Section (III), below. It is your responsibility to keep a current address on file with the Settlement Administrator.

**(1) YOUR INFORMATION**

<<Name>>                                                Name/Address Changes, if any:

<<Address>>                                             _____

<<City>>, <<State>> <<Zip Code>>                        _____

                                                                 _____

**(2) information Used to Calculate Your Settlement Amount:**

According to Tesla, Inc.'s ("Tesla's") records:

        You worked _____ weeks between June 29, 2013 and <<PRELIM APPROVAL DATE>> for Tesla;

Based on the above, your Settlement Share is estimated at $_____.

**(3) If you disagree with items (a), (b), and/or (c) in Section (III) above, please explain why in the space provided below and include copies of any supporting evidence or documentation with this Form:**

_____

_____

_____

_____

_____

_____

_____

_____

If you dispute the above information from Tesla's records, Tesla's records will control unless you are able to provide documentation that establishes otherwise and that Tesla's records are mistaken. If there is a dispute about whether Tesla's information or yours is accurate, and the dispute cannot be resolved between the parties, the dispute will be resolved by the Court.

**Date: _____**                                      **Signature:**

**_____**

**ANY DISPUTES, ALONG WITH ANY SUPPORTING DOCUMENTATION, MUST BE DELIVERED, FAXED, EMAILED, OR POSTMARKED NO LATER THAN <<RESPONSE DEADLINE>>**

**EMAIL OR MAIL TO:**
**Claims Administrator**
**c/o ILYM GROUP**
Email: claims@ilymgroupclassaction.com
Address: 14771 Plaza Drive, Suite L, Tustin, CA 92780
Fax: (888) 845-6185

34709020.1