UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WILSON, ET AL., <br> Plaintiffs, <br> v. <br> TESLA, INC., et al., <br> Defendants. | Case No.17-cv-03763-JSC <br><br> **ORDER RE: PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL** <br><br> Re: Dkt. No. 29 |

Plaintiffs Brian Wilson, Carrie Hughes, and Katia Segal filed this wage and hour action against their employer, Tesla, Inc. and Tesla Motors, Inc. Plaintiffs allege that Tesla misclassified them as exempt employees and failed to provide them overtime, rest and meal breaks, wage statements, and final wages. Plaintiffs' renewed unopposed motion for preliminary approval of their class action settlement agreement is now pending before the Court.[1] (Dkt. No. 29.) After reviewing the proposed settlement, with the benefit of oral argument on August 30, 2018, and the post-hearing briefing, the Court GRANTS the motion as outlined below.

## BACKGROUND

Plaintiff Brian Wilson filed this action in June 2017 asserting seven claims for relief: (1) failure to pay overtime wages in violation of the FLSA; (2) failure to pay minimum wage in violation of California Labor Code section 1194; (3) failure to pay overtime in violation of California Labor Code sections 519 & 1194; (4) failure to provide meal breaks in violation of

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 9.)

California Labor Code section 226.7 and IWC Order No. 4-2001; (5) failure to provide rest breaks in violation of California Labor Code section 226.7 and IWC Order No. 4-2001; (6) failure to provide proper wage statements in violation of California Labor Code section 226(a); and (7) unlawful business practices in violation of California Business & Professions Code section 17200 et seq. (Dkt. No. 1.) Prior to Defendant's appearance, Plaintiff amended the complaint to add Plaintiff Hughes and add a claim for failure to pay final wages in violation of California Labor Code sections 201 and 202. (Dkt. No. 10.)

The parties engaged in an early mediation in November 2017 and were able to resolve the dispute with the terms finalized in May 2018. (Dkt. No. 22-1 at ¶ 13.) On the same day Plaintiffs filed their motion for preliminary approval, they filed a second amended complaint adding Plaintiff Segal, adding a PAGA claim, and withdrawing the FLSA claim. (Dkt. No. 21.) The Court denied the motion for preliminary approval based on numerous issues with the notice and settlement. (Dkt. Nos. 24, 30.) Plaintiffs then filed a renewed motion for preliminary approval. (Dkt. No. 29.) The Court had a hearing on August 30 and raised additional concerns regarding notice and ordered Plaintiffs to file a new notice by September 13, 2018. (Dkt. No. 31.) Plaintiffs have done so and this Order follows. (Dkt. No. 32.)

**SETTLEMENT PROPOSAL**

On November 10, 2017, the parties participated in an all-day mediation with mediator Michael Dickstein. (Dkt. No. 29-1 at ¶ 13.) The terms of the parties' settlement are as follows:

**A. Payment Terms**

The parties' agreement provides a settlement fund of $1,000,000. Reduced from that fund are (1) attorney's fees up to one-third of the fund ($333,333), (2) actual litigation costs of up to $20,000, (3) an enhancement award for the named Plaintiffs of $10,000 each, (4) claims administration expenses up to $15,000, (5) a $50,000 PAGA penalty, $37,500 of which shall be paid to the California Labor & Workforce Development Agency, and the remaining $12,500 shall be included in the net distribution to the class; and (6) $14,000 for Defendant's portion of the payroll taxes.[2] (Dkt. No. 29-1 at ¶ 55.) The remaining funds are then distributed to the class

---

[2] As the Court advised the parties at the hearing, the $14,000 Defendant is retaining to cover its

2

members based on the number of workweeks worked. (*Id*. at ¶ 55(a).) Class members will have 180 days to cash their settlement checks. Any residue from the uncashed checks shall be paid by the Settlement Administrator to the California Industrial Relations Unclaimed Wages Fund in the name of the class member. No settlement funds will revert to Defendants.

### B. Proposed Class

The class is comprised of all employees of Tesla who worked in California from June 29, 2013 through the date of preliminary approval as an owner advisor, sales advisor, or another similar exempt sales position. (*Id*. at ¶ 5.) The parties estimate the class size as 253 individuals who collectively worked 13,691 weeks.

### C. Releases

The scope of the general class release is:

> Any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, know or unknown that have been, could have been, or might in the future be asserted by Plaintiffs, or the Class Members or their respective heirs, executors, administrators, beneficiaries, predecessors, successors, attorneys, assigns, agents and/or representatives arising out of any claims that were or could have been encompassed in this Action, and any facts which reasonably flow from the facts alleged in Plaintiffs' Complaints.

