Alisa A. Martin, State Bar No. 224037
**AMARTIN LAW, PC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 308-6880
Facsimile: (619) 308-6881
alisa@amartinlaw.com


Lindsay C. David, State Bar No. 283267
**BRENNAN & DAVID LAW GROUP**
2888 Loker Avenue E., Ste 302
Carlsbad, CA 92010
Telephone: (760) 730-9408
Facsimile: (760)888-3575
lcdavid@brennandavid.com

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WILSON, CARRIE HUGHES, AND KATIA SEGAL, on behalf of themselves and all others similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>TESLA, INC., a corporation dba TESLA MOTORS, INC., and TESLA MOTORS, INC., a corporation,<br><br>   Defendants. | Case No. 3:17-CV-03763-JSC<br><br>**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR RECONSIDERATION UNDER FEDERAL RULES OF CIVIL PROCEDURE 60(B)(1), (6) AND TO STAY ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: September 12, 2019<br>Time: 9:00 a.m.<br>Courtroom: Courtroom F - 15th Floor<br>Hon. Jacqueline Scott Corley |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2019 at 10:00 a.m., at the United States District Court for the Northern District of California, located in Courtroom F on the 15th Floor at the San

1

Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102 Plaintiffs move before the Honorable Jacqueline Scott Corley, for reconsidertation of the Order re: Motion for Final Approval of Class Action Settlement and Attorneys' Fees (Dkt 56) under Federal Rules of Civil Proecedure 60(B)(1), (6) and to Stay the Order re: Motion for Final Approval of Class Action Settlement and Attorneys' Fees (Dkt 56).

This motion is based on this notice and motion, the supporting memorandum of points and authorities, and the declarations of Alisa A. Martin and Lindsay C. David, all filed concurrently herewith, as well as the pleadings on file in this action, and upon such other matters, evidence, and arguments as may be presented to the Court before or at the hearing on this motion.

Dated: August 5, 2019            AMARTIN LAW, PC

By: /s/ *Alisa A. Martin*
       Alisa A. Martin


BRENNAN & DAVID LAW GROUP

By: /s/ *Lindsay David*
       Lindsay David

Attorneys for Plaintiffs and the Class

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. TIMELINE OF KEY FACUTAL AND PROCEDURAL EVENTS ........................................... 2

III. LEGAL STANDARDS ............................................................................................. 5

  A. FRCP 60(b) _____ 5

  B. FRCP 60(b)(1) – Reconsideration Based on Mistake By The Court_____ 6

  C. FRCP 60(b)(6) – Reconsideration Based on Extraordinary Circumstances _____ 7

IV. RECONSIDERATION IS WARRANTED TO PREVENT INJUSTICE .............................. 8

  A. Court Erred By Indicating That It Would Approve the Settlement, Which Would Include Fees, Costs, And Service Awards, At The Final Approval Hearing, Thereby Depriving Class Counsel of the Opportunity to Address the Court's Concerns About the Requested Amounts in Fees, Costs and Service Awards _____ 8

  B. The Court Erred By Reducing The Incentive Awards_____ 8

  C. The Court Erred By Relying On Demonstravely False Information _____ 9

  D. Court Erred By Ordering Class Counsel To File Their Billig Records Only, Yet Relied On Class Counsel's Purrported Failure to Submit A Declaration or Cover Letter Explaining The Records As A Basis For Denying The Requested Percentage of Recovery Award_____ 14

  E. Court Erred Because It Based Its Anaylsis Regarding Reasonableness of Class Counsel's Hours On An Incorrect Lodestar _____ 18

  F. The Court Erred Because Under the Cross-Check Analysis The Awarded Fees Is Grossly Unreaonable, Amounting To Merely 15% of the Common Fund _____ 20

  G. The Court Erred When Calculating The Average Cost Per Uber Ride and Determing Class Counsel Overstated Those Costs _____ 22

  H. The Court Should Stay the Enforcement of the Order Pending Resolution of this Motion 22

V. CONCLUSION ....................................................................................................22

3:17-CV-03763-JSC
Plaintiffs' Unopposed Motion for Reconsideration Under FRCP 60(b)(1), (6)

# TABLE OF AUTHORITIES

## *Cases*

*Asturias v. Nationstar Mortg. LLC*, No. 15-cv-03861-RS, 2016 U.S. Dist. LEXIS 88905, at *5-6 (N.D. Cal. July 8, 2016) _____ 7

*Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 689, 98 Cal. Rptr. 2d 263, 274-75 (2000) _____ 19

*Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 MEJ, 2010 U.S. Dist. LEXIS 112936, at *12-15 (N.D. Cal. Oct. 13, 2010) _____ 7

*Bretana v. Int'l Collection Corp.*, 2010 U.S. Dist. LEXIS 27786, 2010 WL 1221925, at *1 _____ 6

*Burden v. SelectQuote Ins. Servs.,* No. C 10-5966 LB, 2013 U.S. Dist. LEXIS 109110, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) _____ 9

*Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004)_____ 7

*Community Dental Services v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) _____ 7

*DeRienzo v. Yavapai Cty.*, No. CIV 05-3088-PCT-SMM, 2007 U.S. Dist. LEXIS 47972, at *3 (D. Ariz. June 29, 2007)_____ 6

*Fratus v. Contra Costa Cty. Bd. of Supervisors*, No. C-11-3659 JSC, 2013 U.S. Dist. LEXIS 149119, at *5_____ 6

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) _____ 10, 16

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) _____ 20

*In re Bluetooth*, 654 F.3d at 944; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) _____ 20

*In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1257-58 (C.D. Cal. 1997)_____ 21

*Jeff D. v. Kempthorne*, 365 F.3d 844, 851 (9th Cir. 2004) _____ 6

*Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006) _____ 7

*Lopez v. Bank of Am., N.A.*, No. 10-cv-01207-JST, 2015 U.S. Dist. LEXIS 114105, at *24-26 (N.D. Cal. Aug. 27, 2015) _____ 9

*Massengale v. Oklahoma Bd. of Examiners in Optometry*, 30 F.3d 1325, 1330 (10th Cir. 1994)_____ 6

*Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 U.S. Dist. LEXIS 18649, 2016 WL 613255, at *14 (N.D. Cal. Feb. 16, 2016)_____ 21

*Protrade Sports, Inc. v. Nextrade Holdings, Inc.*, No. 05-4039, 2006 U.S. Dist. LEXIS 15765, 2006 WL 708670, at *2 (N.D. Cal. Mar. 16, 2006) _____ 7

*Richards v. Aramark Services, Inc.*, 108 F.3d 925, 927 (8th Cir. 1997)_____ 6

Rule 60(b_____ 7

3:17-CV-03763-JSC
Plaintiffs' Unopposed Motion for Reconsideration Under FRCP 60(b)(1), (6)

*School Dist. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) _____ 6

*School District No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1262 (9th Cir. 1993) _____ 6