(*Id*. at ¶ 35.)

The named Plaintiffs have a broader release, releasing any claims under California Civil Code section 1542 as well as the above claims. (*Id*. at ¶ 36.)

### D. Procedures for Claims

Class members do not have to do anything to receive money under the settlement. They will be mailed class notice, which advises them of the settlement and their potential recovery under the settlement. (Dkt. No. 32.) The notice will also advise class members of their right to opt-out of the settlement and class members' rights to object to the settlement. (*Id*.)

---

payroll taxes cannot be claimed as part of the settlement fund. The total settlement amount is thus $986,000 and will be referred to as such throughout the remainder of this Order.

3

**E. Deadlines**

Within 30 days of preliminary approval, Defendant shall provide the settlement administrator with each class members' full name, last known address, Social Security number, and total number of workweeks. (Dkt. No. 29-1 at ¶53(a).) The settlement administrator shall then perform a search to update any address information and mail notice to all class members within 14 days. (*Id.*) The settlement administrator shall mail and email a reminder postcard 30 days later. (*Id.*) Class members do no have to do anything to receive funds under the settlement, but if they want to object to the settlement (including by disputing the workweek calculation), or request an exclusion from the settlement they must do so within 60 days of the mailing of Notice. (*Id.* at ¶ 53(b).)

## DISCUSSION

A class action settlement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). When, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). If the court temporarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified and a final "fairness" hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23. *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

### A. Conditional Certification of the Settlement Class

Class actions must meet the following requirements for certification: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to meeting the requirements of Rule 23(a), a potential class must also meet one of the conditions outlined in Rule 23(b)—of relevance here, the condition that "the court finds that

the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating the proposed class, "pertinent" matters include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Prior to certifying the class, the Court must determine that Plaintiffs have satisfied their burden to demonstrate that the proposed class satisfies each element of Rule 23.

### 1. Rule 23(a)

The Rule 23(a) factors are satisfied. First, the 253 member estimated class satisfies the numerosity requirement. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350–51 (N.D. Cal. Oct. 6, 2005) ("[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied"); *Quezada v. Con-Way Freight Inc.*, 2012 WL 4901423, at *3 (N.D. Cal. Oct. 15, 2012) (noting that generally speaking classes of more than 75 members satisfy the numerosity requirement). Second, the common questions of law and fact center around Defendant's allegedly uniform practice of misclassifying owner and sales advisors as exempt employees which allegedly deprived these employees of overtime pay and legally compliant meal and rest breaks, which satisfies the commonality requirement. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616-17 (N.D. Cal. 2014) ("divergent factual predicates with shared legal issues and a common core of salient facts coupled with disparate legal remedies within the class can be sufficient"). Third, because the at-issue policies are applied across the board, all employees are alleged to have suffered similar injuries with respect to failure to pay wages and penalties, thereby meeting the typicality requirement. *Id.* at 617 ("[t]he typicality requirement is satisfied here because Plaintiff

alleges that he, like the other class members, worked for Defendant in California during the class period and was subjected to the same wage-and-hour policies and procedures at issue in this litigation."); *see also Quezada*, 2012 WL 4901423, at *3 (typicality is satisfied when each member's claim arises from the same course of events and each member makes similar arguments to prove the defendant's liability). Finally, the named Plaintiffs and class counsel appear adequate. Named Plaintiffs were employed by Defendant during the class period and were allegedly injured in the same way as the class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594–95 (1997) ("[r]epresentatives must be part of the class and possess the same interest and suffer the same injury as the class members.") Plaintiffs' counsel specializes in employment class actions and has served as class counsel in a number of actions. *See* Dkt. Nos. 29-1 at ¶ 25; 29-2 ¶ 11. *Andrews Farms v. Calcot, LTD.*, 2010 WL 3341963, at *4 (E.D. Cal. Aug. 23, 2010) ("class counsel must be qualified, experienced, and generally able to conduct the class action litigation.").

### 2. Rule 23(b)(3)

Rule 23(b)(3) requires establishing the predominance of common questions of law or fact and the superiority of a class action relative to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). Because of the common policies at issue here the Court concludes there are no predominance or superiority concerns.