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) _____ 20

*Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) _____ 21

*Straw v. Bowen*, 866 F.2d 1167, 1172 (9th Cir. 1989) _____ 6

*TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d at 695_____ 6

*United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) _____ 7

*United States v. Bank of New York*, 14 F.3d 756, 758 (2nd Cir. 1994) _____ 6

*United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005) _____ 7

**Rules**

Federal Rule of Civil Procedure 60(b) _____ *passim*

3:17-CV-03763-JSC
Plaintiffs' Unopposed Motion for Reconsideration Under FRCP 60(b)(1), (6)

## I.    INTRODUCTION

Plaintiffs Brian Wilson, Carrie Hughes, and Katia Segal seek to reopen judgment under a motion for relief from judgment and reconsideration under Federal Rule of Civil Procedure 60(b)(1), (6) of the Court's Order Re: Motion for Final Approval of Class Action Settlement and Attorneys' Fees. (Dkt. 56). In review, Plaintiffs filed this wage and hour action against their employer, Tesla, Inc. and Tesla Motors, Inc. (collectively "Tesla"), alleging that Tesla misclassified them as exempt employees and failed to provide them overtime, rest and meal breaks, wage statements, and final wages. Plaintiffs filed a motion for attorneys' fees, costs, and service awards, (Dkt. 47), which was heard concurrently with their motion for final approval of class action settlement. (Dkt. 47, 51, 52, and 62). The requested relief is warranted because the Court made substantive errors – both factual and legal – in its Order, and because exceptional circumstances otherwise exists. First, the Court mistakenly relied on purported facts that are demonstratively untrue. Second, the Court mistakenly applied the wrong legal standard when evaluating of appropriateness of the requested fees and mistakenly cited to cases that lack relevance or easily distinguishable. And third, the Court stated that it would approve the settlement after two specific and limited matters were addressed, yet denied the requested service awards, fees and costs, based on matters that were not raised by the Court at the hearing. This deprived Class Counsel of their ability to be heard on those matters.

**First**, the Court erred by telling Class Counsel at the final approval hearing that it was going to approve the settlement, which includes the request for service awards, attorneys' fees, and costs thereby depriving Class Counsel of the opportunity to argue or otherwise address any issues the Court had with the requested relief. Dkt 62; David Decl. Ex. 1. The Court specifically stated at the outset of the hearing that it was prepared to approve the settlement but wanted (1) Tesla to provide notice under CAFA and (2) Counsel to provide full billing records. The Court did not make any mention of reducing the incentive awards, attorneys' fees, or costs and noted several times that the settlement was fair and adequate. Nor did the Court indicate it was taking the matter under submission. Dkt 62; David Decl. Ex. 1.

**Second,** the Court erred when it indicated that it was going to approve the settlement but wanted the underlying billing records to be on file underseal and specifically told Class Counsel to not file anything else with the records, yet, as a basis for deviating below the requested 24% of the common

fund, chastised Class Counsel for not submitting a declaration or brief explaining why the billing records contained more hours than those presented to the Court in the attorneys' fee motion. Dkt 62; David Decl. Ex. 1.

**Third**, the Court erred in its analysis on the reasonableness of Class Counsel's work hours because it based its analysis on a lodestar amount that Class Counsel never submitted to the Court for consideration. Dkt 47. Class Counsel presented a lodestar to the Court based on 300 hours of work, as reflected in its billing chart, broken down in categories of work performed in this case. (Dkt 47) Class Counsel reviewed their underlining billing records when they constructed their billing chart and exercised their right to reduce their hours because of redundancy, excess hours, and work that was not ultimately filed. David Decl. ¶ 7. This is precisely what was recommended in the case relied on the Court in it Order for Final Approval. Class Counsel never asked to Court to consider a higher lodestar based on their underlining billing entries, which shows hours totaling 433.4. David Decl. ¶ 8. The Court erred because its analysis focused on a lodestar based on 433.4 hours, when Class Counsel only presented a lodestar based on 300 hours. (Dkt 56).

**Fourth**, the Court erred by reducing the costs of Class Counsels' taxi rides to and from the Court. Although the Court indicated that the $80 per trip was too high, the Court incorrectly concluded that Class Counsel shared transportation. While Class Counsel was able to share an Uber for the final approval hearing, they took different flights to the preliminary approval hearings and were thus unable to share a transportation. David Decl. ¶ 10. As such, the parties expenses were in line with the Court's expectation of what a reasonable cost of the trip was, i.e. $40. Dkt 56.

## II. TIMELINE OF KEY FACUTAL AND PROCEDURAL EVENTS

Plaintiffs seek reconsideration based on the following timeline, supported by the Declarations of Lindsay C. David and Alisa A. Martin:

- On **September 26, 2018**, the Court preliminarily approved the class action settlement. As for attorneys' fees and costs, in the preliminary approval order, the Court directed Class Counsel to submit their billing records to justify an award of 33% of the recovery: (Dkt. No. 33 at 14-15)

> Here, Plaintiffs' counsel seeks 33% of the recovery or $333,333 million [sic]. Plaintiffs' counsel insists that this amount is reasonable given that "counsel achieved an excellent and extremely fast settlement while

ultimately avoiding the uncertainties and risks associated with the arbitration agreements, class action waivers, protracted litigation, contested class certification, motion for summary judgment, and trial." (Dkt. No. 29 at 32:5-7.) However, Plaintiffs fail to show that "the risks associated with this case are [ ] greater than that associated with any other wage and hour action." *Clayton v. Knight Transp.*, No. 11–00735, 2013 WL 5877213, at \*8 (E.D. Cal. Oct. 30, 2013) (rejecting plaintiff's contention that contingent nature of the case warranted an increase above the 25 percent benchmark).

Plaintiffs have thus failed to persuade the Court that attorneys' fees of 33.3 percent of the fund are appropriate; however, **the Court will wait until final approval to make a determination as to fees.** Along with the parties' final approval filings with the Court, Plaintiffs shall submit detailed billing records and an explanation of their counsels' hourly rate so that the Court may determine an appropriate lodestar figure. *See Bluetooth*, 654 F.3d at 944–45.

As for the service awards, the Court indicated that although it was higher than the amount generally awarded, the Court would wait until the final approval hearing to determine whether the request is reasonable.

> **The Court will determine at the final approval hearing whether Plaintiffs' request for an incentive award is reasonable.** The Court notes, however, that Plaintiffs' request for a $10,000 incentive award each is higher than the amount generally awarded by courts in this district. *See, e.g., Wren v. RGIS Inventory Specialists*, No. 06– 05778, 2011 WL 1230826, at \*37 (N.D. Cal. Apr. 1, 2011) (approving $5,000 incentive awards to 24 named plaintiffs in $27,000,000 settlement) supplemented, No. 06–05778, 2011 WL 1838562 (N.D. Cal. May 13, 2011); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement); *Hopson v. Hanesbrands, Inc.*, No. CV–08–0844, 2009 WL 928133, at \*10 (N.D. Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217 member class from $408,420 settlement amount). The Court will defer its ruling on this issue until the final approval hearing. (Dkt 33 at 10:6-16).