#### a) *Predominance*

Rule 23(b)(3) first requires "a predominance of common questions over individual ones" such that "the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). This "inquiry focuses on the relationship between the common and individual issues." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal citation and quotation marks omitted). In particular, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 594. "When common questions present a significant aspect of the case and can be resolved for all members of the class with a single adjudication, there is a clear justification for handling the dispute on representative

rather than on an individual basis." *Delagarza v. Tesoro Refining and Mktg. Co.*, 2011 WL 4017967, *10 (N.D. Cal. Sept. 8, 2011). The core common questions in this case—the lawfulness of Defendants' policies and practices with respect classifying owner and sales advisors, payment of overtime, and rest and meal breaks—predominate over any differences with respect to implementation of those policies and practices. As such, the Court concludes that common questions of law and fact predominate.

    b)  *Superiority*

  A class action is a superior means of adjudicating a dispute "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234. In evaluating superiority, "courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) modified, No. 05–04993 MJJ, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007), aff'd sub nom. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009). There is no indication that members of the proposed class have a strong interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered relative to the resources required to prosecute such an action. *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. June 18, 2010) (evaluating superiority under Rule 23(b)(3) and noting that "the class action is superior to maintaining individual claims for a small amount of damages"). Moreover, a class action is preferred when individuals may forgo pursuing their claims due to fear of retaliation. *See Williams v. Superior Court*, 3 Cal.5th 531, 558 (2017) (concluding fear of retaliation cuts in favor of "facilitating collective actions so that individual employees need not run the risk of individual suits"). A class action is superior to other forms of litigation in this action.

  Accordingly, the Court concludes that conditional class certification for settlement purposes is proper.

**B. Preliminary Approval of the Settlement**

  In determining whether a settlement agreement is fair, adequate, and reasonable to all

7

concerned, a court typically considers the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is" insufficient. *Id.* In these cases, courts must show not only a comprehensive analysis of the above factors, but also that the settlement did not result from collusion among the parties. *Id.* at 947. Because collusion "may not always be evident on the face of a settlement, . . . [courts] must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* In *Bluetooth*, the court identified three such signs:

> (1) when class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by the defendant (which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement); and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* The Court cannot fully assess all of these fairness factors until after the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). Instead, "the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). At this juncture,

"[p]reliminary approval of a settlement and notice to the class is appropriate if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, [4] and falls within the range of possible approval." *Cruz v. Sky Chefs, Inc.*, No. 12-02705, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp.2d 1078, 1079 (N.D. Cal. Apr. 12, 2007)).

### 1. The Fairness Factors

#### a) *The Proposed Settlement*

This first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. 08–5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta*, 243 F.R.D. at 396. Particularly with pre-certification settlements, enough information must exist for the court to assess "the strengths and weaknesses of the parties' claims and defenses, determine the appropriate membership of the class, and consider how class members will benefit from settlement" in order to determine if it is fair and adequate. *Id.* at 397 (internal quotation marks omitted).

The use of a mediator and the presence of discovery "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement." *Villegas*, 2012 WL 5878390, at *6; *Harris*, 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel"). However, the use of a neutral mediator "is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *Bluetooth*, 654 F.3d at 948.

Here, in preparation for mediation, Defendants provided Plaintiffs with discovery regarding the number of class members, its policies and procedures, timekeeping data, and payroll data. (Dkt. No. 29-1 ¶ 12.) The parties thereafter participated in an all-day mediation with an experienced mediator, and continued to work together for months after the mediation to formulate

9

1  the Settlement Agreement.  (*Id*. at ¶ 13.)   Further, Plaintiffs insist that because the majority of the
2  class members here signed arbitration agreements which contained class action waivers, the fact
3  that the settlement was reached while the Supreme Court was considering the validity of class
4  action waivers, weighs in favor of a fairness finding given the uncertainty in the law.  Indeed,
5  shortly after Plaintiffs filed their motion for preliminary approval, the Supreme Court issued their
6  decision in *Epic* overruling the Ninth Circuit's holding in *Morris v. Ernst & Young*, 834 F.3d 975
7  (9th. Cir. 2016), striking down class action waivers in arbitration agreements.  *See Epic Sys. Corp.
8  v. Lewis*, 138 S. Ct. 1612 (2018).  Thus, had the parties not settled when they did, the viability of
9  Plaintiffs' class claims would have been in question.