• On **November 1, 2018** and **December 5, 2018**, the Northern District updated its Procedural Guidance for Class Action Settlements, dated November 1, 2018 and December 5, 2018, which provides:

> 2) ATTORNEYS' FEES—All requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund. ***Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are***

3

*adequately detailed.* Counsel should be prepared to submit copies of billing records themselves at the court's order.

- On **December 26, 2018**, the Court entered the parties' stipulation and propsed order that modified the preliminarily approved settlement by, among other things, increasing the settlement amount to $1,026,755 and scheduling the hearing for the motions for attorneys' fees, costs, and service awards and for final approval. (Dkt 43, 44)

- On **January 11, 2019**, Class Counsel filed its motion for attorney's fees, costs, and service awards. The motion was set to be heard at the final approval hearing. In its Order Granting Preliminary Approval, the Court requested detailed billing records in connection with seeking 33%, as agreed to via the settlement agreement and preliminarily approved by the Court. Because Class Counsel only sought the benchmark 25% in their Motion for Attorney's Fees, they submitted a chart outlining time spent in the case in compliance with the Procedural Guidance for Class Action Settlements, dated November 1, 2018 and December 5, 2018, which was updated after the initial preliminary approval order. Class Counsel's chart, a copy of which is attached to David Declaration Ex. 2, complied with that guideline. (Dkt 47).

- On **March 21, 2019**, based on Class Counsel's efforts to pursue issues that resulted in the escalator clause raising the gross settlement amount for second time in this case, Class Counsel sought final approval of the class settlement wherein Tesla was required to increase its payout amount to $1,059,851.40. (Dkt 51). Class Counsel did not increase its fees accordingly. As such, Class Counsel ultimately sought less than the 25% benchmark in fees ($256,689/$1,059,851.40 = 24%).

- On **April 4, 2019**, the Court held the Final Approval Hearing. At the hearing, the Court stated that it would approve the settlement, which would include the requested fees, costs, and service awards. The Court indicated at the hearing that wanted "the actial billing records themselves" filed so the Court could approve the fees. (David Decl. Ex. 1 P 3 L16-20; Dkt 62). The hearing itself was only 3 minutes long. At the hearing, the Court indicated it would approve the settlement but wanted (1) Tesla to send notice under CAFA and (2) Class Counsel to file their full billing records. David Decl. Ex. 1 P 2-3

- On **April 8, 2019**, the Court entered a Minute Order. The Minute Order mistakenly shows that the Court did not address the Motion for Attorneys' Fees at the Final Approval Hearing (Dkt 52). That motion was noticed to be heard at the Final Approval Hearing, as reflected on the motion itself (Dkt

4

47, 62; David Decl. Ex. 1). The Motion for Attorneys' Fees was briefly discussed at the hearing when the Court asked Class Counsel to submit their billing records only under seal, and without additional briefing or a continued hearing, for the Court file as reflected in the hearing transcript (Dkt 62; David Decl. Ex. 1) and the final approval order itself. (Dkt 56 P 18 L 11). The Court never indicated that it wanted a final statement but rather emphasized she wanted the unredacted billing records. *Id.* .

- On **April 18, 2019**, as per the Court's verbal order, Class Counsel filed their billing records recorded by the billing software Mycase under seal. (Dkt 54). Class Counsel's billing records were the records indicating the total time expended in the case. David Decl. ¶ 7. Class Counsel's billing records did not perfectly match with the attorneys' fee chart. The reason for this is because while putting the fee chart together in the Motion for Attorney Fees, Class Counsel reduced the number of hours expended for various projects and removed motions that were not ultimately filed (such as the motion to enforce the settlement agreement). In submitting the billing records, Class Counsel was not seeking to increase their lodestar. Rather, in filing the Motion for Attorney's Fees – which was filed months before the billing records – Class Counsel actually reduced their base lodestar, from $247,931.85 to $160,895. They also reduced the amount they requested in fees. Under the settlement, they could have requested up to 33% of the total settlement amount, which was initially $333,333 and then increased to $352,930.52 due to the escalator clause. Instead, Class Counsel requested less than 25% of the total settlement amount, which was $256,689. Dkt. 47.

- On **July 8, 2019**, the Court issued a final approval order. (Dkt 56). The Court reduced Class Counsel's requested fees based on a lodestar that Class Counsel never presented to the Court for approval. (Dkt 47). The Court further reduced the requested costs and service awards despite telling Class Counsel at the hearing that the Court was going to approve the settlement. (Dkt 62; David Decl. Ex. 1). Because Class Counsel was told the settlement would be approved, Class Counsel did not provide argument about the appropriateness of its requested fees, costs, and service awards. David Decl. ¶ 13.

## III. LEGAL STANDARDS

### A. FRCP 60(b)

Rule 60(b) provides for reconsideration where a party shows: (1) mistake, inadvertence, surprise or excusable neglect;… or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b); *School Dist. 1J v.*

*ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "Rule 60(b) [ ] provides a mechanism for parties to seek relief from a judgment when 'it is no longer equitable that the judgment should have prospective application,' or when there is any other reason justifying relief from judgment." *Jeff D. v. Kempthorne*, 365 F.3d 844, 851 (9th Cir. 2004) (quoting Fed. R. Civ. P. 60(b)). *Fratus v. Contra Costa Cty. Bd. of Supervisors*, No. C-11-3659 JSC, 2013 U.S. Dist. LEXIS 149119, at *5 (N.D. Cal. Oct. 16, 2013). The moving party bears the burden of demonstrating Rule 60(b)'s applicability. *TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d at 695. According to Ninth Circuit authority, reconsideration under FRCP 60 is generally appropriate in three instances: (1) when there has been an intervening change of controlling law; (2) when new evidence has come to light; or (3) when necessary to correct a clear error or prevent manifest injustice. *School District No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1262 (9th Cir. 1993). *DeRienzo v. Yavapai Cty.*, No. CIV 05-3088-PCT-SMM, 2007 U.S. Dist. LEXIS 47972, at *3 (D. Ariz. June 29, 2007). Here, Rule 60(b)(1) and (6) are applicable.