On balance, the settlement appears to be the product of serious, informed, non-collusive negotiations, and this factor weighs in favor of preliminary approval of the settlement.

b)      *Obvious Deficiencies*

The Court next considers "whether there are obvious deficiencies in the Settlement Agreement." *Harris*, 2011 WL 1627973, at *8.  Following the hearing and the changes identified in the revised Notice, the Court concludes there are no substantive deficiencies precluding preliminary approval.

c)      *Lack of Preferential Treatment*

Under this factor, "the Court examines whether the Settlement provides preferential treatment to any class member."  *Villegas*, 2012 WL 5878390, at *7.  Each proposed class member in this case may claim their pro rata share of the fund based on the number of workweeks worked during the class period less any applicable tax withholding for the one-third of the settlement amount classified as wages. (Dkt. No. 29-1 at ¶ 55(a).)  The settlement further provides that the named Plaintiffs will receive a $10,000 service award.  "Incentive awards [as opposed to agreements] are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  There is no evidence that named Plaintiffs and counsel agreed prior to the suit to a particular incentive agreement. Though viewed more favorably than incentive agreements, "excess incentive awards may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to

10

increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id.* at 960 (internal quotation marks and citation omitted). Incentive awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59.

The Court will determine at the final approval hearing whether Plaintiffs' request for an incentive award is reasonable. The Court notes, however, that Plaintiffs' request for a $10,000 incentive award each is higher than the amount generally awarded by courts in this district. *See, e.g., Wren v. RGIS Inventory Specialists*, No. 06– 05778, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (approving $5,000 incentive awards to 24 named plaintiffs in $27,000,000 settlement) supplemented, No. 06–05778, 2011 WL 1838562 (N.D. Cal. May 13, 2011); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement); *Hopson v. Hanesbrands, Inc.*, No. CV–08–0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217 member class from $408,420 settlement amount). The Court will defer its ruling on this issue until the final approval hearing.

d) *Range of Possible Approval*

Finally, the Court must determine whether the proposed settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at *9 (internal citation and quotation marks omitted).

Plaintiffs' counsel initially valued the claims here at between $5.6 to $4.867 million; however, in preparation for mediation, counsel valued the claims at approximately $2.1 million. (Dkt. Nos. 29-2 at 19; 29-1 ¶ 16-20.) Plaintiffs' counsel contends that proposed settlement of $986,000 is 47% of the mediation valuation, but this includes attorneys' fees, costs, and incentive awards. If those amounts are excluded, the class member share of $537,667 is 25% of the mediation valuation. According to Plaintiffs' counsel, assuming every class member participates

in the settlement, the average settlement share for the 253 class members is approximately $2,173.91 which is equivalent to 72.5 hours of work at an hourly rate of $30. (Dkt. No. 29-1 at ¶ 14.) Plaintiffs' counsel contends that this represents a significant recovery given that the majority of the class members signed mandatory arbitration agreements such that without the settlement to obtain competition for their claims, they would have to initiate individual arbitrations.

Accordingly, while $550,000 appears objectively fair and adequate, the actual value of the settlement cannot be accurately assessed until the claims process is completed. *Harris*, 2011 WL 1627973, at *14 (concluding "the parties and the Court will be in a position to accurately calculate the value of the settlement and compare it to the maximum damages recoverable" at the time of the final fairness hearing). The Court will thus defer ruling on this factor until after the fairness hearing.

### 2. Class Notice Plan

For any class certified under Rule 23(b)(3), class members must be afforded the best notice practicable under the circumstances, which includes individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (internal quotation marks omitted).

The notice requirements are met. The revised notice describes the allegations and claims, includes a definition of the class members, has contact information for Plaintiffs' counsel and the settlement administrator, a summary of the settlement amount outlining how the recovery is calculated both generally as well as for the specific class member receiving the notice, and it

indicates that class members do not need to do anything to recover under the settlement, but that they can ask to be excluded or object to the settlement including the amount sought in fees. Class members are also informed that they may appear at the final fairness hearing in person or through an attorney. Finally, the notice also informs class members that receiving an award will release Plaintiffs of all associated claims. Accordingly, the Rule 23(b)(3) notice requirements are met.

"[I]t is the obligation of the district court to ensure that the class has an adequate opportunity to review and object to its counsel's fee motion and, potentially, to conduct discovery on its objections to the fee motion if the district court, in its discretion, deems it appropriate." *In re Mercury Interactive Corp.*, 618 F.3d 988, 995 (9th Cir. 2010). There is no "bright-line rule of a time period that would meet Rule 23(h)'s requirement that the class have an adequate opportunity to oppose class counsel's fee motion." *Id.* "[A] schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair opportunity to examine and oppose the motion that Rule 23(h) contemplates." *Id.* Plaintiffs' counsel is instructed to file their motion for attorney's fees by October 25, 2018 to permit class members sufficient time to object to the motion as required by *In re Mercury*.