### B.     FRCP 60(b)(1) – Reconsideration Based on Mistake By The Court

Rule 60(b)(1) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect. . . ." Fed. R. Civ. P. 60(b)(1). With respect to "mistake," a Rule 60(b)(1) motion "may seek relief . . . if the district court has made a substantive error of law or fact in its judgment or order." *Bretana v. Int'l Collection Corp.*, 2010 U.S. Dist. LEXIS 27786, 2010 WL 1221925, at *1 (N.D. Cal. 2010) (citing *Utah ex. Rel. Div. of Forestry v. United States*, 528 F.3d 712, 722-23 (10th Cir. 2008) ("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the judge has made a substantive mistake of law or fact in the final judgment or order.")). Rule 60(b) relief may be granted "only upon an adequate showing of exceptional circumstances." *Richards v. Aramark Services, Inc.*, 108 F.3d 925, 927 (8th Cir. 1997) (citations omitted); *Massengale v. Oklahoma Bd. of Examiners in Optometry*, 30 F.3d 1325, 1330 (10th Cir. 1994); *United States v. Bank of New York*, 14 F.3d 756, 758 (2nd Cir. 1994).

In a motion based on a Rule 60(b)(1) by the court, the "plaintiff must show that the district court committed a specific error." *Straw v. Bowen*, 866 F.2d 1167, 1172 (9th Cir. 1989) (citing *Thompson v. Housing Authority of the City of Los Angeles*, 782 F.2d 829, 832 (9th Cir. 1986)). To satisfy this

standard, "a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Protrade Sports, Inc. v. Nextrade Holdings, Inc.*, No. 05-4039, 2006 U.S. Dist. LEXIS 15765, 2006 WL 708670, at *2 (N.D. Cal. Mar. 16, 2006) (citation omitted). "'Mere disagreement with the Court's interpretation of the evidence and its opinions' does not warrant reconsideration under Rule 60(b)." *Spieler v. Mt. Diablo Unified Sch. Dist.*, No. 98-0951, 2007 U.S. Dist. LEXIS 47534, at *8 (N.D. Cal. June 20, 2007) (quoting *United States v. Comprehensive Drug Testing, Inc.*, 473 F.3d 915, 958 (9th Cir. 2006)); *see also Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) (affirming denial of Rule 60(b) motion because the moving party "merely restated its argument" that it had previously raised). The disposition of a Rule 60(b) motion for relief from judgment is within the sound discretion of the district court. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004); *Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 MEJ, 2010 U.S. Dist. LEXIS 112936, at *12-15 (N.D. Cal. Oct. 13, 2010).

## C.     FRCP 60(b)(6) – Reconsideration Based on Extraordinary Circumstances

"Extraordinary circumstances" justify relief under Rule 60(b)(6). *See United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). Rule 60(b)(6) provides that "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . any other reason justifying relief from the operation of the judgment." Relief from the judgment is appropriate only when it is necessary "to prevent manifest injustice." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006).  Judgments are not often set aside under Rule 60(b)(6). Rather, the Rule is " 'used sparingly as an equitable remedy to prevent manifest injustice' and 'is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.'" *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)). Accordingly, parties moving for relief from a judgment must show both "injury and circumstances," beyond their control, that prevented them from taking "timely action to prevent or correct an erroneous judgment." *Asturias v. Nationstar Mortg. LLC*, No. 15-cv-03861-RS, 2016 U.S. Dist. LEXIS 88905, at *5-6 (N.D. Cal. July 8, 2016); *Community Dental Services v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002); *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1102-03 (9th Cir. 2006).

## IV.   RECONSIDERATION IS WARRANTED TO PREVENT INJUSTICE

### A.   Court Erred By Indicating That It Would Approve the Settlement, Which Would Include Fees, Costs, And Service Awards, At The Final Approval Hearing, Thereby Depriving Class Counsel of the Opportunity to Address the Court's Concerns About the Requested Amounts in Fees, Costs and Service Awards

At the Final Approval Hearing the Court indicated it was going to approve the Settlemetn as fair and reasonable after two issues were addressed: (1) Tesla was to provide notice of the Settlement to the relevant government authorities under CAFA and (2) Class Counsel was to submit detailed billing records.  (.David Decl. Ex 1, P 1 L 15-22, P 3 L 16-20). Class Counsel reasonably and fairly concluded that the Court believed that the amount in incentive awards and costs were fair and reasonable and that the requested fees amounting to 24% of the total recovery was fair and reasonable as well provided that the lodestar was supported by the underlying billing records.  Because the Court made no indication other than the Settlement was being approved, Class Counsel was deprived of their ability to address any concerns that the Court had but did not disclose at the final approcal hearing,

As for the incentive awards, the Court's Preliminary Approval Order specifically noted that although the incentive awards were higher than those typically awarded in the Northern District but it would preliminarily approve the settlement and wait until the final approval hearing to make a determination (Dkt 33 P. 11, L 6, 16).  At the Final Approval Hearing, the Court did not express any concerns regarding the incentive awards or attorney's fees and costs.  David Decl. Ex. 1.  As for the fees, the Court only inquired as to the full billing records as addressed above.  Dkt 47.  Class Counsel's fee request ultimately ended up amounting to merely 24% of the total recover because the escalator clause was triggered for a second time before the the final approval hearing.  Dkt 51.  Because the Court indicated that everything was going to be approved, Class Counsel did not provide any argument or clarification.  Had Class Counsel known the Court had any concerns about the request amount in fees or anything else not pertaining to the billing records themselves, they would have addressed them.

### B.   The Court Erred By Reducing The Incentive Awards

The Court reduced the proposed incentive awards from $10,000 to $5,000.  However, at the Final Approval Order the Court indicated that it was ready to approve eaverything but led Counsel to believe had two housekeeping issues prior to issuing an order, none of which pertained to the incentive awards.

David Decl. ¶ 11.

Moreover, the Court's reasoning is not in line with the cases the Court relied on.  The Court first noted that under *Lopez v. Bank of Am., N.A.*, No. 10-cv-01207-JST, 2015 U.S. Dist. LEXIS 114105, at *24-26 (N.D. Cal. Aug. 27, 2015) the award was disproportionate to the amount each class member recovered.  However, in *Lopez*, under the proposed settlement, the named plaintiffs were to receive $10,000, which was 50 times more than the average class members' recovery.  Although the court ultimately reduced the incentive award, the final number was still he Court ultimately awarded $5,000 which was over 25 greater than the incentive award.  Further, the cases the *Lopez* court relied on awarded incentive awards drastically exceeding the proportion proposed under the settlement.  In *Burden v. SelectQuote Ins. Servs.,* No. C 10-5966 LB, 2013 U.S. Dist. LEXIS 109110, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) although the court reduced the incentive award because the incentive award was nearly three times the largest amount paid to any class members, the Court ultimately awarded an amount that was 1.5 times the largest amount paid to any class member.  Here, the highest gross payment is $9,497.80 and the proposed incentive award was $10,000.  Dkt. 51-4 ¶ 16.  This is in line with the proportions in the cases relied on by the Court.

The Court also addressed the publicity this case received.  In it Final Approval Order, the Court indicated that the publcicity in this case was not greater than the other cases so as to justify deviating from the standard $5,000 incentive award.  Dkt 56 P 27 L 3-8.  However, the Court noted that even now when it googles the named plaintiffs, an article regarding this case is present.  Dkt 56.  Thus, when any potential employer googles the names of the plaintiffs, they see the article.  Moreover, throughout the pendency of this case, numerous articles were written, and a reporter was even present at several of the hearings.  David Decl. 12.  This had a negative impact on the named plaintiffs because all of the plaintiffs were looking for new employment throughout the course of this case.  David Decl. 12.

**C.** **The Court Erred By Relying On Demonstravely False Information**

When the Final Approval Order was issued, the Court reduced the incentive awards from $10,000 to $5,000 and reduced Class Counsel's fee request from 24% of the common fund to 15%.  However, many of the Court's concerns cited in the Final Approval Order were based on demonstrively false informatoin:

*First*, although the Court did not note any issues with Class Counsel's final lodestar as presented in their motion for attorney's fees, it's final order outlined issues with the full billing records. However, all of the issues addressed by the Court, were already reduced by Class Counsel in their final lodestar as presented in their motion for attorney's fees. The Court cited to *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) indicating that "Counsel must exercise sound billing judgment as to the number of hours worked, eliminating excessive, redundant, or unnecessary hours, and provide billing records supporting the time claimed. Dkt. 56, P 20 L 12-15 quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (internal quotation makes omitted). However, that it exactly what Class Counsel did. The chart was prepared from the full billing records. In their Motion for Attorney's Fees, Class Counsel drastically reduced their lodestar to shave time that seemed excessive or was spent preparing motions that were not ultimately filed. David Decl. ¶ 7. For example, The Court took issue with the amount of travel time billed in the full billing records (Dkt 56, P 21 L 13-24). This was because Class Counsel had to travel from San Diego from San Francisco. David Decl. ¶ 7. But this is immaterial because Class Counsel *reduced* this time in its Motion for Attorney Fees. David Decl. ¶ 7. As another example, Class Counsel prepared a motion to enforce the settlement agreement. This motion, however, was not filed because the parties were able to reach an agreement. David Decl. ¶ 7. While this time is included in the full billing records, it is not included in Class Counsel's lodestar request. Moreover, none of the reasons cited by the Court in limiting Counsel's attorneys' fees were in the final lodestar presented to the Court. Thus, the Court based its analysis of Plaintiff's fees on hours already reduced by Class Counsel.

*Second*, although the Court indicated that Class Counsel should have filed leave explaining the difference, it did not grant Class Counsel leave to do so. Moreover, it is common for full billing records to be greater than a final invoice. And although the Court indicated this to be the case as well, it appears the Court misinterpreted the billing records as an effort to increase the lodestar, which it was not as indicated by the fact that Class Counsel never moved the Court for anything outside what was requested in their initital Motion for Attorney Fees.

*Third*, the Court indicated that Counsel failed to comply with the Preliminary Order in several regards. However, this is not true. Tesla failed to comply with the Court's Order by failing to produce

all of the data required under the Settlement Agreement.[1]  Class Counsel took steps to ensure that Tesla complied with the Order and, when Tesla failed to do so, Class Counsel took steps to ensure Class Members were protected.[2]  Further, Class Counsel kept the Court abreast of this through the filing of three separate status statements and two status conferences.  Dkt 37, 39, 42, 49, and 50.

- o *Tesla's First Extension*.  On or around October 26, 2018, Tesla's attorney prepared and filed a joint stipulation extending Tesla's time to prduce the class data froms October 26, 2018 to November 2, 2018. The Court granted the parties' request. (Dkt. No. 35).
- o *Tesla's Second Delay Resulting From Undisclosed Change in Business Practices Materially Affecting the Settlement*.  On November 5, 2018, Tesla produced the class members' data to the claims administrator but only included workweeks through January 29, 2018.  Class Counsel immediately reached out to Tesla's counsel to meet and confer in an effort to resolve the issue.  Class Counsel also immediately began doing research, including meeting with current employees regarding the issue.  The parties ultimately resolved the issue via a modification to the settlement (1) increasing the class settlement amount because the escalator clause was triggers and (2) modifying the release so that only claims prior to Janaury 29, 2018 were released.
- o *Tesla's Data Discrepance*.  Once notice was distributed, the workweeks were understated for several Class Members and overstated for several other Class Members, whjch Class Counsel appropriately addressed and brought to the Court's attention by requesting a status conference. (48-50)

**Fourth**, the Court's Order indicates the website was not available to the Class for the notice period.  Dkt 56, P 21, L3.  This is untrue.  The website was published and available to the Class for the entire notice period.  David Decl. ¶ 15.

**Fifth**, Class Counsel reformatted the class notice after the Court indicated it was deviating from the Northern District Local Rules at the first preliminary approval hearing.  For example, although at the

---

[1] For a complete reiteration of the underlying events, please see the paties' status conference statements (Dkt 37, 39, 42, 48-50).

3:17-CV-03763-JSC
Plaintiffs' Unopposed Motion for Reconsideration Under FRCP 60(b)(1), (6)

time of filing the Northern District wanted language to be included in the notice which informed Class Members that they could access the case file at the Courthouse, the Court noted that this was not the case and Class Members should not be required to do this work. Dkt 26. Thus, Class Counsel prepared a more in-depth notice. Further, in the Court's final approval order, the Court indicated it had additional concerns about the class notice itself but this was based largely around the fact that the settlement agreement included the payment of Tesla's share of the payroll taxes. Dkt 30. Because this issue was not raised at the first hearing, Class Counsel did not address it in the revised notice. Dkt 26. The other issues were largely minor grammatical preference issues:

- o Revise "the sum of up to $353,333.33 as attorneys' fees and costs" to "$333,333.33 as attorneys' fees and $20,000 in costs…"
- o "Released Parties Means" to " Released Parties:"
- o Adding a "the" before Information Sheet
- o Revised the Mathmatical illustration because although the introduction areferenced 10,000 total workweeks and the total was correct, the fraction shown was missing a zero. (Compare Dkt 29 and Dkt 32).

*Sixth*, at the first preliminary approval hearing, the Court denied the motion addressing the following concerns:

- o *Notice*. The Court was concerned about the proposed class notice because the notice (1) contained an inadvertent reference to a claim form, (2) did not offer class members a practical method to obtain copies of the complaint, settlement agreement, motions, and other relevant documents, (3) did not identify a website that provides information about the settlement, (4) did not clearly indicate that class members could contact Proposed Counsel via email, (5) did not clearly explain the circumstances under which class members would receive compensation because the notice implied in one section that if class members did nothing, they would receive compensation, but in another section indicated that compensation was contingent upon the Court finally approving the settlement, and (6) did not specify how class members could obtain a copy of the

anticipated attorney fee motion and did not indicate that the attorney's fee motion would be available to the class before the deadline to object to the settlement.

- o *Damage Calculations*. The Court wanted additional information about how the potential claims were valued. Although Class Counsel addressed this request by slightly elaborating on the steps taken and information used to value the claims, the first preliminary approval motion contained identical information. (Dkt 22 Section 4; Dkt 29 Section 4).

- o *Arbitration Agreement Analysis*. The Court wanted Tesla to provide the breaksdown between Class Members whose Arbitrations Agreements contained class waivers and those that did not and an analysis as to whether they were enforceable.

- o *Email Addresses*. The Court wanted Tesla to confirm they had email addresses for Class Members.

- o *PAGA*. The Court was concerned that the parties added PAGA after the settlement was reached but in fact, Class Counsel maikled notice to the Labor and Workforce Development Agency ("LWDA") notice of the alleged PAGA violations on June 29, 2017 – the same day the initial complaint was filed. Dkt 19, P 1, L 11-12.

- o *Speed of Settlement*. The Court expressed concern over the speed the settlement was reached.

- o *Amount of Incentive Award*. The Court indicated the proposed incentive awards were higher than the amount typically awarded.

**Seventh**, the Court indicated in the final approval order that the modification to the settlement agreement took place in response to the denied motion for preliminary approval. This is inaccurate. The modification took place *after* the parties' settlement was preliminarily approved and was in response to issues that arose during the notice process as outlined above. Dkt 56, P 21, L 7-12.

**D.** **Court Erred By Ordering Class Counsel To File Their Billig Records Only, Yet Relied On Class Counsel's Purrported Failure to Submit A Declaration or Cover Letter Explaining The Records As A Basis For Denying The Requested Percentage of Recovery Award**

The final approval order stated that Class Counsel ignored the Court's order to submit billing records with the motioin for attorneys' fees, which required the Court to again order Class Counsel's to produce those records (Dkt 56 at 6:12-18):

> Plaintiffs request fees of $256,689, which amounts to 25% of the common fund. (Dkt. No. 47-1.) The Martin Declaration submitted with the motion for attorneys' fees included a chart which provided general billing categories and hours and calculated Plaintiffs' lodestar fees as $160,895 based on 300 hours of work. (Dkt. No. 47-3 at ¶ 13.) Because the Court had previously ordered counsel to submit detailed billing records with the motion for attorneys' fees (Dkt. No. 33 at 15), at the final approval hearing the Court again ordered Plaintiffs to submit detailed billing records in support of their request for fees. (Dkt. No. 52.)

Yet Class Counsel explained to the Court at the hearing why it did not initially submitted its underlining billing records: (1) the preliminary approval order only required the submission of billing records if Class Counsel intended to seek fees in an amount exceeding the 25% benchmark, (Dkt 33, P 15, L 4-8); and (2) because Class Counsel was no longer seeking an amount exceeding the 25% benchmark, Class Counsel submitted a billing chart in compliance with the Northen District's Procedural Guidance for Class Action Settlements that requires: "Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed." The Court stated that it understood Class Counsel's position but nonetheless wanted the billing records. David Decl. Ex. 1. The final approval order, however, reflected something completely different.

**First**, the Order indicated that Class Counsel deliberately ignored the Court's initial order to produce the records, citing to Docket 52 to support its position that "at the final approval hearing the Court again ordered Plaintiffs to submit detailed billing records in support of their request for fees. (Dkt. No. 52.)." But Docket 52 does not specifically address the Court's order. In fact, the Docket 52 indicates that only the final approval motion (Dkt 51), and not the atttorneys' fee motion (Dkt 47) – was addressed at the hearing:

14

3:17-CV-03763-JSC
Plaintiffs' Unopposed Motion for Reconsideration Under FRCP 60(b)(1), (6)

**Notice of Electronic Filing**

The following transaction was entered on 4/8/2019 at 10:55 AM and filed on 4/4/2019
**Case Name:**          Wilson v. Tesla, Inc.
**Case Number:**     3:17-cv-03763-JSC
**Filer:**
**Document Number:** 52(No document attached)

**Docket Text:**
**Minute Entry for proceedings held before Magistrate Judge Jacqueline Scott Corley: Motion Hearing held on 4/4/2019 re [51] MOTION Final Approval of Class Action Settlement filed by Katia Segal, Carrie Hughes, Brian Wilson. The Court will issue an order. (FTR Time: 2:36-2:40.)**

**Attorneys for Plaintiffs: Alisa Martin; Lindsay David.**
**Attorney for Defendant: Jack Sholkoff.**

**(This is a text-only entry generated by the court. There is no document associated with this entry.)**

**(ahm, COURT STAFF) (Date Filed: 4/4/2019)**

That entry is inaccurate.[3] The motion for attorneys' fees, costs and service awards was addressed at the final approval hearing, as reflected in the hearing transcript (Dkt 62; David Decl. Ex. 1) and final approval order. (Dkt 56). The FTR shows that the Court asked for the billing records only to complete the file while stating that the settlement was going to be approved. David Decl. Ex. 1. Those statements deprived Class Counsel of the opportunity to address any concerns the Court had with its lodestar or questions about the billing records. In fact, Class Counsel did not anticipate that there would be any issues because the Court said it was going to approve the settlement, which meant the Court found its cross-check lodestar based on 300 hours of work reasonable.

**Second**, despite the Court directing Class Counsel to submit its billing records <u>only</u>, the Order admonished Class Counsel for failing to submit a declaration or cover letter with the records to explain the "discrepancy" between the chart submitted with the attorney fee motion and the billing records

---

[3] The FTR further shows that the Court said that its minute order wouould reflect that Class Counsel had leave to file its billing records under seal. (Dkt 62; David Decl. Ex. 1). But the Minute Order did not reference the Court giving Class Counsel leave to file the billing records or that the attorneys' fee motion was even addressed. As a result, Class Counsel had to contact the clerk twice to get guidance on how the Court wanted Class Counsel to submitted the billing records since, without on order, Class Counsel cannot file anything under seal without bringing a motion. (David Decl. ¶ 5).

3:17-CV-03763-JSC
Plaintiffs' Unopposed Motion for Reconsideration Under FRCP 60(b)(1), (6)

submitted after the final approval hearing and then used the unexplained "discrepancy" as a reason to not award Class Counsel 24% of the common fund:

> In response, Plaintiffs filed an administrative motion to seal a document from the Brennan & David Law Group entitled "Time Entries." (Dkt. No. 54-1.) The Time Entries document is a nine-page chart which lists billing entries in chronological order from June 27, 2017 through December 21, 2019 and identifies the total fees incurred as $231,889.25 based on 433.4 hours of work. (*Id*.) Plaintiffs provide no explanation for the discrepancy between the lodestar amount sworn to in the Martin Declaration ($160,895 based on 300 hours of work) (Dkt. No. 47-3 at ¶ 13) and the lodestar reflected on later-submitted "Time Entries" ($70,994.25 more in fees based on 133 more hours) (Dkt. No. 54-1.) **No declaration or cover letter accompanied the detailed billing records.**
>
> **Given Plaintiffs' failure to explain the discrepancy between the two documents which purport to identify Plaintiffs' lodestar, the Court declines use latter document as representative of Plaintiffs' lodestar.** The initial lodestar figure at least was contained in counsel's declaration and submitted under penalty of perjury. The discrepancy with respect to Plaintiffs' lodestar and billing records is just the latest example of Plaintiffs' counsel's carelessness in the presentation of the settlement to the Court. (*See, e.g.,* Dkt. Nos. 30, 32.) **Given the Court's concerns, the Court finds that the lodestar method, rather than the percentage of the fee method, is the most appropriate method of calculating attorneys' fees in this particular case**. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("the lodestar method yields a fee that is presumptively [reasonable]."). (Dkt 56 P 18, L 22- P 19 L 4).

Court specifically directed Class Counsel to submit the records only and thus should not refuse to use the percentage of fee method based on the fact that Class Counsel complied with the Court's direction.

**Third**, Class Counsel thought the reason as to why they presented less hours to the Court in its attorneys' fee motion than reflected on their time tracking system was obvious. The "discrepancy" was not nefarious or the result of "carelessness." To the contrary, when Class Counsel submitted their lodestar as 300 hours when their billing records show that they spent an additional 133.4 hours, the only logical conclusion is that Class Counsel exercised sound billing judgment as to the number of hours worked by eliminating excessive, redundant or unnecessary hours when they presented their hours chart in their attorneys' fee motion. Indeed, as indicated in the final approval order: "Beyond establishing a reasonable hourly rate, a party seeking attorneys" fees bears the burden to "document[ ] the appropriate hours expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Counsel must exercise sound "billing judgment" as to the number of hours worked, eliminating excessive, redundant, or unnecessary hours,

and provide billing records supporting the time claimed. *Id.* at 433-34." (Dkt 56, P 20, L 11-15). Class Counsel did just that by reducing their hours when preparing their billing chart that they presented to the Court in their attorneys' fee motion.

Plus, when Class Counsel chooses to reduce their hours, they do not go back into their time management system and remove hours from the sytem. They just present less hours when preparing invoices for clients and/or billing charts for courts. Unlike class action defense attorneys who track hours for the purpose of billing clients for service rendered, class action attorneys typically represent their clients on a contingency basis and track hours for the purpose of later justifying to a court the work that was rendered in the case for fee awards. Class Counsel reviewed its billing entries when they prepared their billing chart. Class Counsel presented only 300 hours on its chart, as opposed to the full 433.4. Class Counsel was not trying to hide anything from the Court. They merely did not believe the Court still wanted the underlining records when they prepared their fee motion because they were only seeking 24% of the common fund and thus prepared a chart in compliance with the Northern District's Procedural Guidelines. Dkt 47.

**Fourth**, The FTR shows that Class Counsel never sought to supplement their motion by adding additional time to their lodestar despite the Order stating, "given Plaintiffs' failure to explain the discrepancy between the two documents which purport to identify Plaintiffs' lodestar, the Court declines use [sic] latter document as representative of Plaintiffs' lodestar." (Dkt 56 at 18:22-24). The Order further states:

> Although Plaintiffs supplemented their motion with the "Time Entries" chart, the chart does not match up with Plaintiffs' motion for attorneys' fees and instead, seeks an additional $70,000 in attorneys' fees without explanation. While the Court declines to increase Plaintiffs' request for attorneys' fees using this unexplained revised lodestar, the Court has reviewed the billing records contained in the the chart and has numerous concerns regarding the reasonableness of the underlying fees sought. (Dkt 56 at 20:16-21).

Yet Class Counsel never asked the Court to re-evaluate their cross-check lodestar based on those records. (David Decl. ¶ 8) In short, Class Counsel also did not present their billing records as an attempt to increase their lodestar. Nor did Class Counsel ever asked – verbally or in writing – for its lodestar to be re-evaluated based on its records. As acknowledged in the final approval order, Class Counsel's billing records indicate that they spent 433.4 hours of work on the case, totaling $231,889.25 in fees. (Dkt 56 at

18:14-21); however, when Class Counsel formally presented their lodestar via their attorneys' fee motion, Class Counsel reduced their lodestar by 133.4 hours and by $70,994.25. *Id.*

**E.** **Court Erred Because It Based Its Anaylsis Regarding Reasonableness of Class Counsel's Hours On An Incorrect Lodestar**

In the final approval order, the Court solely relied on Class Counsel's billing records to question the reasonableness of hours billed on this case. For example,

> [C]ounsel billed over 60 hours for travel time. These billing entries often combined the court appearance and travel time, but the bulk of the time entries reflect travel time. *See Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 689 (2000) ("blocked-billing entries render it virtually impossible to break down hours on a task-by-task basis"). The Court is concerned that counsel consistently bills large blocks of time for travel from San Diego to San Francisco to attend hearings as counsel was presumably working on other matters or could have been during much of this time. (*See, e.g.*, Dkt. No. 54-2 at 5 (counsel each billed 3 hours for traveling to San Francisco for the preliminary approval motion on June 20, 2018); *Id.* at 6 (counsel each billed 4 hours to travel to San Francisco for the second preliminary approval motion on August 28, 2018); *Id.* at 7 (counsel billed 6 and 8 hours respectively for court and travel on December 13, 2018); *Id.* at 8 (counsel each billed 10 hours for traveling to and attending hearing the on the motion for final approval on April 4, 2019).)

> [T]he billing records contain numerous excessive and block billing entries. For example, counsel billed 18 hours preparing a discovery plan and discovery requests. (*Id.* at 2-3 (7/15/17, 7/16/17, 7/18/17 entries).) On three separate days, counsel billed between six to eight hours each day reviewing and analyzing "PAGA data" for mediation. (*Id.* at 3-4 (9/12/17, 9/13/17, 9/18/17 entries).) Again, over a three-day period the following month, counsel billed 8 hours each day for "Review and Analyzed CA Putative Class Sampling Data in Preparation for Mediation." (*Id.* at 4 (10/23/17, 10/24/17, 10/26/17 entries).) In addition, as noted above, counsel routinely block billed for travel and court time. (Dkt 56 at 21-22)

The Court failed to consider that Class Counsel reduced their lodestar by 133 hours and over $70,000. Class Counsel's lodestar was based on 300 hours, not 433 hours; yet the final approval order basis its concerns over the reasonableness of Class Counsel's hours by questioning the full billing hours and not the reduced lodestar presented to the Court in the attorney fee motion well before the final approval hearing.

Thus, the Court mistakenly analyzed the reasonableness of Class Counsel's hours based on the unreduced billing records and not the reduced hours reflected in the chart Class Counsel based their

lodestar. The order ignores the fact that Class Counsel reduced its hours by 133 hours, as reflected in their motion, and frankly suggests that Class Counsel tried to increase their lodestar. Further, the billing chart complied with the Northern District's Procedural Guidance for Class Action Settlements, which requires "Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed." The format of Class Counsel's billing has been approved in numerous cases. Martin Decl. ¶ 2. Again, the Court already said that the settlement would be approved. (David Decl., Exhibit 1).

Moreover, the Court chastised Class Counsel for block billing for time associated with traveling and analyzing data. In its final approval order, the Court cited to *Bell v. Vista* to support its position that block billing is not permitted, but misstated the holding. In that case, plaintiff had both tort claims and claims for violating the Brown Act. The Brown Act provides specific legislative authorization for attorney's fees while the tort did not. The *Bell* court noted that the block billing in that case made it difficult to "break down hours on a task-by-task basis between those related to the Brown Act violatiom and those that are not." *Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 689, 98 Cal. Rptr. 2d 263, 274-75 (2000). In short, the block billing in *Bell* made it impossible for the court to determine which work was subject to a fee award and which work was not.

Here, that is not an issue because all claims asserted in this case are subject to a fee award, As for travel, on two occasions, Class Counsel traveled to San Francisco and returned to San Diego in one day. Nonetheless, Class Counsel did not include all of this time in their lodestar they presented to the Court. As another example, the Court indicated that there was block billing entries especially with regard to analyzing data in preparation for mediation. However, this is because we received data for all of the employees within the PAGA period and all of the data for 25% of employees throughout the entire liability period. Moreover, throughout the process, Tesla had to correct issues with the data produced. This took a significant amount of time. The Court also indicates that there are entries with incorrect dates, which was clearly a typo. For example, one entry was for preparing the website, which was clearly prepared.

In short, there was nothing nefarious about the discrepancy between the chart presented with the attorney fee motion and the billing records themselves. The Court acknowledged that Class Counsel's submitted reduced hours in its attorney fee motion. The Court also acknowledges that it told Class Counsel to submit its full billig records after the final approval hearing. The FTR shows that Class Counsel never requested the Court to re-evaluate or increase its lodestar based on the underlining billing records. The only lodestar presented to the Court was based on 300 hours of work, not 433.4 hours. Class Counsel had no reason to increase its lodestar after the hearing since the Court already said it was going to approve the settlement, which meant it was fine with Class Counsel's request for 24% of common fund, supported by its lodestar based on 300 hours.

**F.      The Court Erred Because Under the Cross-Check Analysis The Awarded Fees Is Grossly Unreaonable, Amounting To Merely 15% of the Common Fund**

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "[T]he choice between lodestar and percentage calculation depends on the circumstances, but . . . 'either method may . . . have its place in determining what would be reasonable compensation for creating a common fund.'" *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (third alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). To guard against an unreasonable result, the Ninth Circuit encourages district courts to "cross-check[] their calculations against a second method." *In re Bluetooth*, 654 F.3d at 944; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (applying a lodestar cross-check to ensure the percentage-of-recovery method yielded a reasonable result).

Where the percentage-of-recovery method is employed, it is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees. *See, e.g., In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six (6) Mexican Workers*, 904 F.2d at 1311 ("[W]e established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases."). That said, "[t]he 25% benchmark rate, although a

starting point for analysis, may be inappropriate in some cases." *Vizcaino*, 290 F.3d at 1048. Upward departures may be warranted in particular circumstances, while downward departures may be warranted where there is no "realistic risk of nonrecovery." *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 U.S. Dist. LEXIS 18649, 2016 WL 613255, at *14 (N.D. Cal. Feb. 16, 2016) (quoting *In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1257-58 (C.D. Cal. 1997)).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). The district court may adjust this lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors." *Id.* at 941-42. Whatever method a court chooses, its decision "**must be supported by findings that take into account all of the circumstances of the case.**" *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048-50.

Here, Class Counsel advocated for applying the percentage-of-recovery method. Specifically, Class Counsel asked for $256,689 of the total recovery, which was $1,059,851.40, but is equivalent to 24% of the total recovery. The Court rejected Class Counsel's request to be award under the percentage of recovery method because, as indicated above, (1) Class Counsel did not submit a declaration or cover letter in support of its billing records, that would filed under seal, at the Court's request, for the Court file, even though the Court already told Class Counsel that it would approved the settlement, which would have included the 24% of the recovery request, and (2) Class Counsel's billing chart presented in its attorney fee motion as its claimed hours, reflected less hours than its underlining, unrevised, billing entries. (Dkt 56, P 18 L 13-21). The Court did not "take into account all of the circumstances of the case" when evaluating the reasonableness of the amount requested in fees, but instead solely focused on the "quality of work" factor while ignoring the complete record, relying on unsubstantiated "concerns" and relying on demonmstratively false information that could have been addressed at the final approval

hearing.

Due to Class Counsel's diligent efforts, which included continuing to investigate issues even after the parties received preliminary approval, Class Counsel was able to recover an additional $73,851.40 for the class. Dkt 56, P 2 FN 2. Class Counsel did not blindly go through the class notice process without questioning data from Tesla every step of the way. Issues that arose during the approval process resulted from Class Counsel's diligent efforts, not from carelessness. (Dkt 37, 39, and 49 The parties also sent a significant amount of time trying to resolve rising settlement issues between themselves to minimize court involvement. (Dkt. 37, 39, and 49) Class Counsel has been fully transparent with this Court regarding issues that have arisen (Dkt. 37, 39, 42, 43, 49, and 50).

### G. The Court Erred When Calculating The Average Cost Per Uber Ride and Determing Class Counsel Overstated Those Costs

The Court indicated that Class Counsel requested an average of $80 per taxi ride to and from the Court. However, the Court incorrectly calculated this presuming that Ms. Martin and Ms. David rode together, but this was not the case. Because Ms. Martin and Ms. David had different work schedules, live nearly one hour away from each other, and had different personal schedules, Ms. Martin and Ms. David took separate flights and thus, did not share a taxi. David Decl. ¶ 10. Moreover, the Court's reasoning that $40 per trip is appropriate is in line with what Class Counsel actual spent for transportation to and from the airport. Dkt 56, P 24 L4-9.

### H. The Court Should Stay the Enforcement of the Order Pending Resolution of this Motion

Plaintiffs respectfully request the Court stay enforcement of the Order pending resolution of this Motion.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant Plaintiffs' Unopposed Motion for Reconsideration Under FRCP 60(b) and to stay the Order.

DATED: August 5, 2019

AMARTIN LAW
BRENNAN & DAVID LAW GROUP

By: s/*Lindsay David*

Lindsay C. David
Attorney for Plaintiffs, Brian Wilson, Carrie
Hughes, and Katia Segal

3:17-CV-03763-JSC
Plaintiffs' Unopposed Motion for Reconsideration Under FRCP 60(b)(1), (6)

## Certificate of Service

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served August 5, 2019, with a copy of this document via e-mail/electronic service. I certify that all parties in this case are represented by counsel who are CM/ECF participants. Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

*s/ Lindsay C. David*

1