Finally, the notice plan itself is adequate. Within 30 days of preliminary approval Defendant will provide the settlement administrator with the class members' last known addresses and within 14 days of receipt of that information the settlement administrator will mail the notice packet to the class members. Prior to mailing notice, the settlement administrator will perform a search based on the national change of address database information to update or correct any address changes. If any notice packets are returned as undeliverable, they shall be re-mailed to the forwarding address, or if no forwarding address, the settlement administrator shall use skip-tracing to identify a valid address and re-mail notice. The settlement administrator shall also mail reminder postcards 30 days after sending notice and simultaneously email class members a reminder at their personal email addresses to be provided by Defendant.

### 3. Attorneys' Fees

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. Pro. 23(h), courts have an independent

13

obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. *See In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942 (noting that 25% of the fund is considered the "benchmark" for a reasonable fee). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result. Thus, for example, where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *Id*.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id*. at 941. The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Hanlon*, 150 F.3d at 1029.

The Ninth Circuit recommends that whatever method is used, the district court perform a cross-check using the second method to confirm the reasonableness of the fee, e.g., if the lodestar method is applied, a cross-check with the percentage-of-recovery method will reveal if the lodestar amount surpasses the 25% benchmark. *See Bluetooth*, 654 F.3d at 944–45.

Here, Plaintiffs' counsel seeks 33% of the recovery or $333,333 million. Plaintiffs' counsel insists that this amount is reasonable given that "counsel achieved an excellent and extremely fast settlement while ultimately avoiding the uncertainties and risks associated with the arbitration agreements, class action waivers, protracted litigation, contested class certification, motion for summary judgment, and trial." (Dkt. No. 29 at 32:5-7.) However, Plaintiffs fail to show that "the risks associated with this case are [ ] greater than that associated with any other

14

wage and hour action." *Clayton v. Knight Transp.*, No. 11–00735, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (rejecting plaintiff's contention that contingent nature of the case warranted an increase above the 25 percent benchmark).

Plaintiffs have thus failed to persuade the Court that attorneys' fees of 33.3 percent of the fund are appropriate; however, the Court will wait until final approval to make a determination as to fees. Along with the parties' final approval filings with the Court, Plaintiffs shall submit detailed billing records and an explanation of their counsels' hourly rate so that the Court may determine an appropriate lodestar figure. *See Bluetooth*, 654 F.3d at 944–45.

### 4. Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros,* 303 F.R.D. at 375 (citations omitted). To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses—including reasonable travel expenses—in wage-and-hour class actions. *See, e.g., id.*; *Nwabueze II,* 2014 WL at 324262, *2; *LaGarde,*2013 WL 1283325, at *13. The settlement agreement provides that Plaintiffs' counsel may obtain up to $20,000 in costs.

Plaintiffs' counsel is instructed to submit an itemized sheet summarizing its costs with its attorneys' fees motion so that the Court can determine whether these costs are reasonable litigation expenses incurred for the benefit of the class. *See Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir.1994) (noting that a prevailing plaintiff may be entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger services). However, for the purposes of preliminary approval the estimated costs are appropriate and the Court will defer final ruling on this issue.

### CONCLUSION

For the reasons stated above, the Court therefore GRANTS the motion for preliminary approval of the class action settlement as follows:

1. Alisa A. Martin of A Martin Law, and Lindsay C. David of Brennan & David Law Group are appointed as Class Counsel, and Plaintiffs Brian Wilson, Carrie Hughes,

15

and Katia Segal, are appointed as Class Representatives for settlement purposes

2. Notice shall be provided in accordance with the notice plan and this Order.

3. On or before October 25, 2018, Class Counsel shall file a motion seeking approval of attorneys' fees and costs and the proposed incentive awards.

4. Counsel shall return before this Court for a final approval hearing, at which the Court shall finally determine whether the settlement is far, reasonable, and adequate, on January 17, 2019 at 9:00 a.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California.

5. Class Counsel shall file a noticed motion for final approval of the settlement no later than 35 days before the final approval hearing.

This Order disposes of Docket No. 29.

**IT IS SO ORDERED.**

Dated: September 26, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge